UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE CAMPANELLI, et al.,<br><br>            Plaintiff(s),<br><br>    v.<br><br>THE HERSHEY COMPANY,<br><br>            Defendant(s). | No. C 08-1862 BZ<br><br>**ORDER PERMITTING<br>COLLECTIVE ACTION** |

Several plaintiffs filed this wage and hour suit against their former employer, defendant The Hershey Co. ("Hershey"). Plaintiffs now move for an order permitting the federal claims to proceed as a collective action under the Fair Labor Standards Act 29 U.S.C. § 216 and certifying a class action under Federal Rule 23(b)(3) as to the California claims. For the following reasons, plaintiffs' motion is **GRANTED IN PART AND DENIED IN PART**.[1]

**Facts**

The Hershey Company is one of this country's largest

---

[1] All parties have consented to my jurisdiction, including entry of final judgment, pursuant to 28 U.S.C. § 636(c) for all proceedings.

1

1  producers of confectionary products.  Hershey sells its
2  products directly to retail outlets of various sizes, ranging
3  from mom-and-pop stores to Wal-Marts.  In 2003, in an effort
4  to adapt to a changing retail environment, Hershey
5  restructured its domestic sales force.  As part of this
6  restructuring, Hershey created the position of Retail Sales
7  Representative ("RSR").  The RSR position is an entry level
8  position.

9  Each RSR exclusively services a number of Hershey
10 customers in a designated sales territory.  The day to day
11 duties of RSRs include acting as retail consultants, selling
12 Hershey products, displaying Hershey products in retail space,
13 building displays, and meeting with key decision makers at
14 retail stores.

15 Each RSR reports to a District Sales Manager who reports
16 to an Area Sales Director.  Nationwide Hershey employs
17 approximately 500 RSRs with approximately 37 working in
18 California.  Because the RSR position was classified from its
19 inception as an exempt position, the RSRs were not paid for
20 overtime under federal or California law.

21 Plaintiff Campanelli, a former RSR, along with two other
22 former RSRs, filed suit against Hershey in 2007 alleging that
23 Hershey misclassified them as exempt and that they are
24 entitled to overtime compensation for all hours worked in
25 excess of the relevant limits.  Nineteen other plaintiffs have
26 since joined the suit.  Hershey denies plaintiffs are entitled
27 to any overtime and contends that they were properly
28 classified as exempt under the outside salesmen and

1  administrative exemptions.

2  Plaintiffs ask the Court to certify an opt-in collective
3  action under the FLSA and propose a class that consists of:
4  "All persons who are or were employed by The Hershey Company
5  as a Retail Sales Representative in the United States at any
6  time from January 1, 2004 to the present."[2]

7  As to the state law issues, plaintiffs ask the Court to
8  certify an "opt-out" class under Rule 23 defined as: "All
9  persons who are or were employed by The Hershey Company as a
10 Retail Sales Representative in the State of California at any
11 time from January 1, 2004 to the present." Plaintiffs further
12 request that the Court find that the current plaintiffs are
13 adequate class and collective action representatives and that
14 plaintiffs' counsel be certified as collective action and
15 class counsel. The standard for permitting an opt-in
16 collective action under the FLSA differs from the standard for

---

18 [2] Although the parties and many cases apply the term certification to the process of determining whether a
19 collective action under § 216 can proceed, the statute does not. The cases which analyzed § 216 after it was passed saw
20 the collective action as more of a permissive joinder device than a true class action and often referred to it as a spurious
21 class action. See e.g. Pentland v. Dravo Corp., 152 F.2d 851 (3rd Circ. 1945). Borrowing Rule 23 terminology seems to have
22 been occasioned by efforts in recent years to join a collective action under § 216 with a Rule 23 class action based on state
23 labor laws. Several courts have recognized the underlying tension between the two and some have declined to permit both
24 to proceed in one action. See Otto v. Pocono Health System, 457 F.Supp.2d 522, 523 (M.D.Pa, 2006) and cases collected
25 therein. Others have permitted opt-in and opt-out classes in the same action and at times have analyzed the propriety of a
26 collective action using Rule 23 terminology. That said, the Court will occasionally refer to the process of determining
27 whether to allow a collective action to proceed as certification because so many of the § 216 cases use that
28 terminology.

3

certifying an opt-out class under FRCP 23. The Court will first address the merits of the FLSA opt-in class.

