FRAMROZE M. VIRJEE (S.B. #120407)
fvirjee@omm.com
MICHAEL W. GARRISON, JR. (S.B. #212647)
mgarrison@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6047

CHRIS A. HOLLINGER (S.B. #147637)
chollinger@omm.com
ADAM P. KOHSWEENEY (S.B. #229983)
akohsweeney@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA  94111-3305
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

Attorneys for Defendant
THE HERSHEY COMPANY

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| JULIE CAMPANELLI, SABRINA ANDERSON, NANCY SMITH, TARYN SEDGELEY GOLIN, KEVIN SHANAHAN, FRANCIS MCKEEVER, BRYAN MILLER, JAMES AMICARELLA, JOSEPHINE GODFREY, JOHN MICHALSKI, KAREN METZGER, ROBERT MUSOLF, SCOTT WOOD, JUAN CARLOS LOPEZ, CHRIS NIELSEN, ANNE COMPTON, PHYLLIS DAVIS, ANDREW LEVISON, CHARLOTTE BRYN ALLEN, DANIEL HALLARAN, RON ROBERTS, and RYAN PARSONS, on their own behalf and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE HERSHEY COMPANY, <br><br> Defendant. | Case No. C 08-1862 BZ <br><br> **DEFENDANT'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT RE:  CALCULATION OF FLSA OVERTIME DAMAGES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:        February 2, 2011 <br> Time:        10:00 AM <br> Courtroom: G, 15th Floor <br> Judge:       Hon. Bernard Zimmerman |

**TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, on February 2, 2011, at 10:00 A.M., or as soon thereafter as the matter may be heard, in Courtroom G, 15th Floor, of the above-referenced Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, defendant The Hershey Company ("Hershey"), will and hereby does move this Court for partial summary judgment with respect to the methodology for the calculation of unpaid overtime allegedly owed pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* (the "FLSA").  This Court should grant partial summary judgment in favor of Hershey and order that misclassified RSRs (if any) have already received payment at their regular rate of pay for all hours worked, and that the proper method of calculating any unpaid overtime wages is therefore fifty percent (50%) of the regular rate for any overtime hours worked, as established in *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572 (1942), *superseded on other grounds by statute as stated in Trans World Air Lines, Inc. v. Thurston*, 469 U.S. 111, 128 n. 22 (1985).

This Motion is based upon: this Notice of Motion and Motion and attached Memorandum of Points and Authorities; the Declaration of Christine R. Slotznick, the Declaration of Adam P. KohSweeney, the Separate Statement of Undisputed Facts, and the Joint Statement of Undisputed Facts submitted herewith; all documents previously submitted in this matter; and on such other documents and/or matters as may be presented to the Court at or before the hearing of this Motion.

Dated:  December 28, 2010.

O'MELVENY & MYERS LLP
FRAMROZE M. VIRJEE
CHRIS A. HOLLINGER
MICHAEL W. GARRISON, JR.
ADAM P. KOHSWEENEY


By:     /s/ Framroze M. Virjee
Framroze M. Virjee
Attorneys for Defendant
THE HERSHEY COMPANY

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT.................................................................................................. 1

BACKGROUND ....................................................................................................................... 2

ARGUMENT ............................................................................................................................ 4

I.     THE PROPER METHOD OF CALCULATING OVERTIME DAMAGES
IN MISCLASSIFICATION CASES IS 50% OF PLAINTIFFS'
REGULAR RATE OF PAY ................................................................................ 5

     A.    The 50% Calculation For Overtime Damages Is Mandated By The
Supreme Court's Decision in Overnight Motor......................................... 5

     B.    Recent Case Law And DOL Guidance Further Support The 50%
Calculation ............................................................................................... 7

II.    THE FEDERAL REGULATIONS REGARDING THE "FLUCTUATING
WORKWEEK" ARE IRRELEVANT TO THE CALCULATION OF
OVERTIME DAMAGES IN A MISCLASSIFICATION CASE .......................... 8

     A.    Background Of The "Fluctuating Workweek" Analysis ........................... 9

     B.    The Federal FWW Regulations Do Not Compel A Different
Damages Calculation Than Overnight Motor........................................... 10

     C.    Other Arguments Against Calculating Overtime Damages As 50%
Of The Regular Rate Of Pay Are Similarly Unpersuasive ...................... 11

III.   PLAINTIFFS ARE ONLY ENTITLED TO 50% OF THEIR REGULAR
RATE OF PAY AS OVERTIME DAMAGES BECAUSE THE SALARY
PAID TO THE RSRS WAS INTENDED BY THE PARTIES TO
COMPENSATE THE RSRS FOR ALL HOURS WORKED.............................. 12

CONCLUSION........................................................................................................................ 16

# TABLE OF AUTHORITIES

Page

## CASES

*Bay Ridge Operating Co. v. Aaron*,
334 U.S. 446 (1948)..................................................................................... 5, 6

*Clements v. Serco, Inc.*,
530 F.3d 1224 (10th Cir. 2008)................................................................. 13, 14

*Desmond v. PNGI Charles Town Gaming, LLC*,
661 F. Supp. 2d 573 (N.D. W.Va. 2009) ............................................... 7, 9, 13, 14

*Hunter v. Sprint Corp.*,
452 F. Supp. 2d 44 (D.D.C. 2006) .................................................................. 14

*Missel v. Overnight Motor Transp. Co.*,
126 F.2d 98 (4th Cir. Md. 1942) ..................................................................... 11

*Overnight Motor Transp. Co. v. Missel*,
316 U.S. 572 (1942), *superseded on other grounds by statute as stated in*
*Trans World Air Lines, Inc. v. Thurston*, 469 U.S. 111, 128 n. 22 (1985) ..................... passim