### Opt-In Standard

An employee may sue an employer for unpaid overtime wages under the FLSA. Under § 216(b), an employee may bring such a suit as a collective action on behalf of "employees similarly situated." To join in such a suit, each employee must opt-in or file a consent to sue notice with the court in which the action is pending. Id. Many courts have applied a two-tiered approach when determining whether to allow an action to proceed collectively. Leuthold v. Destination Am., Inc., 224 F.R.D. 462, 266 (N.D.Cal. 2004); Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474, 482, (C.D.Cal. 2006).

In the first-tier, the court applies a "fairly lenient standard" in determining whether to conditionally certify a class and provide notice to putative class members. Grayson v. K Mart Corp., 79 F.3d 1086, 1096 (11th Cir. 1996). After discovery has been completed and the case approaches trial, a second tier of analysis generally occurs often triggered by a defendant's motion to decertify the opt-in class. At the second tier, a Court will again consider whether the class members are similarly situated but will also consider "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; (3) fairness and procedural considerations . . . ." Thiessen v. General Electric Capital Corp., 267 F.3d 1095, 1103 (10th Cir. 2001); Romero, 235 F.R.D. at 482.

Here, the parties disagree as to which tier of analysis the Court should apply. Hershey argues that because substantial discovery has been completed, I should skip the first tier, an approach which has been adopted by some district courts. Plaintiffs counter that it is more equitable to give the class notice prior to a final decision on permitting a collective action. The drawback to defendant's position is that it would deprive the Court of the benefit of any additional information the plaintiffs who opt-in can offer. "Should the court proceed to tier two on an unsettled factual record, the court might be deprived of crucial facts that would support plaintiffs' arguments for class treatment." Leuthold, 224 F.R.D. at 468. So I will conduct a first tier analysis, though given the amount of evidence before me, some of that analysis resembles a second tier analysis.

**Analysis**

The dispositive issue in permitting an opt-in class is whether other employees are "similarly situated." § 216(b). At the first tier, this standard has been described as "fairly lenient" and "fairly easy to satisfy." Leuthold, 224 F.R.D. at 266; Hernandez v. United Auto Credit Corp., 2010 WL 1337702 (N.D.Cal. 2010). Courts only require "substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single decision, policy, or plan." Russell v. Wells Fargo & Co., 2008 WL 4104212 *2-3 (N.D.Cal. 2008). Plaintiffs have the burden of "demonstrating a reasonable basis for their claim of class-wide discrimination." Grayson, 79 F.3d at 1097. All

the Court decides at the first tier is whether to provide notice to the potential class members.

Plaintiffs here have made a sufficient showing that the Hershey RSRs are similarly situated. All RSRs shared the same job title and description. All RSRs had the same general job duties which were prescribed by the corporate headquarters. Hershey offered a uniform compensation plan to each RSR. Each RSR was compensated with a salary, plus a bonus based on her district's (not her individual) performance, although an RSR's store sales may have been taken into account for a merit increase. No RSRs earned commissions on sales. All RSRs were guided in the tasks they were expected to perform during their individual sales calls by centrally promulgated Retail Call Procedures. All RSRs were evaluated based on their performance as compared to the model procedures. None of the RSRs had the ability to bind Hershey or one of their clients to a contract. All RSRs were classified as exempt from overtime compensation.[3]

Hershey's opposition is directed more to the second tier, more stringent analysis. Hershey's primary argument is that the actual day to day duties of RSRs vary so greatly that a collective action would necessitate hundreds of mini-trials. Opposition, p. 32. Specifically, Hershey defends the misclassification claim by contending that the RSRs were properly classified under the outside salesman and administrative exemptions. Hershey argues that the resolution

---

[3] Plaintiffs have abandoned their efforts to pursue a collective and class action based on missed meal and break periods.

6

1  of these defenses necessitates examining the individual
2  activities of each RSR with such specificity that resolution
3  of these class wide defenses would not be susceptible to
4  common proof. Hershey provided declarations from some RSRs
5  documenting variances in daily activities.

6  After reviewing the declarations submitted by both
7  parties, I am not persuaded that the adjudication of
8  individual defenses renders the collective action members not
9  "similarly situated." First, whether or not an RSR's primary
10 duty was to sell may be amenable to resolution on a common
11 basis. The Department of Labor's regulations define an
12 outside salesman as one whose primary duty is making sales.
13 29 C.F.R. § 541.501(b). Promoting a product may or may not
14 constitute selling.