*Russell v. Wells Fargo & Co.*,
672 F. Supp. 2d 1008 (N.D. Cal. 2009) ........................................................ passim

*Saizan v. Delta Concrete Prods. Co.*,
209 F. Supp. 2d 639 (M.D. La. 2002)................................................................ 1

*Torres v. Bacardi Global Brands Promotions*,
482 F. Supp. 2d 1379 (S.D. Fla. 2007) .............................................................. 7

*Urnikis-Negro v. Am. Family Prop. Servs.*,
616 F.3d 665 (7th Cir. 2010)..................................................................... passim

*Valerio v. Putnam Assocs., Inc.*,
173 F.3d 35 (1st Cir. 1999)....................................................................... 13, 14

*Walling v. Youngerman-Reynolds Hardwood Co.*,
325 U.S. 419 (1945).................................................................................... 5

*Zoltek v. Safelite Glass Corp.*,
884 F. Supp. 283 (N.D. Ill. 1995) .................................................................... 7

## STATUTES

29 C.F.R. § 778.109 ............................................................................... passim

29 C.F.R. § 778.114 ............................................................................... passim

29 U.S.C. § 201 ....................................................................................... 1

29 U.S.C. § 207(a)(1)............................................................................... 4, 5

## RULES

DeCamp & Tully, *Half-Time or Time and a Half?  Calculating Overtime in*
*Misclassification Cases*, Employers Guide to the Fair Labor Standards Act
Newsletter, November 2008.......................................................................... 10

DOL Field Operations Handbook § 32b04b(a).......................................................... 8

DOL Wage and Hour Opinion Letter FLSA 2009-03 (Jan. 14, 2009) ........................................ 14

**TABLE OF AUTHORITIES**
(*Continued*)

Page

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(b) ................................................................................................................... 1

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

Defendant The Hershey Company ("Hershey" or "Defendant") hereby seeks to narrow the focus and issues in this lawsuit by obtaining a ruling regarding the proper calculation of overtime damages in a misclassification case under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"). Specifically, Hershey requests a ruling which confirms that – to the extent any Retail Sales Representative ("RSR") in this matter is found to have been misclassified as an overtime-exempt employee[1] – such plaintiffs have already been compensated at their regular base rate for all hours worked and accordingly would only be owed fifty percent (50%) of their regular base rate for any overtime hours worked. Although the Ninth Circuit has not addressed the issue, this measure of damages is mandated by the accepted methodology for calculating the regular rate, as recognized by the Seventh Circuit Court of Appeals as well as the U.S. Department of Labor ("DOL") and numerous other authorities.

Both case law and the FLSA's implementing regulations provide that an employee's "regular rate" of pay – *i.e.*, the base hourly rate from which overtime is calculated – is determined by dividing compensation for a given workweek ***into all hours worked in that week***. A misclassified employee who has been paid a salary is therefore only owed the missing overtime premium: 50% of the regular base rate for all hours worked in excess of forty (40) in a week. This principle was confirmed by the Supreme Court shortly after the FLSA was enacted. *See Overnight Motor Transp. Co. v. Missel*,

---

[1] Nothing in this Motion should be interpreted as an admission that the plaintiffs were not properly classified as exempt from overtime under the FLSA or California law, and it continues to be Hershey's position that RSRs are properly classified as exempt from state and federal overtime requirements. Although liability remains contested, this motion is procedurally proper, because a ruling on Hershey's Motion will clarify an important issue that is disputed in this case. *See* Fed. R. Civ. P. 56(b) ("A party against whom relief is sought may move, with or without supporting affidavits, for summary judgment on all ***or part*** of the claim) (emphasis added); *Russell v. Wells Fargo & Co.*, 672 F. Supp. 2d 1008 (N.D. Cal. 2009) (ruling on the correct method of overtime damages calculation before a determination on liability was made); *Saizan v. Delta Concrete Prods. Co.*, 209 F. Supp. 2d 639, 641 (M.D. La. 2002) (same).

316 U.S. 572 (1942), *superseded on other grounds by statute as stated in Trans World Air Lines, Inc. v. Thurston*, 469 U.S. 111, 128 n. 22 (1985); *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665 (7th Cir. 2010).  In light of *Overnight Motor*, *Urnikis-Negro*, and the DOL's regulations, this Court should reject the holding in *Russell v. Wells Fargo & Co.*, 672 F. Supp. 2d 1008 (N.D. Cal. 2009), and grant partial summary judgment in favor of Hershey, holding that any misclassified RSRs have already been compensated at their regular base rate for all hours worked, and therefore are only entitled to an additional 50% of their regular rate of pay for any overtime hours worked.

## BACKGROUND

Plaintiffs filed this lawsuit alleging that Hershey misclassified its RSRs "as exempt from federal and state overtime laws," and improperly required RSRs "to work in excess of forty hours per week without overtime compensation."  (TAC ¶ 116.) [2]  Plaintiffs alleged causes of action for violations of the FLSA and various California state laws.  (TAC ¶¶ 123-159.)  Subsequently, Plaintiffs moved to certify a collective action under the FLSA of "all current and former RSRs nationwide from January 1, 2004 to the present."  (*See* Plaintiffs' Motion for Class Certification, dated June 21, 2010, at p. 2 [Doc. No. 115].)  Plaintiffs also sought to certify a class action under Federal Rule of Civil Procedure 23 of "all current and former RSRs who worked in California from January 1, 2004 to the present."  (*See id.*)  This Court granted conditional certification of the nationwide collective action for plaintiffs' FLSA overtime claims, but denied class certification with respect to the California claims.  (*See* Order Permitting Collective Action, dated Aug. 13, 2010, at pp. 15-16 [Doc. No. 157].)