> (a) *Promotion work* is one type of activity often performed by persons who make sales, which *may or may not be exempt outside sales work*, depending upon the circumstances under which it is performed. Promotional work that is actually performed incidental to and *in conjunction with an employee's own outside sales or solicitations is exempt work*. On the other hand, *promotional work that is incidental to sales made, or to be made, by someone else is not* exempt outside sales work....
>
> (b) A manufacturer's representative, for example, may perform various types of promotional activities such as putting up displays and posters, removing damaged or spoiled stock from the merchant's shelves or rearranging the merchandise. *Such an employee can be considered an exempt outside sales employee if the employee's primary duty is making sales or contracts. Promotion activities directed toward consummation of the employee's own sales are exempt. Promotional activities designed to stimulate sales that will be made by someone else are not* exempt outside sales work.
> *Id.* §§ 541.503(a)-(b) (emphases added).

27 Given this regulatory background, I conclude that a
28 significant number of the issues that are in dispute can

7

likely be determined on a collective basis. For example, the declarants generally agree that RSRs spend a significant amount of time in merchandising activities. In fact, Hershey's current retail call procedure requires that 30% of the time at each store be used to "merchandise the product." An earlier procedure required 50%. Based on the declarations filed by both sides, merchandising includes activities such as stocking shelves, sorting product, building displays, and tagging Hershey product. Whether these activities constitute selling, as Hershey contends, or constitute the sort of promotional activities which do not constitute selling, appears capable of decision on a collective basis.[4]

To invoke the administrative employee exemption, Hershey must establish that the employee's "primary duty" is "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," and ... his "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a).

As with the outside sales exemption, I believe it likely

---

[4] See e.g. Romero v. Producers Dairy Foods, 235 F.R.D. 474 (E.D. Cal. 2006), holding under Rule 23 that "determining whether Plaintiffs are outside salespeople will likely require the Court to make a single factual finding regarding the requirements and realistic expectations Defendant had regarding" the class members. Id at 487. See also In re Novartis Wage and Hour Litigation, -- F.3d ----, 2010 WL 2667337 (2d Cir. 2010) holding that despite variation in daily activities, whether the job duties of thousands of sales representatives which plaintiffs classified as merchandising and defendants classified as incidental to selling amounted to selling under the FLSA, was susceptible to common proof.

that I can decide many of the issues with respect to whether the administrative exemption was properly used on a collective basis. For example, based on the declarations submitted, whether an RSR's primary duty is the performance of manual work, as some plaintiffs have suggested, can be decided on a collective basis. Likewise whether the discretion that RSRs can exercise, such as delivering customized sales presentations, setting schedules and call times, discussing strategies with Key Decision Makers, and creating promotional opportunities constitutes "the exercise of discretion and independent judgment with respect to matters of significance" appears capable of decision on a collective basis.

Hershey argues that its RSRs are not similarly situated because they may deviate from its procedures and the more entrepreneurial RSRs sell more than they merchandise. Plaintiffs' declarations suggest that this deviation may not be as common as Hershey thinks. A weakness in Hershey's argument is that in a large group of people, there will always be some deviations. If the presence of deviations means that employees are not similarly situated, there will rarely be a collective action under §216. As numerous courts have commented, the FLSA is to be liberally construed to further its remedial purpose. Culver v. Bell & Loffland, 146 F.2d 29, 31 (9th Cir. 1945). All this suggests that the presence of deviations from Hershey's standardized procedures does not necessarily bar a collective action. Some of Hershey's concerns can be ameliorated by use of a form of

9

notice which will require those RSRs who wish to opt-in to certify that they believe their primary duties are not making sales and that they believe they exercise administrative discretion and judgment. An employee who believes that she is primarily an outside salesperson or an administrator or need not opt-in.

Ultimately, the decision whether to proceed as a collective or class action turns on whether this device is the superior way of resolving a controversy. The benefits to the parties of a collective proceeding need to be balanced against any prejudice to Hershey and any problems of judicial administration that may surface. See <u>Bayles v. American Medical Response</u>, 950 F.Supp. 1053, 1067 (D.Colo. 1996). Presently that balance favors plaintiffs. If it tips the other way, the Court has discretion to use devices such as subclasses, trial of archetypal plaintiffs or ultimately to decertify the class.