Since its creation in 2003, the RSR position has been classified as exempt, and accordingly RSRs were not paid overtime.  (Joint Stmnt. [3] ¶¶ 1-2; Decl. of Christine R.

---

[2] "TAC ¶ _" refers to Plaintiffs' Third Amended Complaint, filed January 8, 2010 [Doc. No. 71].

[3] "Joint Stmnt. ¶ _" refers to the Joint Statement of Undisputed Facts in Support of Defendant's Motion for Partial Summary Judgment Regarding Calculation of FLSA Overtime Damages, dated Dec. 28, 2010, submitted herewith.

HERSHEY'S MOT. FOR PARTIAL
SUMMARY JUDGMENT:  OVERTIME
DAMAGES – CASE NO. C 08-1862 BZ

Slotznick, dated Dec. 20, 2010 ("Slotznick Decl."), at ¶ 4;[4] TAC ¶¶ 49-50; McKeever

Dep. at 46:5-8 & 54:3-8;[5] Wood Dep. at 302:15-25;[6] T. (Sedgeley) Golin Dep. at 32:9-15

& 217:15-18.[7])  Instead, RSRs were – and continue to be – paid a salary for completing

their job.  (Joint Stmnt. ¶ 3; Slotznick Decl. ¶ 4; Slotznick Dep. at 26:6-23;[8] Smith Dep. at

74:11-18;[9] KohSweeney Decl. Exhs. A at 32:9-15, C at 35:3-8, & F at 93:5-9.)  RSRs do

not work a set schedule.  (Sep. Stmnt.[10] ¶ 1; Slotznick Decl. ¶ 5.)  Instead, like all exempt

employees, Hershey expects the RSRs to work the number of hours necessary to complete

their job at an effective level.  (Sep. Stmnt. ¶ 2; Slotznick Decl. ¶ 5; Ibberson Dep. at

226:23-227:5.[11])  Hershey documentation plainly provides that an RSR's salary is not

dependent upon the number of hours worked.  (Sep. Stmnt. ¶ 4; Slotznick Decl. ¶ 6 &

Exh. G at § 4.3 ("Exempt employees are paid for work performed rather than hours

worked so a variation in hours does not result in a variation in pay."); *see also*

KohSweeney Decl. Exhs. A at 198:13-16, C at 76:11-13, & E at 79:25-80:3; 81:6-10.)

---

[4] References to "Slotznick Decl." are to the Declaration of Christine R. Slotznick, dated Dec. 20, 2010, In Support of Hershey's Motion for Partial Summary Judgment.

[5] True and correct copies of the cited portions of the Deposition of named Plaintiff, Francis McKeever, taken in this case on June 19, 2009, are attached to the Declaration of Adam P. KohSweeney, dated Dec. 28, 2010, In Support of Hershey's Motion for Partial Summary Judgment ("KohSweeney Decl."), as Exhibit C.

[6] True and correct copies of the cited portions of the Deposition of named Plaintiff, Scott Wood, taken in this case on February 4, 2010, are attached to the KohSweeney Decl. as Exhibit F.

[7] True and correct copies of the cited portions of the Deposition of named Plaintiff, Taryn (Sedgeley) Golin, taken in this case on December 15, 2009, are attached to the KohSweeney Decl. as Exhibit A.

[8] True and correct copies of the cited portions of the Deposition of Christine Slotznick, taken in this case pursuant to FRCP 30(b)(6) on June 25, 2009 and April 6, 2010, are attached to the KohSweeney Decl. as Exhibit D.

[9] True and correct copies of the cited portions of the Deposition of named Plaintiff, Nancy Smith, taken in this case on April 21, 2010, are attached to the KohSweeney Decl. as Exhibit E.

[10] "Sep. Stmnt. ¶ _" refers to Defendant's Separate Statement of Undisputed Facts in Support of Defendant's Motion for Partial Summary Judgment Regarding Calculation of FLSA Overtime Damages, dated Dec. 28, 2010, submitted herewith.

[11] True and correct copies of the cited portions of the Deposition of Robert Ibberson, taken in this case pursuant to FRCP 30(b)(6) on April 7, 2010, are attached to the KohSweeney Decl. as Exhibit B.

HERSHEY'S MOT. FOR PARTIAL
SUMMARY JUDGMENT:  OVERTIME
DAMAGES – CASE NO. C 08-1862 BZ

1   Instead, an RSR's salary constitutes compensation for all hours worked, regardless of

2   whether the hours are above or below forty in a week, and RSRs are reminded that they

3   are paid on an exempt basis every time they receive a salary adjustment.  (Sep. Stmnt. ¶¶

4   2, 4-5; Slotznick Decl. ¶¶ 5 & 6; KohSweeney Decl. Exhs. B at 226:23-227:5 & D at

5   113:24-114:17, 116:17-117:7.)[12]

6                                    **ARGUMENT**

7           The weight of authority – the FLSA, the Supreme Court, recent lower courts, and

8   the DOL – establishes that damages for unpaid overtime in an FLSA misclassification suit

9   are properly calculated as fifty percent (50%) of the regular base rate of pay for all hours

10  worked over forty in a week, and that the regular rate is determined by dividing the

11  remuneration for a given pay period by all hours worked in that pay period.  While the

12  FLSA itself establishes that a non-exempt employee is entitled to overtime pay of "one

13  and one-half times the regular rate at which he is employed" for all hours worked over 40

14  in a workweek, 29 U.S.C. § 207(a)(1), the "regular rate" is "determined by dividing the

15  employee's total remuneration for employment (except statutory exclusions) in any

16  workweek by *the total number of hours actually worked* by him in that workweek for

17  which such compensation was paid."  29 C.F.R. § 778.109 (emphasis added).