### Rule 23 Analysis

Plaintiffs request certification of a Rule 23(b)(3) class of individuals that encompasses all California RSRs that worked in the relevant time period. While the parties spend most of their time arguing Rule 23 issues such as typicality, commonality, and especially whether common issues of law and fact predominate, I agree with Chief Judge Walker that plaintiffs' motion should be denied because a Rule 23 classification "is not superior to other available methods for the fair and effective adjudication" of this controversy; namely, allowing opt-in plaintiffs to prosecute their pendent

state law claims as part of the FLSA collective action.

The parties estimate that there are about 90 California claimants, all of whom are members of the § 216 collective class. The bulk of their claims will be resolved in their collective action. If they prevail, California law may provide them with some additional relief. The fairest and most efficient method of resolving the California claims is to permit those who opt-in to have their federal rights determined, to also have their California rights determined. This solution also eliminates the awkwardness of explaining to lay people such concepts as that if they do nothing in response to notice, they will not have their federal claims determined but will have their state claims determined.

Accordingly, plaintiffs motion to certify a Rule 23 class is **DENIED**.

### Statute of Limitations

An action to recover unpaid overtime compensation must be "commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). An action is "commenced," under the FLSA, on the date the complaint is filed, subject to certain exceptions. 29 U.S.C. § 256. In the case of a collective action such as this one, if the individual claimants do not immediately file written consents to become parties the action is considered to be commenced when the written consents are filed. 29 U.S.C. § 256(b). Generally, a litigant seeking equitable tolling bears the

11

1  burden of establishing two elements: (1) that he has been
2  pursuing his rights diligently, and (2) that some
3  extraordinary circumstance stood in his way. Pace v.
4  DiGuglielmo, 544 U.S. 408, 418 (2005).

5  For the first time in the reply, plaintiffs argue that
6  the statute of limitations should be tolled. While this is a
7  disfavored tactic, Hershey was given an opportunity to
8  respond in a sur-reply and the Court deems the matter fully
9  briefed. As an initial matter, plaintiffs face an uphill
10 battle when seeking to equitably toll the statute of
11 limitations even at the notice stage. See e.g. Lewis v.
12 Wells Fargo & Co., 669 F.Supp.2d 1124 (N.D.Cal. 2009);
13 Ojeda-Sanchez v. Bland, 2009 WL 3851623 (S.D.Ga. 2009);
14 Posada v. Page Bros. Associates, Inc., 2010 WL 529407
15 (S.D.Fla. 2010).

16 Plaintiffs first argue that the limitations period
17 should be tolled because Hershey failed to post the requisite
18 FLSA notices, citing Bonham v. Dresser Indus., 569 F.2d 187
19 (3d Cir. 1977); Cortez v. Medina's Landscaping, Inc., 2002 WL
20 31175471 (N.D.Ill. 2002); and Summa v. Hofstra University,
21 --- F.Supp.2d ----, 2010 WL 2232671 (E.D.N.Y.,2010). Those
22 cases generally held that failure to post FLSA notices toll
23 the statute of limitations until plaintiffs become "generally
24 aware of their rights." Cortez, 2002 WL 31175471 at 4.
25 Hershey cites several cases which hold the opposite, that
26 failure to post notices alone does not warrant equitable
27 tolling. See e.g. Archer v. Sullivan County, 1997 WL 720406
28 (6th Cir. 1997); Noble v. Serco, Inc., 2009 WL 3254143

12

(E.D.Ky. 2009); <u>Saunders v. City of New York</u>, 594 F.Supp.2d 346 (S.D.N.Y. 2008). I agree with Judge Kaplan that:

> to hold that a failure to disclose that an employee is entitled to overtime pay is sufficient to work an equitable toll would be tantamount to holding that the statute is tolled in all or substantially all cases seeking unpaid overtime, as it would be a rare employer who failed to pay overtime but announced to its employees that they were entitled to overtime compensation.

<u>Patraker v. Council on Environment of New York City</u>, 2003 WL 22703522 (S.D.N.Y. 2003).

I find that to be a more reasonable approach as plaintiffs' proposed rule could lead to indefinite tolling.