18  Accordingly, as explained in detail below, when a misclassified employee has been paid a

19  salary that is designed to compensate him or her "for all hours that the employee works in

20  a week, including overtime hours," that employee is entitled only to an additional fifty

21  percent of the regular rate of pay as overtime damages.  *Urnikis-Negro v. Am. Family*

22  *Prop. Servs.*, 616 F.3d 665 (7th Cir. 2010).  This is because the employee "has already

23  been compensated at the regular rate for the overtime hours by means of the fixed wage,"

24  and thus "the employer will owe [the employee] only one-half of the regular rate for those

25

26  _____

        [12] RSRs may not need to work a full forty hours in a given week.  As explained by

27  Area Sales Director Robert Ibberson, an RSR may work less than forty hours in a week
    without Hershey even knowing, and discipline would occur only if there were

28  performance issues – *not* because an RSR did or did not work a specified number of
    hours.  (*See* KohSweeney Decl. Exh. B at 94:3-95:24.)

HERSHEY'S MOT. FOR PARTIAL
                                            SUMMARY JUDGMENT: OVERTIME
                                            DAMAGES – CASE NO. C 08-1862 BZ

hours rather than time **plus** one-half." *Id.* at 671 (emphasis in original).

I. **THE PROPER METHOD OF CALCULATING OVERTIME DAMAGES IN MISCLASSIFICATION CASES IS 50% OF PLAINTIFFS' REGULAR RATE OF PAY.**

    A. **The 50% Calculation For Overtime Damages Is Mandated By The Supreme Court's Decision in Overnight Motor.**

In order to determine the overtime rate, the Court must first determine an employee's "regular rate" of pay, because the FLSA mandates that a non-exempt employee must be paid "at a rate not less than one and one-half times the *regular rate* at which he is employed" for hours worked over 40 in a workweek. 29 U.S.C. § 207(a)(1) (emphasis added). As the Supreme Court has explained, "[t]he keystone of § 7(a) is the regular rate of compensation." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945); *Urnikis-Negro*, 616 F.3d at 673. Shortly after the passage of the FLSA, several Supreme Court opinions addressed the calculation of the "regular rate" in cases where the employee was paid on a salary basis rather than an hourly basis. *See Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 448 (1948) ("These cases present another aspect of the perplexing problem of what constitutes the regular rate of pay which the Fair Labor Standards Act requires to be used in computing the proper payment for work in excess of forty hours."). When, as here, an employee is paid by salary, the salary must be converted into an hourly rate in order to calculate the regular rate and, in turn, the overtime rate of pay. *Overnight Motor Transp. Co.*, 316 U.S. at 580 ("[T]he overtime compensation due to employees must be computed on the basis of the hourly rate derived therefrom, and therefore, it is necessary to compute the regular hourly rate of such employees during each workweek.").

Although it was decided shortly after the passage of the FLSA, *Overnight Motor* remains the chief guidepost in calculating the "regular rate" of pay, and therefore overtime damages, when the employee is paid "a weekly wage with variable or fluctuating hours." *Id.* In that case, the employee agreed to be paid by salary, and the salary paid was sufficient to meet the statutory minimum wage as well as 150% of the minimum wage for

HERSHEY'S MOT. FOR PARTIAL SUMMARY JUDGMENT: OVERTIME DAMAGES – CASE NO. C 08-1862 BZ

1   all hours of overtime worked.  *Id.* at 575.  The employee, however, worked on average 65

2   or 75 hours per week, but was not paid any overtime premium beyond his salary.  *Id.*

3   at 574-75.  The Court ruled that the FLSA required "extra pay for overtime work by those

4   covered by the Act even though their hourly wages exceeded the statutory minimum," and

5   noted that the FLSA's overtime provision is "clear and unambiguous" on this issue in that

6   it "calls for 150% of *the regular*, not the minimum, wage."  *Id.* at 577 (emphasis added).

7        In determining the amount of overtime owed to the employee, the Court went on to

8   explain that the employee's "regular rate" is determined by dividing the weekly salary by

9   the ***total number of hours actually worked*** in a given week.  *Id.* at 580 & n.16.  The Court

10  further ruled that, as a result of this method of calculation, the "regular rate" may fluctuate

11  from week to week based on the number of hours the employee actually works:

12       "Where the employment contract is for a weekly wage with the variable or
         fluctuating hours the same method of computation produces the regular rate
13       for each week.  As that rate is on an hourly basis, it is regular in the
         statutory sense, inasmuch as the rate per hour does not vary for the entire
14       week, though week by week the regular rate varies with the number of hours
         worked. . . .  It is this quotient which is the 'regular rate at which an
15       employee is employed' under contracts of the types described . . . for fixed
         weekly compensation for hours, certain or variable."
16

17  *Id.* at 580.  The Court in *Overnight Motor* thus treated the fixed weekly wage paid to the

18  employee as compensation for ***all*** hours worked, including overtime hours worked.  *See*

19  *also Urnikis-Negro*, 616 F.3d at 681 (stating that "it is [*Overnight Motor*] which dictates

20  how the regular rate of pay must be calculated here").  Accordingly, in computing

21  damages for unpaid overtime compensation, the employer is credited with the amount

22  already paid – straight time for all hours worked – and the employee is only entitled to "an

23  additional sum equal to the number of hours worked for one employer in a workweek in

24  excess of forty, multiplied by one-half the regular rate of pay."  *Bay Ridge Operating Co.*,

25  334 U.S. at 476-77.  The DOL's implementing regulations are in direct accord on this

26  point.  *See* 29 C.F.R. § 778.109.