Furthermore, plaintiffs failed (1) to establish that Hershey in fact failed to post FLSA notices, (2) to show that plaintiffs were generally unaware of their rights to overtime, and (3) to cite to any factually similar authority where notices would be required and feasible for those working remotely and classified as salaried, exempt, outside salesmen.

Plaintiffs next argue that Hershey misled the RSRs once this suit commenced by sending out litigation hold notices which misrepresented the true nature of plaintiffs' allegations. After reviewing the hold notice (Malloy Reply Decl. Ex. 13), I find nothing objectionable about Hershey's characterization of the litigation, certainly nothing rising to the level of "extraordinary circumstances" as plaintiffs suggest.

Next, plaintiffs argue that Hershey's characterization of plaintiffs' claims to potential plaintiffs during

discovery constitutes extraordinary circumstances sufficient to warrant tolling. This argument is speculative and meritless. Plaintiffs have not established that Hershey acted inequitably in conducting discovery nor have plaintiffs submitted any authority which supports their argument.

Finally, plaintiffs argue that the limitations periods should be tolled during the pendency of "surgical" discovery ordered by a predecessor judge, which plaintiffs accepted. At oral argument it became apparent that the parties disagreed whether there was a limitation preventing plaintiffs from moving for notice at an earlier point. Nevertheless, nothing prevented plaintiffs from filing a motion for tier one certification following the lifting of any limits on discovery about ten months ago.

In sum, plaintiffs have not established sufficient facts to warrant equitable tolling of the statute of limitations. The ordinary rules will control the applicable potential period of recovery for all plaintiffs.

**Evidentiary Objections**

Hershey filed a host of objections to evidence submitted by plaintiffs in support of this motion. Doc. No. 137. To the extent that the declarants submitted evidence regarding their own personal experiences, Hershey's objections regarding lack of personal knowledge are overruled. In fact, nearly all of Hershey's declarations suffer from the same defects of which it complains. Further, Hershey appears to be needlessly objecting to facts which it does not dispute, such as whether RSRs were paid overtime. After reviewing

14

1  plaintiffs' responses to the objections, I do not find the
2  objections persuasive or relevant.  Hershey's objections are
3  **OVERRULED**.
4      Plaintiffs filed a motion to strike (Reply, p. 24) the
5  declarations of Bianca Reed and Fidel Villegas.  I have
6  reviewed those declarations and do not find them materially
7  different from the other eight declarations Hershey submitted
8  from its current employees.  Nor have the depositions
9  plaintiffs took of the other declarants added much to this
10 analysis.  In any event, the motion to strike is **DENIED AS**
11 **MOOT** as I have not relied on the contents of those
12 declarations in deciding this motion.
13     **Notice**
14     The parties are **ORDERED** to meet and confer by **August 20,**
15 **2010** to negotiate a proposed schedule for the distribution of
16 notice in accordance with this order and the views expressed
17 in Court.  If the parties are unable to agree on a schedule,
18 they shall each file a proposed schedule by **August 27, 2010**.
19 The parties shall consider electronic notice.  Hershey is
20 **ORDERED** to search for and produce to plaintiffs the last
21 known address for all former and current RSRs going back to
22 August 13, 2007 for the FLSA claims, and back to August 13,
23 2006 for the California claims.  A hearing to discuss
24 providing notice is scheduled for **August 31, 2010 at 2:30 pm.**
25     **Conclusion**
26     It is **ORDERED** that plaintiffs' motion to proceed to the
27 notice stage on their FLSA and pendant California claims for
28 unpaid overtime is **GRANTED**.  For non-California employees,

1 | the Collective Action will be defined as:  All persons who
2 | are or were employed by The Hershey Company as a Retail Sales
3 | Representative in the United States up to three years prior
4 | to the date the person returns a "Consent to Join." For
5 | California employees, the Collective Action will be defined
6 | as:  All persons who are or were employed by The Hershey
7 | Company as a Retail Sales Representative in California up to
8 | four years prior to the date the person returns a "Consent to
9 | Join." **IT IS FURTHER ORDERED** that Plaintiffs' motion to
10 | certify a class under Rule 23 ~~is~~ **DENIED**.
11 | Dated: August 13, 2010

_____
Bernard Zimmerman
United States Magistrate Judge

G:\BZALL\-BZCASES\CAMPANELLI V. HERSHEY\CERT ORD.BZ VERSION 2.wpd