27

28

HERSHEY'S MOT. FOR PARTIAL
SUMMARY JUDGMENT:  OVERTIME
DAMAGES – CASE NO. C 08-1862 BZ

B.     **Recent Case Law And DOL Guidance Further Support The 50% Calculation.**

Several recent lower court decisions have relied upon the statutory language of the FLSA and the above-described principles articulated in *Overnight Motor* to guide their calculation of damages in misclassification cases and have concluded that misclassified employees are entitled to only 50% of the regular rate for any hours worked over forty in a week, and that the regular rate is calculated by dividing that workweek's salary by all hours worked.  For example, the Seventh Circuit in *Urnikis-Negro* recently applied the reasoning in *Overnight Motor* to calculate "an employee's regular rate of pay and corresponding overtime premium."  616 F.3d at 666.  In that case, an employee was improperly classified as exempt from the overtime provisions of the FLSA.  The Seventh Circuit held that, where the parties intended a weekly salary to compensate the employee for however many hours she worked, the regular rate of pay was determined by dividing the weekly salary by the total number of hours worked each week.  *Id.* at 680-81.  "The employee is then entitled to an overtime premium of one-half of that rate."  *Id.* at 681.

District courts in several jurisdictions have followed the same reasoning, concluding that misclassified employees are only entitled to overtime damages equal to one-half times the regular rate of pay for hours worked over forty, and calculating the "regular rate" by dividing by all hours worked in a workweek.  *See, e.g.*, *Desmond v. PNGI Charles Town Gaming, LLC*, 661 F. Supp. 2d 573, 583-84 (N.D. W.Va. 2009) (relying on reasoning in *Overnight Motor* to conclude that misclassified employees were only entitled to one-half the regular rate of pay for unpaid overtime because the employer and the employees had an understanding that the salary paid was compensation for all hours worked, so the plaintiffs "had already received the regular portion of their overtime hours"); *Torres v. Bacardi Global Brands Promotions*, 482 F. Supp. 2d 1379, 1380-81 (S.D. Fla. 2007) (same); *Zoltek v. Safelite Glass Corp.*, 884 F. Supp. 283, 287-88 (N.D. Ill. 1995) (same).

Moreover, the DOL, in enforcing the overtime pay requirements of the FLSA,

HERSHEY'S MOT. FOR PARTIAL
SUMMARY JUDGMENT:  OVERTIME
DAMAGES – CASE NO. C 08-1862 BZ

applies the same calculation of the regular rate, and the corresponding overtime premium, as explained in *Overnight Motor*. In its Field Operations Handbook (the "FOH"),[13] the DOL explains that, in calculating unpaid overtime for misclassified salaried employees, "[s]ince straight time compensation has already been paid, such an employee must receive additional [overtime] compensation for each [overtime] hour in a particular [workweek] computed at not less than one-half the regular rate obtained by dividing the weekly salary by the number of hours worked in that [workweek]." FOH, § 32b04b(a), available at http://www.dol.gov/whd/FOH/FOH_ Ch32.pdf (2000). As already noted, the DOL's implementing regulations also confirm that the regular rate must be calculated by dividing by all hours worked. *See* 29 C.F.R. § 778.109.

* * *

In sum, the FLSA – as interpreted by the Supreme Court and other federal courts, and as administered by the DOL – requires that where, as here, an employee is paid a salary for all hours worked, regardless of how many or how few, a misclassified employee is only entitled to an additional 50% of his or her regular rate (determined by considering all hours worked in the workweek). *See Urnikis-Negro*, 616 F.3d at 681.

## II.   THE FEDERAL REGULATIONS REGARDING THE "FLUCTUATING WORKWEEK" ARE IRRELEVANT TO THE CALCULATION OF OVERTIME DAMAGES IN A MISCLASSIFICATION CASE.

Although the above analysis is straightforward, and supported by the text of the FLSA, the DOL's interpretations, and the Supreme Court's decisions, there has been some confusion among some district courts with regard to the proper calculation of FLSA overtime damages. This confusion stems from a misplaced attempt to apply the so-called "fluctuating workweek" analysis to misclassification cases. For the reasons discussed

---

[13] The FOH "[p]rovides Wage and Hour Division investigators and staff with interpretations of statutory provisions, procedures for conducting investigations, and general administrative guidance." See Wage and Hour Division, Field Operations Handbook, available at http://www.dol.gov/whd/FOH/. The FOH was developed by the DOL Wage and Hour Division under its general authority to administer laws that the agency is charged with enforcing, including the FLSA, and "reflects policies established through changes in legislation, regulations, court decisions, and the decisions and opinions of the WHD Administrator." *Id.*

HERSHEY'S MOT. FOR PARTIAL
SUMMARY JUDGMENT: OVERTIME
DAMAGES – CASE NO. C 08-1862 BZ

1   below, these opinions, specifically including District Judge Wilken's decision in *Russell v.*

2   *Wells Fargo & Co.*, 672 F. Supp. 2d 1008 (N.D. Cal. 2009), should not be followed in

3   determining the proper calculation of damages in an alleged misclassification case such as

4   the instant lawsuit.

### A.   Background Of The "Fluctuating Workweek" Analysis.

6       Following the *Overnight Motor* decision in 1942, the DOL issued an advisory

7   bulletin to provide guidance regarding the "proper method of determining the regular rate

8   of pay in particular instances." 29 C.F.R. § 778.109.  Among the methods approved by

9   the DOL was the "fluctuating workweek" ("FWW").  The FWW method, set forth at

10  29 C.F.R. § 778.114, applies to persons "employed on a salary basis [who] have hours of

11  work which fluctuate from week to week," and provides that the regular rate of pay for

12  such employees is calculated "by dividing the number of hours worked in the workweek

13  into the amount of the salary to obtain the applicable hourly rate for the week.  Payment

14  for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay

15  requirement because such hours have already been compensated at the straight time

16  regular rate, under the salary arrangement." *Id.*

17      Some district courts have interpreted Section 778.114 as barring, as a matter of

18  law, the application of the 50% methodology in calculating the regular rate of pay and

19  overtime damages in FLSA misclassification cases.  *See Russell*, 672 F. Supp. 2d at 1015-

20  16 (citing district court cases).  These courts, which are in the minority,[14] have determined

21  that the 50% calculation is inapplicable because the employer in a misclassification case

22  has necessarily failed to comply with two requirements of Section 778.114.  *See id.*  These

23  courts have also reasoned "that if the requirements of the rule are not met, one should

24  presume that an employee's fixed weekly salary was meant to compensate him solely for

25  40 hours of work even when he regularly worked more than 40 hours without any

26  expectation of additional pay." *Urnikis-Negro*, 616 F.3d at 679 (surveying cases).  Under

---

[14] "Virtually every court that has considered the question has upheld the remedial use of half-time in failed exemption cases." *Desmond*, 661 F. Supp. 2d at 584.

HERSHEY'S MOT. FOR PARTIAL
SUMMARY JUDGMENT:  OVERTIME
DAMAGES – CASE NO. C 08-1862 BZ

1   this reasoning, because the salary paid was only compensation for forty hours of work, the

2   employee has received **no pay** for any of the overtime hours worked and is entitled to one

3   and one-half times the regular rate of pay.

4   　　The minority line of cases is incorrect, as explained by the Seventh Circuit in

5   *Urnikis-Negro* and as discussed in detail below.

6   **B.**　**The Federal FWW Regulations Do Not Compel A Different Damages**
   　　**Calculation Than *Overnight Motor*.**

7

8   　　The minority of district courts which have held that a failure to comply with

9   Section 778.114 precludes calculation of the regular rate of pay and overtime pay as

10  described in *Overnight Motor* have relied on a fundamentally faulty assumption, and their

11  reasoning should not be adopted by this Court.

12  　　The FWW regulation is forward-looking and provides guidance to employers in

13  complying with the FLSA overtime provision in the first instance – in other words, it

14  provides a method by which an employer may lawfully compensate **an admittedly non-**

15  **exempt employee**.  *Urnikis-Negro*, 616 F.3d at 678-79.  As explained by the former

16  Administrator of the DOL's Wage and Hour Division:  "The critical point to understand

17  about Section 778.114, which the *Rainey* [and *Russell*] line of decisions fails to recognize,

18  is that the regulation provides guidance regarding **how to comply with the law**.  It is

19  forward-looking . . . "  DeCamp & Tully, *Half-Time or Time and a Half?  Calculating*

20  *Overtime in Misclassification Cases*, Employers Guide to the Fair Labor Standards Act

21  Newsletter, November 2008, at 3 (cited with approval in *Urnikis-Negro*, 616 F.3d at 680).

22  Consistent with the fact that the FWW regulation "on its face is not a remedial measure,"

23  it "says nothing about how a court is to calculate damages where . . . the employer has

24  breached its obligation to pay the employee an overtime premium."  *Urnikis-Negro*,

25  616 F.3d at 677.  This is clear from a plain reading of Section 778.114 – the regulation

26  indisputably does not direct a court to presume that the salary paid was intended to

27  compensate an employee for forty hours worked, or any other specific number, in the

28

1   event of an improper classification or other violation of the FLSA.[15]

2       It is well worth noting that no Court of Appeals – including the Ninth Circuit[16] –

3   has adopted the argument that Section 778.114 bars application of the *Overnight Motor*

4   methodology in misclassification cases as a matter of law.  *See Russell*, 672 F. Supp. 2d

5   at 1015-16 (surveying court of appeals cases).  The proper analysis, as recently employed

6   by the Seventh Circuit in *Urnikis-Negro*, is to recognize that Section 778.114 does not

7   apply to misclassification cases and instead to apply the statutory language as interpreted

8   by the Supreme Court in *Overnight Motor.  See Urnikis-Negro*, 616 F.3d at 677-79.

9       **C.     Other Arguments Against Calculating Overtime Damages As 50% Of
            The Regular Rate Of Pay Are Similarly Unpersuasive.**

10

11      The *Russell* court recently held, as a matter of law, that the 50% method of

12  calculating overtime damages could not be utilized in a misclassification suit because the

13  employer could not demonstrate compliance with the requirements of Section 778.114.

14  *See Russell*, 672 F. Supp. 2d at 1016.  In addition to the erroneous application of

15  Section 778.114, the *Russell* court relied on two other incorrect arguments.

16      ***First***, *Russell* misinterprets the rule created in *Overnight Motor*.  According to

17  *Russell*:

18      "*Overnight Motor* stated that an employer and employee could legally
        agree, in certain circumstances, to a compensation arrangement where the
19      employee would be paid a flat weekly rate for fluctuating hours.  However,
        to satisfy section 207, ***the agreement must contain a provision for overtime***
20      ***pay*** and the wage must be sufficient to satisfy minimum wage requirements
        and offer a premium of at least 'fifty per cent for the hours actually worked
21      over the statutory maximum.'"

22  *Id.* at 1011 (citations omitted; emphasis added).  ***Nothing*** in *Overnight Motor*, however,

23  requires a preexisting agreement that the employer will pay overtime in order to apply its

24      [15] Notably, the Fourth Circuit in *Overnight Motor* rejected the similar argument that
        a court should assume the regular rate is determined by dividing the weekly salary by the
25      applicable statutory maximum hours (44 or 42 at the time).  The Fourth Circuit stated that
        there was "[n]o authority" to support such a position.  *Missel v. Overnight Motor Transp.*
26      *Co.*, 126 F.2d 98 (4th Cir. Md. 1942), *aff'd by Overnight Motor Transportation Co. v.*
        *Missel*, 316 U.S. 572, 580 (1942).

27      [16] Indeed, the Ninth Circuit has yet to address the appropriate calculation of
28      overtime damages in misclassification cases.  *See Russell*, 672 F. Supp. 2d at 1014.

                                    HERSHEY'S MOT. FOR PARTIAL
                                    SUMMARY JUDGMENT:  OVERTIME
                                    DAMAGES – CASE NO. C 08-1862 BZ

1    calculation of regular rate of pay and the corresponding 50% overtime premium. *See*

2    316 U.S. at 579-581. Moreover, *Overnight Motor* itself was essentially a misclassification

3    case in which there was no preexisting agreement regarding additional overtime

4    payments. The employer and the employee agreed to a salary that ended up sufficiently

5    large to meet the minimum wage and time and one-half the minimum wage for overtime

6    hours worked. The employee was not paid extra for overtime hours. *Id.* at 574, 581.

7    Nonetheless, the Court defined "regular rate" as the salary divided by all hours worked.

8    *Id.* at 579-580.

9        **Second**, *Russell* noted that application of the 50% calculation method may result in

10   an employee being paid significantly less over a given year than the calculation sought by

11   plaintiffs in this case. *See* 672 F. Supp. 2d at 1012. That argument, however, was

12   explicitly rejected by the Supreme Court in *Overnight Motor*. 216 U.S. at 580 ("It is true

13   that the longer the hours, the less the rate and the pay per hour. This is not an argument,

14   however, against this method of determining the regular rate of employment [sic] for the

15   week in question."). As the Seventh Circuit concluded in *Urnikis-Negro*, a court still

16   must ascertain the employee's regular rate of pay and calculate an appropriate overtime

17   premium based on that rate, and that inquiry "turns on what the parties agreed the

18   employee would be paid for the hours he actually worked (so long as the rate is not lower

19   than the minimum wage)."[17]  616 F.3d at 680. Thus, regardless of whether the

20   requirements of Section 778.114 are or are not met, the proper guidance for determining

21   unpaid overtime in misclassification cases remains the calculation adopted by the

22   Supreme Court in *Overnight Motor*. *Id.* at 681.

23   **III.    PLAINTIFFS ARE ONLY ENTITLED TO 50% OF THEIR REGULAR
             RATE OF PAY AS OVERTIME DAMAGES BECAUSE THE SALARY
24           PAID TO THE RSRS WAS INTENDED BY THE PARTIES TO
             COMPENSATE THE RSRS FOR ALL HOURS WORKED.
25

26        For all the reasons discussed above and in light of the basic undisputed facts

27   _____

28        [17] There is no contention that the salaries Hershey paid RSRs did not meet the
     minimum wage requirements.

regarding the relationship between Hershey and the RSRs (*i.e.*, all RSRs were paid a fixed salary without regard to the number of hours actually worked), any misclassified RSR, as a matter of law, is only entitled to one-half his or her regular rate for any overtime hours worked – and the regular rate is calculated by dividing remuneration received for each workweek by the total number of hours worked in that week. *Urnikis-Negro*, 616 F.3d at 680-81. In addition to the foregoing analysis, the Seventh Circuit in *Urnikis-Negro* considered whether the parties intended that the employee's salary would compensate her for all hours worked. Although Hershey does not believe this further inquiry is necessary in order to adjudicate the instant motion (because it is not specifically required by the text of the FLSA, *Overnight Motor*, or the definition of "regular rate" in Section 778.109), to the extent the Court disagrees, it is clear – based on the undisputed and commonly-applicable evidence[18] – that Hershey and the RSRs did have such an understanding.

"[T]he agreement that an employee is to be paid a fixed salary for whatever hours she worked need not be evidenced in writing." *Urnikis-Negro*, 616 F.3d at 681 n.8. Rather, "[t]he existence of such an agreement instead *may be inferred from the parties' conduct*." *Id.* (emphasis added). When employees are "paid the same salary without regard to how many hours [are] worked," such conduct supports a conclusion that the parties intended that the salary paid was to be compensation for *all* hours worked. *Desmond*, 661 F. Supp. 2d at 583 n.7; *Valerio v. Putnam Assocs., Inc.*, 173 F.3d 35, 39 (1st Cir. 1999) (post-hiring conduct showing that employee worked more than forty hours a week and was not paid overtime supports conclusion that salary was compensation for all hours worked); *Clements v. Serco, Inc.*, 530 F.3d 1224, 1231 (10th Cir. 2008) (salary was compensation for all hours worked because employees "were neither docked for

---

[18] Plaintiffs have chosen to litigate this case on a collective-action basis. As such, they must rely on commonly-applicable evidence – and not the individualized subjective understandings of particular RSRs – to establish that there was a mutual understanding between the RSRs and Hershey that the RSRs' fixed salary was compensation for only 40 hours of work each week. This is especially true given that Plaintiffs have steadfastly insisted that Hershey may conduct discovery vis-à-vis no more than five of the 66 current opt-in plaintiffs.

1  working less than forty hours a week nor paid more when they worked more than forty

2  hours").[19]

3       The commonly-applicable evidence in this case establishes that plaintiffs were paid

4  the same compensation each pay period regardless of how many hours they worked per

5  week.  RSRs' paychecks did not increase for weeks in which over forty hours were

6  worked, nor were paychecks decreased when less than forty hours were worked.  (Sep.

7  Stmnt. ¶ 4; Slotznick Decl. ¶¶ 4-6.)  Consistent with this arrangement, Hershey's policies,

8  procedures and other documents show that the RSR salary was intended as compensation

9  for all hours worked.  All RSRs, from the beginning of their employment at Hershey, are

10  notified that they are a salaried employee (Sep. Stmnt. ¶ 3; Slotznick Decl. ¶ 4 & Exhs. A-

11  F), and Hershey periodically reminded its RSRs of their "exempt" status and the

12  accompanying flat rate salary (Sep. Stmnt. ¶ 5; KohSweeney Decl. Exh. D at 113:24-

13  114:17, 116:17-117:7).  Moreover, Hershey's policies require RSRs to be paid the same

14  amount regardless of how many hours they work:  "Exempt employees are paid for work

15  performed rather than hours worked so a variation in hours does not result in a variation in

16  pay."[20] (Sep. Stmnt. ¶ 4; Slotznick Decl. ¶ 6 & Exh. G); *cf. Desmond*, 661 F. Supp. 2d

17  at 583 n.7.

18       [19] The DOL has issued a recent opinion letter which is consistent with the federal
19  appellate courts' conclusion that the half-time method of calculating overtime payments is
    permissible in misclassification cases.  Department of Labor Wage and Hour Opinion
20  Letter FLSA 2009-03 (Jan. 14, 2009).  The Commissioner's reasoning is based upon its
    interpretation of 29 C.F.R. § 778.114 and appellate decisions such as *Valerio* and
21  *Clements*.  In misclassification cases, the Commissioner advised, as long as there is a
    "clear mutual understanding of the parties that the fixed salary" is "compensation for
22  however many hours the employee may work in a particular week, rather than for a fixed
    number of hours per week," the 50% method of calculating damages is permissible.

23       [20] This fact makes this case distinguishable from *Hunter v. Sprint Corp.*,
24  452 F. Supp. 2d 44 (D.D.C. 2006).  In *Hunter*, the district court concluded that the
    employee's salary was only intended to compensate him for 40 hours a week.  The court
25  reached this conclusion because the employer's policies allowed for full or partial day pay
    deductions for missed time.  *Id.* at 60.  Moreover, the evidence in *Hunter* indicated that
26  the employee typically was assigned to shift work, five days a week, with a scheduled
    half-hour lunch break.  *Id.* at 61.  In contrast, in this case, Hershey does not have a policy
27  that allows for full or partial day pay deductions in the event an RSR works less than a
    certain number of hours (Slotznick Decl. ¶ 6), nor is there evidence that RSRs performed
28  typical scheduled shift-type work or had scheduled meal breaks.  Therefore, *Hunter* does
    not compel the use of the 150% method of calculation in this case.

1    Here, the undisputed record evidence – recruiting materials, offer letters, policies

2    and procedures, and the presence of fixed and regular compensation payments –

3    establishes that RSRs were initially classified as exempt from the FLSA's overtime

4    requirements and that the parties intended the salary to compensate RSRs for all hours

5    worked, even those above forty hours in a week.  *Overnight Motor* thus dictates that the

6    regular rate of pay for the named plaintiffs, as well as those who opt in to the FLSA

7    collective action, must be determined by dividing their salary by the total hours worked in

8    any given workweek.  316 U.S. at 580 & n.16; *Urnikis-Negro*, 616 F.3d at 681-84

9    ("Urnikis-Negro, like Missel, was paid a fixed weekly sum for any and all hours that she

10   worked.  Like Missel, she routinely worked substantial amounts of overtime.  And like

11   Missel, she never received any premium for the overtime hours she worked.  The Supreme

12   Court held that in this situation, the employee's regular rate of pay for a given week is

13   calculated by dividing the fixed weekly wage by the total number of hours worked in that

14   week.").  Accordingly, if the Court were to determine that plaintiffs have been

15   misclassified, and even if the Court were to inquire into the actual understanding of the

16   parties, the plaintiffs would only be entitled to 50% of their regular rate as overtime

17   damages.  *Urnikis-Negro*, 616 F.3d at 683-84.

18

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

HERSHEY'S MOT. FOR PARTIAL
SUMMARY JUDGMENT:  OVERTIME
DAMAGES – CASE NO. C 08-1862 BZ

**CONCLUSION**

For the foregoing reasons, Hershey respectfully requests that this Court grant partial summary judgment in its favor, determining that – if liability is found in this case – the regular rate of pay and the corresponding overtime damages due to plaintiffs will be calculated according to the methodology established in *Overnight Motor* and *Urnikis-Negro*.

Dated:  December 28, 2010.

FRAMROZE M. VIRJEE
CHRIS A. HOLLINGER
MICHAEL W. GARRISON, JR.
ADAM P. KOHSWEENEY
O'MELVENY & MYERS LLP


By:    /s/ Framroze M. Virjee
      Framroze M. Virjee
Attorneys for Defendant
THE HERSHEY COMPANY

807231

HERSHEY'S MOT. FOR PARTIAL
SUMMARY JUDGMENT:  OVERTIME
DAMAGES – CASE NO. C 08-1862 BZ