CHRIS A. HOLLINGER (S.B. #147637)
chollinger@omm.com
ADAM P. KOHSWEENEY (S.B. #229983)
akohsweeney@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center
28th Floor
San Francisco, CA  94111-3823
Telephone:   (415) 984-8700
Facsimile:   (415) 984-8701

FRAMROZE M. VIRJEE (S.B. #120401)
fvirjee@omm.com
MICHAEL W. GARRISON, JR. (S.B. #212647)
mgarrison@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Telephone:   (213) 430-6000
Facsimile:   (213) 430-6047

Attorneys for Defendant
THE HERSHEY COMPANY

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

JULIE CAMPANELLI, SABRINA
ANDERSON, NANCY SMITH, TARYN
SEDGELEY GOLIN, KEVIN SHANAHAN,
FRANCIS MCKEEVER, BRYAN MILLER,
JAMES AMICARELLA, JOSEPHINE
GODFREY, JOHN MICHALSKI, KAREN
METZGER, ROBERT MUSOLF, SCOTT
WOOD, JUAN CARLOS LOPEZ, CHRIS
NIELSEN, ANNE COMPTON, PHYLLIS
DAVIS, ANDREW LEVISON,
CHARLOTTE  BRYN ALLEN, DANIEL
HALLARAN, RON ROBERTS, and RYAN
PARSONS, on their own behalf and on behalf
of all others similarly situated,

Plaintiffs,

v.

THE HERSHEY COMPANY,

Defendant.

Case No. C 08-1862 BZ


**DEFENDANT THE HERSHEY
COMPANY'S OPPOSITION TO
PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY
JUDGMENT REGARDING
OUTSIDE SALES AND
ADMINISTRATIVE
EXEMPTIONS**

Hearing Date:   February 16, 2010
Time:   10:00 AM
Courtroom:   G, 15th Floor
Judge:   Hon. Bernard
Zimmerman

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT.................................................................................I

STATEMENT OF FACTS ..................................................................................... 2

    **A.**   Hershey's Overall Sales Strategy................................................. 2

    **B.**   Both RSRs and CSEs Engage in Selling...................................... 4

    **C.**   RSRs Are Minimally Supervised and Exercise Significant Discretion .................................................................................... 6

    **D.**   The REX Device is Simply a Tool for RSRs............................... 8

    **E.**   RSRs Are Not Supposed To Handle Large Amounts of Product ............. 8

ARGUMENT ...................................................................................................... 10

  **I.**   SIGNIFICANT RECORD EVIDENCE SUPPORTS HERSHEY'S POSITION THAT RSRS ARE EXEMPT AS OUTSIDE SALESPEOPLE, AND SUMMARY JUDGMENT MUST THEREFORE BE DENIED............... 11

    **A.**   Plaintiffs Do Not Address "Direct Selling," Let Alone Demonstrate a Lack of Disputed Facts and Accompanying Entitlement to Summary Judgment...................................................................... 12

    **B.**   Plaintiffs Have Failed to Demonstrate Undisputed Facts That Prove Incremental Selling Does Not Qualify As "Sales" Under The FLSA. ...................................................................................... 13

    **C.**   Plaintiffs' Arguments Regarding When Hershey "Books a Sale" Are Irrelevant and Internally Inconsistent.................................... 17

  **II.**  RECORD EVIDENCE SUPPORTING THE APPLICATION OF THE ADMINISTRATIVE EXEMPTION ALSO PRECLUDES SUMMARY JUDGMENT. ......................................................................... 18

    **A.**   The Record Clearly Contains Disputed Issues of Material Fact Relevant to the Administrative Exemption. ............................... 19

    **B.**   Courts Regularly Recognize that Jobs Similar to the RSR Position Are Exempt Under the Administrative Exemption................... 20

    **C.**   RSRs Are Also Exempt Administrative Employees Because They Function As Expert Consultants to Customer-Stores............... 22

  **III.**  SUMMARY JUDGMENT SHOULD ALSO BE DENIED BECAUSE DISPUTED FACTS PRECLUDE A FINAL DECISION REGARDING A COMBINATION EXEMPTION. ............................................... 24

CONCLUSION .................................................................................................. 25

1

## TABLE OF AUTHORITIES

2

### CASES

3

4

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................................ 11

5

*Andrade v. Aerotek*, Inc.,
    700 F. Supp. 2d 738 (D. Md. 2010) ........................................................................ 24

6

*Beauperthuy v. 24 Hour Fitness USA, Inc*.,
    No. 06-715, 2009 WL 3809815 (N.D. Ca. Nov. 10, 2009) .................................... 12

7

*Booth v. Intertrans Corp*.,
    Civ. A. No. 94-2359, 1995 WL 324631 (E.D. La. May 26, 1995) ........................ 25

8

*Campbell v. PricewaterhouseCoopers, LLP*,
    2008 U.S. Dist. LEXIS 86485 (E.D. Cal. March 24, 2008).................................... 24

9

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................................................ 11

10

11

*Christopher v. SmithKline Beacham*,
    2009 WL 4051075 (D. Az. Nov. 20, 2009) ............................................................ 16

12

*Dalheim v. KDFW-TV*,
    918 F.2d 1220 (5th Cir. 1990).................................................................................. 25

13

*Gregory v. First Title of America*,
    555 F.3d 1300 (11th Cir. 2009)................................................................................ 16

14

*Heffelfinger v. Elec. Data Sys. Corp*.,
    580 F. Supp. 2d 933 (C.D. Cal. 2008) .................................................................... 24

15

16

*Hines v. Longwood Events, Inc*.,
    2010 U.S. Dist. LEXIS 62259 (D. Mass. June 23, 2010) ...................................... 22

17

*Hogan v. Allstate Ins. Co.*,
    361 F.3d 621 (11th Cir. 2004)............................................................................ 21, 22

18

*In re Novartis Wage and Hour Litigation*,
    611 F.3d 141 (2d Cir. 2010)................................................................................ 16, 23

19

20

*Jackson v. Alpharma, Inc.*,
    2010 U.S. Dist. LEXIS 72435 (D.N.J. July 19, 2010) .......................................... 22

21

*Johnson v. Big Lots Stores, Inc.*,
    Nos. 04-3201, 05-6627, 2008 WL 2191305 (E.D. La. Feb. 20, 2008) .................. 12

22

*Maynor v. Dow Chemical Co.*,
    671 F.Supp.2d 902 (S.D.Tex. 2009) ................................................................. 12, 20

23

*Nielsen v. DeVry Inc.*,
    302 F. Supp. 2d 747 (W.D. Mich. 2003) ................................................................ 16

24

25

*Ortiz v. Lopez*,
    688 F. Supp. 2d 1072 (E.D. Cal. 2010).................................................................... 11

26

*Reich v. John Alden Life Ins. Co.*,
    126 F.3d 1 (1st Cir. 1997) ........................................................................................ 21

27

28

DEF.'S OPP. TO PLTFFS' MOTION FOR
PARTIAL S.J. RE EXEMPTIONS | C 08-1862 BZ

*Reiseck v. Universal Communs. of Miami, Inc.*,
   591 F.3d 101 (2d Cir. N.Y. 2010) ........................................................................... 23

*Reyes v. Texas Ezpawn, L.P.*,
   459 F. Supp. 2d 546 (S.D. Tex. 2006) ..................................................................... 25

*Ruggeri v. Boehringer Ingelheim Pharms., Inc.*,
   585 F. Supp. 2d 254 (D. Conn. 2008) ..................................................................... 23

*Schaefer-Larose v. Eli Lilly & Camp; Co.*,
   663 F. Supp. 2d 674 (S.D. Ind. 2009) ............................................................. 16, 22

*Smith v. Johnson & Johnson*,
   593 F.3d 280 (3d Cir. N.J. 2010) ............................................................................. 22

*Valladon v. Oakland*, No. 06-07478,
   2009 WL 2591346 (N.D. Cal. Aug. 21, 2009) ................................................. 12, 20

*Wilshin v. Allstate Ins. Co.*,
   212 F. Supp. 2d 1360 (M.D. Ga. 2002) ................................................................... 22

## STATUTES

29 C.F.R.
   § 541.200(a) ...................................................................................................... 19, 20
   § 541.201(c) ............................................................................................................. 23
   § 541.400(a)(1).......................................................................................................... 13
   § 541.501(b) ............................................................................................................. 13
   § 541.503(b) ............................................................................................................. 14
   § 541.503(c) ........................................................................................................ 14, 15

29 U.S.C.
   § 201 ............................................................................................................................. 1
   § 203(k) ..................................................................................................................... 16
   § 213(a)(1).................................................................................................................. 13
   § 270(i) ...................................................................................................................... 17
   § 541.400(a)(2)........................................................................................................... 13

## OTHER AUTHORITIES

Defining and Delimiting the Exemptions for Executive, Administrative,
   Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22,121,
   22,163 (Apr. 23, 2004).............................................................................................. 15

1

**PRELIMINARY STATEMENT**

2   Defendant The Hershey Company ("Hershey") hereby opposes Plaintiffs' Motion

3 for Partial Summary Judgment [Doc. No. 315] regarding the application of the federal

4 Fair Labor Standards Act's outside sales and administrative exemptions to Hershey's

5 Retail Sales Representative ("RSR") position (the "Motion").[1]  Plaintiffs' Motion simply

6 ignores the vast majority of the record evidence in this case, as well as large bodies of

7 applicable case law, instead relying upon the limited cherry-picked statements of a few

8 Named Plaintiffs and the decisions of a handful of courts in an attempt to justify a

9 baseless summary judgment motion.  Plaintiffs' Motion also incorrectly implies that

10 Hershey has the burden of proof on this motion – even though the Ninth Circuit has held

11 that the moving party on a Rule 56 motion always bears the burden of proof, including

12 when the issue at hand is an affirmative defense asserted by the non-moving party.  In

13 light of the magnitude and importance of the disputed facts, along with the extensive case

14 law that Plaintiffs have failed to acknowledge, Hershey respectfully suggests that

15 Plaintiffs' motion must be denied in its entirety.

16   Plaintiffs' arguments regarding the outside sales exemption rely on the unproven

17 assumption that no RSR sells directly to Hershey's customers, and that, instead, RSRs

18 simply deal with product that has already been sold by a Hershey Customer Services

19 Executive ("CSE").  Hershey has submitted record evidence, including from CSEs, that

20 shows that RSRs are directly responsible for additional sales not made by CSEs, and that

21 RSRs also sell to customer-stores that are not serviced by a CSE.  Given this factual

22 dispute, along with the significant volume of case law that recognizes that positions

23 similar to the RSR job are indeed exempt under the outside sales exemption of the Fair

24 Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), Plaintiffs' arguments under the

25 outside sales exemption are meritless and should be rejected.

26

27

28

---

[1]  Hershey is also filing, concurrently with this Opposition, a separate Opposition to Plaintiffs Separate Statement of Undisputed Facts.

DEF.'S OPP. TO PLTFFS' MOTION FOR
PARTIAL S.J. RE EXEMPTIONS | C 08-1862 BZ

1    Plaintiffs' position on the administrative exemption is similarly unfounded.  Even a

2    casual review of the factual record in this case demonstrates that there are a significant

3    number of material facts in dispute, regarding such pivotal inquiries as: the degree of

4    supervision Hershey exerts over RSRs; the extent to which RSRs are self-directed; and the

5    amount of time RSRs spend engaged in physical labor; among many others.  Plaintiffs'

6    argument that even Hershey's view of the facts does not support the administrative

7    exemption is baseless – as demonstrated herein, courts have consistently held, for years,

8    that employees holding positions that are similar to the RSR position can (and do) qualify

9    as exempt administrative employees because they perform work that is directed at the

10   business operations of the employer or the employer's customers.

11   Lastly, Plaintiffs have simply failed to acknowledge at all that the FLSA explicitly

12   allows for "combination exemptions" – *i.e.*, the situation where an employee who does not

13   engage in a single primary duty that satisfies either the administrative or outside sales

14   exemption independently is nonetheless exempt if he or she performs a combination of

15   duties that satisfy two exemptions in the aggregate.  Thus, Plaintiffs must not only prove

16   that no RSR (not just one or two Named Plaintiffs) has a primary duty that qualifies for

17   either exemption, but also that no RSR performs a combination of duties that, in the

18   aggregate, qualify for exempt status.  Plaintiffs have not accomplished this, nor could they

19   in light of the volume and severity of factual disputes in this case.  Accordingly the open

20   issues regarding the "combination exemption" provide an independently sufficient reason

21   why the Motion must be denied.

22                    **STATEMENT OF FACTS**

23   **A.    Hershey's Overall Sales Strategy**

24   In their Motion, Plaintiffs manufacture an overly narrow and limited

25   characterization of Hershey's sales strategy, and then rely upon that mischaracterization to

26   distort the true role of RSRs at Hershey.  In reality, substantial record evidence

27   demonstrates that RSRs are a key component of Hershey's overall approach to sales.

28   Hershey does not rely on any one job title to execute its sales strategy.   Instead,

DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
C 08-1862 BZ

employees at multiple levels of Hershey's organization are each responsible for selling and driving Hershey sales in particular ways and through interactions with particular levels of Hershey's customer-stores. (KohSweeny Decl. Ex. 28 at 200:16-205:8.) The critical and primary function of RSRs in this multi-level strategy is to provide coverage "on the ground" at customer-stores, and their unique role and skill set has been instrumental in driving Hershey's success. (KohSweeny Decl. Ex. 28 at 200:16-205:8; Ex. 1 ¶ 14.)

Hershey uses a retail sales organization that is made up of localized sales groups, primarily RSRs, dispersed across the country. (KohSweeney Decl. Ex. 1 ¶ 3.) These localized groups best know their own geographic territories and their own customer-stores and demographics, and so are perfectly positioned to increase sales for both Hershey and the customer-stores. (KohSweeney Decl. Ex. 1 ¶¶ 3, 7, 17.) RSRs serve a dual role – both as sales representatives for Hershey who increases Hershey's sales, and as retail sales consultants consulting with and assisting Hershey customer-stores to increase the customer-store's sales of Hershey products to its customers (i.e., the consumer). (KohSweeney Decl. Ex. 1 ¶ 17.) Indeed, most RSRs are drawn to the position because it is a sales position requiring sales experience and providing sales training. (KohSweeney Decl. Ex. 5 ¶¶ 4, 7-8, 15; Ex. 10 ¶¶ 5, 7-9, 13, 20; Ex. 9 ¶¶ 4, 6-7; Ex. 3 ¶¶ 3, 16; Ex. 8 ¶¶ 4, 8-9, 13; Ex. 43 ¶ 4; Ex. 45 ¶¶ 6-7; Ex. 47 ¶ 4; Ex. 50 ¶ 6; Ex. 52 ¶ 5; Ex. 60 ¶ 4; Ex. 64 ¶ 5.) Hershey expends significant time and effort providing RSRs not only with sales and consulting training, but also with tools and sales metrics that allow RSRs to discuss sales trends and metrics with KDMs from a position of authority and expertise. (KohSweeney Decl. Ex. 17.) RSRs also help each other by drafting for distribution, consideration and adoption by other RSRs documents called "Best Developed Practices" that demonstrate how other RSRs can replicate sales successes they have had. (KohSweeney Decl. Ex. 18; Decl. of Steve Wilson i/s/o Def. Opp., dated Jan. 26, 2011, at ¶ 5 & Ex. B; Ex. 43 ¶ 24, Ex. 44 ¶ 16; Ex. 57 ¶ 20; Ex. 65 ¶ 19; Ex. 68 ¶ 22.) The sales-focused nature of the RSR position is further evidenced by the fact that several Named Plaintiffs have, themselves,

1   highlighted their Hershey RSR sales experience and achievements in their subsequent job

2   searches.  (KohSweeney Decl. Ex. 20 Musolf Résumé ("successfully managed a seven

3   million dollar territory" and "maintaining a growth in sales that exceeds company

4   objectives"), Hallaran Résumé ("grew team sales . . . increased individual Wal-Mart sales

5   11%")), Miller Résumé ("increased sales by 10% . . . achieved quarterly sales and

6   seasonal sell through").)  The extent to which RSRs meet certain sales goals is also

7   reflected in their performance evaluations.  (Decl. of Christine Slotznick i/s/o Def. Opp.,

8   dated Jan. 26, 2011, at ¶ 5.)

9          **B.     Both RSRs and CSEs Engage in Selling**

10          None of this means that RSRs are the only salespeople at Hershey. With regard to a

11  number of larger customers Hershey obtains commitments for the sale of its product in the

12  first instance through Customer Service Executives ("CSEs").  (KohSweeney Decl. Ex. 1

13  ¶ 6; Decl. of Stephanie Shein i/s/o Def. Opp., dated Jan. 26, at ¶ 5.)  These sales occur

14  directly from Hershey to the customer at a corporate-to-corporate or "above the store"

15  level.  (KohSweeney Decl. Ex. 1 ¶ 6; Shein Decl. ¶ 3.)  That said, the mere fact that in

16  some instances sales start at the CSE level does not mean that they end there.  To the

17  contrary, the CSEs themselves understand that Hershey's entire sales philosophy and

18  strategy relies heavily upon the fact that additional sales will occur at the store level,

19  driven directly by RSRs.  (Shein Decl. ¶ 5.)  For example, assume that Hershey's total

20  sales to Customer A in 2010 totaled one thousand (1,000) cases of product, and Hershey's

21  goal for 2011 is to increase that sales total to one thousand two hundred (1,200) cases of

22  product to that same customer.  (Shein Decl. ¶ 6.)  In such an instance, the CSE would

23  usually only sell approximately nine hundred (900) cases of product because each year

24  CSEs sell less than the total amount sold to the customer the year before.   (Shein Decl.

25  ¶ 6.)  It is then up to RSRs to generate additional sales at the store level, adding up in the

26  aggregate – in the current example – to three hundred (300) cases of product.  (Shein

27  Decl. ¶ 6.)

28

DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
C 08-1862 BZ

1    Accordingly, the primary part of the RSR's job is encouraging each customer-store

2    to buy additional product above and beyond any order placed through the CSE – a process

3    referred to as "incremental selling." (Shein Decl. ¶ 7; Ex. 1 ¶ 20; Ex. 2 ¶ 6; Ex. 4 ¶ 14;

4    Ex. 5 ¶ 6; Ex. 3 ¶ 14; Ex. 7 ¶ 9; Ex. 11 ¶ 8; Ex. 42 ¶ 13; Ex. 43 ¶ 12; Ex. 44 ¶¶ 6-7; Ex. 46

5    ¶ 6; Ex. 47 ¶ 5; Ex. 48 ¶ 9; Ex. 49 ¶ 5; Ex. 51 ¶ 9; Ex. 54 ¶ 9; Ex. 62 ¶ 7; Ex. 63 ¶ 7.)

6    Most RSRs accomplish these incremental sales by selling directly to store-level key

7    decision makers ("KDMs") but many RSRs also sell to a customer-store's representative

8    who has responsibility for multiple customer-stores. (KohSweeney Decl. Ex. 2 ¶ 13; Ex.

9    3 ¶ 15; Ex. 7 ¶ 11; Ex. 42 ¶¶ 17-18; Ex. 43 ¶¶ 18-19.)

10    Of equal importance, not all Hershey customer-stores are serviced by a CSE. If a

11    client or customer-store is not assigned to a CSE, then the RSR that services that store is

12    responsible for all sales of Hershey product to that customer-store – a process called

13    "direct selling." (Shein Decl. ¶ 9; Ex. 1 ¶ 19; Ex. 4 ¶ 8; Ex. 5 ¶ 5; Ex. 9 ¶¶ 7-10; Ex. 3 ¶

14    15; Ex. 47 ¶ 5; Ex. 48 ¶ 7; Ex. 54 ¶ 15; Ex. 67 ¶ 4.) Several of the opt-in Plaintiffs in this

15    action perform this function. (Wilson Decl. ¶ 4 and Ex. A.) Separate and apart from

16    incremental and direct selling, RSRs are also tasked with increasing the "sell through" of

17    Hershey products, i.e., the amount of Hershey product sold by a customer-store to its

18    consumers. (KohSweeney Decl. Ex. 1 ¶ 21.) Increasing the sell through of Hershey

19    products has the dual affect of creating more demand by the customer-store for Hershey

20    product and also decreasing returns from the customer-store, thereby protecting Hershey's

21    revenue. (KohSweeney Decl. Ex. 1 ¶ 21; Ex. 45 ¶ 15; Ex. 47 ¶ 9.)

22    In sum, sales at Hershey are treated by all involved as a team process that is not

23    limited to just CSEs, or just RSRs, but rather a combination of both. For this reason, it is

24    not accurate to say that RSRs have no role in sales or merchandising plans that originate at

25    Hershey headquarters. (Opp. Sep. Stmnt. ¶¶ 7-9, 13-16, 26.) While some of these plans

26    originate at Hershey corporate, they are modified, expanded and implemented by RSRs at

27    the store level. (Decl. of Thomas Smuda i/s/o Def. Opp., dated Jan. 26, 2011 ("2011

28    Smuda Decl."), at ¶ 14.) This additional input by RSRs is a key part of the overall

- 5 -

1   Hershey sales plan and process and is integral to Hershey's approach to selling its

2   product.  (2011 Smuda Decl. ¶ 11.)

3          The positive effect that RSRs have on sales cannot be disputed.  For example, there

4   was a period within the time relevant to this action where RSR coverage in the field was

5   decreased – during this time, Hershey's sales dropped significantly until the company re-

6   dedicated the RSRs to the field.  (2011 Smuda Decl. ¶ 13.)  Similarly, every summer

7   RSRs have such a positive impact on chocolate syrup sales that the Hershey warehouses

8   run out of stock.  (2011 Smuda Decl. ¶ 16.)

9          **C.     RSRs Are Minimally Supervised and Exercise Significant Discretion**

10         As described above, RSRs are assigned and entrusted with significant

11  responsibility as to their accounts, which is a matter of extreme importance to Hershey – if

12  the RSR does not properly perform his or her job, Hershey can not meet its sales goals.

13  (2011 Smuda Decl. ¶ 9-10; Shein Decl. ¶ 5-8.)   Despite the importance of their function

14  and objectives, RSRs are provided with significant discretion and independent judgment

15  which allows and empowers them to create and execute on specific strategies they

16  develop and take appropriate actions to increase sales by a particular store at a particular

17  time.  (KohSweeney Decl. Ex. 1 ¶¶ 17-18.)  Each RSR is trained to act as the "CEO of

18  their territory," and to perform his or her job duties accordingly.  (KohSweeney Decl. Ex.

19  4 ¶ 15; Ex. 2 ¶ 7; Ex. 11 ¶ 10; Ex. 8 ¶ 20; Ex. 9 ¶ 23; Ex. 42 ¶ 11; Ex. 43 ¶ 12; Ex. 46 ¶

20  14; Ex. 48 ¶ 7; Ex. 54 ¶ 11; Ex. 55 ¶ 5; Ex. 56 ¶ 10; Ex. 62 ¶ 10; Ex. 63 ¶ 14; Ex. 64 ¶ 11;

21  Ex. 65 ¶ 10; Ex. 66 ¶ 10; G. Ex. 67 ¶ 6.)  RSRs work virtually independently, seeing their

22  direct supervisors just once or twice a month.  (KohSweeney Decl. Ex. 10 ¶ 10; Ex. 42 ¶

23  9; Ex. 45 ¶ 12; Ex. 49 ¶ 18; Ex. 1 ¶ 23.)  This empowerment allows RSRs to manage their

24  territories in an individualized manner that maximizes their sales and the sales of their

25  customer clients, and accordingly RSRs enjoy significant freedom, flexibility and

26  discretion in achieving Hershey's expectations.  (KohSweeney Decl. Ex. 4 ¶¶ 16-17; Ex.

27  10 ¶¶ 12, 15, 29; Ex. 9 ¶ 15; Ex. 8 ¶ 23; Ex. 7 ¶¶ 7-8, 10; Ex. 44 ¶ 12; Ex. 45 ¶ 12; Ex. 48

28  ¶ 7; Ex. 50 ¶ 20; Ex. 56 ¶ 14; Ex. 60 ¶ 7; Ex. 62 ¶ 10; Ex. 65 ¶ 18; Ex. 1 ¶ 18.)

DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
C 08-1862 BZ

Hershey provides the appropriate training necessary to give RSRs the skill set to spend the majority of their work time preparing to sell and selling Hershey products, performing sales-related tasks, and/or consulting with their KDMs on ways to increase the sale of Hershey products.  (KohSweeney Decl. Ex. 2 ¶¶ 16-17; Ex. 5 ¶ 7; Ex. 4 ¶¶ 5-7; Ex. 8 ¶¶ 7-10; Ex. 10 ¶¶ 7-10; Ex. 7 ¶¶ 19-21; Ex. 42 ¶ 7; Ex. 43 ¶¶ 6-9; Ex. 44 ¶¶ 9, 20-21; Ex. 45 ¶¶ 9-10; Ex. 46 ¶¶ 10-13; Ex. 47 ¶¶ 15-17; Ex. 48 ¶¶ 13-16; Ex. 49 ¶¶ 15-18; Ex. 50 ¶¶ 7-8; Ex. 51 ¶¶ 15-17; Ex. 52 ¶¶ 6-7; Ex. 53 ¶¶ 14-15; Ex. 54 ¶¶ 21-22; Ex. 55 ¶¶ 15-17; Ex. 56 ¶¶ 7-9; Ex. 57 ¶¶ 6-8; Ex. 58 ¶¶ 16-18; Ex. 59 ¶¶ 19-21; Ex. 60 ¶¶ 17-18; Ex. 61 ¶¶ 5-8; Ex. 62 ¶¶ 17-21; Ex. 63 ¶¶ 20-23; Ex. 65 ¶¶ 5-7; Ex. 66 ¶¶ 6-7; Ex. 67 ¶¶ 14-17; Ex. 68 ¶¶ 5-8.)  For example, in their consultative and sales roles RSRs use promotional materials (both provided by Hershey and created by the individual RSR) and analytical sales data to demonstrate successful sales strategies to KDMs, with the aim of convincing them both to implement such strategies and to order additional Hershey product.  (KohSweeney Decl. Ex. 9 ¶¶ 13-15; Ex. 10 ¶ 16; Ex. 6 ¶ 13; Ex. 7 ¶¶ 9, 14; Ex. 5 ¶ 7; Ex. 43 ¶ 15; Ex. 44 ¶ 13; Ex. 45 ¶ 19; Ex. 47 ¶ 6; Ex. 48 ¶ 11; Ex. 50 ¶¶ 17-18; Ex. 51 ¶¶ 12-13; Ex. 53 ¶ 5; Ex. 54 ¶ 10; Ex. 60 ¶ 13; Ex. 63 ¶ 9; Ex. 68 ¶ 17.)  Consistent with its philosophy that the local RSR best knows the individual market and the individual customer-store, Hershey doest not dictates the specific content of the sales calls or the particular materials that its RSRs use.  (KohSweeney Decl. Ex. 9 ¶ 15; Ex. 10 ¶ 15; Ex. 11 ¶ 11; Ex. 44 ¶¶ 13, 15; Ex. 46 ¶ 9; Ex. 48 ¶ 11; Ex. 49 ¶ 10; Ex. 50 ¶ 14; Ex. 51 ¶ 10; Ex. 53 ¶ 11; Ex. 54 ¶ 10; Ex. 55 ¶ 6; Ex. 60 ¶¶ 6, 13; Ex. 62 ¶ 8; G. Ex. 67 ¶ 10.)  To this end, and despite Plaintiffs' unfounded statements, documents like the Retail Call Procedure and the RSR guidelines are simply that – *guidelines* and *frameworks* from which RSRs are free to deviate as appropriate to drive sales.  (Opp. Sep. Stmnt. ¶¶ 16-25; Ex. 1 ¶¶ 27-28; Ex. 8 ¶ 15; Ex. 6 ¶ 18; Ex. 15 ¶¶ 3-4; Ex. 12 ¶ 5; Ex. 16 ¶¶ 3-5; Ex. 13 ¶¶ 2-3; Ex. 14 ¶ 5; Ex. 42 ¶ 15; Ex. 43 ¶ 16; Ex. 45 ¶16; Ex. 57 ¶ 13; Ex. 61 ¶ 14; Ex. 62 ¶ 18; Ex. 65 ¶ 11.)  Hershey only drafted these documents to answer common questions and provide a set of general guidelines.  (KohSweeney Decl. Ex. 1 ¶ 27; Ex. 28 62:9-16.)  In fact, RSRs

DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
C 08-1862 BZ

are praised to the extent they deviate from the call procedures and guidelines. (KohSweeney Decl. Ex. 16 ¶ 5.)

### D.     The REX Device is Simply a Tool for RSRs

Contrary to the Plaintiffs' allegations, the REX personal digital assistant does not monitor or control RSRs – rather it is a tool that is provided to RSRs and is used by them primarily for note-taking.  (Opp. Sep. Stmnt. ¶ 27; Decl. of Jeff Harsh i/s/o Def. Opp., dated Jan. 26, 2011, at ¶¶ 3-7; Ex. 5 ¶ 9; Ex. 9 ¶ 21; Ex. 2 ¶ 14; Ex. 7 ¶ 26; Ex. 42 ¶ 19; Ex. 63 ¶ 13.)  This is self-evident from the content of the REX data itself.  Hershey has filed concurrently herewith sample REX reports pertaining to ten (10) opt-ins.  (Harsh Decl. ¶ 5 & Ex. A.)  Each report simply indicates data such as the order of the stores visited (a reflection of the RSR's input), the time in each store (also a function of the RSR's input), the number of boxes sold, and the RSR's comments regarding key points of the visit for future reference.  (*See id.*)  Nothing in these reports demonstrates control or supervision – it is simply the electronic equivalent of a notepad so that an RSR can remember what happened at a customer-store during his or her last visit.

It is also a simple fact that RSRs can (and often do) modify the amount of time they spend in each store and the order in which to visit store at their discretion – these decisions are not mandated by REX.  (KohSweeney Decl. Ex. 5 ¶ 9; Ex. 8 ¶ 20; Ex. 4 ¶ 15; Ex. 9 ¶ 11; Ex. 10 ¶ 12; Ex. 6 ¶ 17; Ex. 2 ¶ 21; Ex. 42 ¶ 22; Ex. 43 ¶¶ 11, 16, 21; Ex. 44 ¶ 11; Ex. 45 ¶ 11; Ex. 46 ¶ 14; Ex. 48 ¶ 8; Ex. 49 ¶ 8; Ex. 50 ¶ 13; Ex. 51 ¶ 10; Ex. 52 ¶ 9; Ex. 56 ¶ 13; Ex. 57 ¶ 16; Ex. 61 ¶ 21; Ex. 63 ¶ 14; Ex. 64 ¶ 16; Ex. 65 ¶ 10; Ex. 66 ¶ 11; G. Ex. 67 ¶ 6.)  This is consistent with Hershey's expectation that it is the RSR himself or herself who should "determine[] when they start and when they stop" and that it is the RSR's decision as to whether a suggested route will be followed or changed. (Smuda Dep. 194:8-18, 197:5-18.)

### E.     RSRs Are Not Supposed To Handle Large Amounts of Product

Several RSRs have specifically testified that they spend most of their time selling and consulting and much less time physically handling product.  (Opp. Sep. Stmnt. ¶ 61-

DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
C 08-1862 BZ

69; Ex. 4 ¶ 10; Ex. 3 ¶¶ 3, 8, 11; Ex. 6 ¶ 11; Ex. 42 ¶¶ 12, 21; Ex. 44 ¶¶ 5, 8; Ex. 46 ¶ 5; Ex. 48 ¶ 10; Ex. 50 ¶ 11; Ex. 58 ¶ 14.)  More specifically, many have explicitly stated that they spend far less than half of their time physically touching product.  (KohSweeney Decl. Ex. 7 ¶ 18; Ex. 9 ¶¶ 19, 22; Ex. 10 ¶¶ 21-22; Ex. 3 ¶¶ 16-17; Ex. 2 ¶ 9; Ex. 11 ¶ 7; Ex. 43 ¶ 14; Ex. 54 ¶ 19.)  "Managing the manager" is an important skill precisely because it allows the RSR to ensure that employees of the customer-store are handling product (stocking, building displays, etc.), as opposed to the RSR.  (Wilson Decl. ¶ 5 & Ex. B; Ex. 5 ¶¶ 15-16; Ex. 9 ¶ 12; Ex. 7 ¶ 16; Ex. 42 ¶ 21; Ex. 43 ¶ 14; Ex. 44 ¶¶ 8, 18; Ex. 45 ¶¶ 5, 14; Ex. 46 ¶ 9; Ex. 47 ¶ 12; Ex. 48 ¶ 10; Ex. 49 ¶¶ 9, 13; Ex. 50 ¶ 11; Ex. 52 ¶ 13; Ex. 53 ¶ 6; Ex. 54 ¶ 15; Ex. 57 ¶ 14; Ex. 59 ¶ 14; Ex. 60 ¶ 10; Ex. 62 ¶ 11; Ex. 63 ¶ 15; Ex. 65 ¶ 12.)  Named Plaintiff Anderson admitted that Hershey did not want RSRs to pack out product, but that she did so because she was not as successful at "managing the manager" as other RSRs were or as Hershey wanted her to be.  (KohSweeney Decl. Ex. 21 at 133:1-135:2.)  Named Plaintiff Smith testified similarly.  (KohSweeney Decl. Ex. 32 at 104:23-105:4, 108:24-109:22.)

Plaintiffs frequently point to the word "merchandise" in certain documents as evidence that RSRs are expected to physically handle product.  In so referencing, Plaintiffs ignore the fact that Hershey does not use the term "merchandise" in this manner.  When Hershey provides that RSRs are responsible for the "merchandising of product," it means that RSRs are tasked with making sure that Hershey product is properly merchandised at the customer-store level—it does not mean that the RSR is responsible for the actual physical work of handling product.  (KohSweeney Decl. Ex. 1 ¶¶ 12-13.)  Accordingly, the RSR who is "responsible for merchandising product" is responsible not for handling product him or herself, but for making sure that the customer-store's employees are correctly displaying and filling product.  (*See id.*)

Lastly, Plaintiffs cite to a physical requirements document that purports to identify how frequently certain physical tasks are undertaken by RSRs.  Plaintiffs ignore, however, the fact that neither Hershey nor the RSRs themselves believe the document is accurate to

1   the extent that it is interpreted to refer to handling product – though it may be more

2   accurate if it is interpreted to refer to carrying a laptop and sales tools.  (KohSweeney

3   Decl. Ex. 1 ¶ 29; Ex. 16 ¶ 2; Ex. 12 ¶¶ 2-4; Ex. 14 ¶¶ 2-4; Ex. 15 ¶ 2.)  This is not

4   surprising given that the document was used solely as a guideline for health care providers

5   when considering physical restrictions for RSRs who were returning to work, and would

6   be supplemented by the individual RSR's own discussions with the health care provider in

7   question in a particular circumstance.  (KohSweeney Decl. Ex. 38 ¶¶ 4-5, 7.)  The

8   Hershey sales organization was not even consulted when the document was drafted and

9   the document is not intended to describe the duties of all RSRs.  (KohSweeney Decl. Ex.

10   1 ¶ 29; Ex. 38 ¶ 5.)

11                                   **<u>ARGUMENT</u>**

12          Summary judgment is only appropriate "when no genuine issue of material fact

13   exists and the moving party is entitled to judgment as a matter of law."  *Ortiz v. Lopez*,

14   688 F. Supp. 2d 1072, 1077 (E.D. Cal. 2010).  The moving party bears the initial burden

15   of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v.*

16   *Catrett*, 477 U.S. 317, 323 (1986).  Even though Hershey bears the burden of proof on its

17   affirmative defenses at trial, as the moving party for the instant motion, Plaintiffs must

18   still satisfy their initial burden by showing that there is an absence of evidence to support

19   the nonmoving party's case.  *See id.* at 325.

20          In addition, all evidence must be viewed in the light most favorable to Hershey,

21   and all justifiable inferences are to be drawn in Hershey's favor.  *See Anderson v. Liberty*

22   *Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Plaintiffs also may not simply point to three or

23   four Named Plaintiffs and expect the Court to extrapolate to the entire collective action

24   and find that those facts are undisputed – particularly not where, as here, numerous other

25   RSRs have provided contrary facts.[2]  (Opp. Sep. Stmnt. ¶ 6.)  In the collective action

26   context, a dispute of fact between collective action members must result in denial of the

27   _____

28   [2]    This sharp conflict of material facts also demonstrates why this case cannot be
determined on a collective basis and why decertification is appropriate – the Court simply
cannot assume that one RSR's experience is common to all RSRs.

DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
C 08-1862 BZ

summary judgment motion – the same effect as a dispute of fact regarding one plaintiff in the non-collective action context.  *See Maynor v. Dow Chemical Co.*, 671 F.Supp.2d 902 (S.D. Tx. 2009); *Valladon v. Oakland*, No. 06-07478, 2009 WL 2591346 (N.D. Cal. Aug. 21, 2009).  As demonstrated herein, material issues of fact exist with respect to whether Hershey properly classified RSRs as exempt outside salespersons and/or exempt administrative employees.[3]  Plaintiffs have not satisfied their burden of demonstrating the absence of any material fact and their Motion must be denied.

Further, this Court need not reach the merits of Plaintiffs' Motion at all.  This Court has been quite clear that it only conditionally certified a collective action, pending Hershey's right to bring a decertification motion at any time – including during trial.  (KohSweeney Decl. Ex. 39 at 31:23-32:16; Ex. 40 at 32:22-33:14.)  Granting summary judgment across the entire collective action under these circumstances is inappropriate.  *See Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06-715, 2009 WL 3809815, at \*6-\*7 (N.D. Ca. November 10, 2009).  The *Beauperthuy* court denied Plaintiffs' motion for summary judgment under the FLSA without considering it solely because "it would be premature to reach a conclusion as to Defendants' liability to a class of employees that [has] only been conditionally certified" in light of the fact that a "stricter review of the [certified collective] is still pending."  *See id.*

**I.      SIGNIFICANT RECORD EVIDENCE SUPPORTS HERSHEY'S POSITION THAT RSRS ARE EXEMPT AS OUTSIDE SALESPEOPLE, AND SUMMARY JUDGMENT MUST THEREFORE BE DENIED.**

Plaintiffs' argument under the outside sales exemption of the FLSA is predicated on the claim that RSRs themselves do not make sales – rather, CSEs make all Hershey sales at the headquarter-to-headquarter level.  This argument fails for two separate and independently sufficient reasons.  ***First***, some RSRs – including at least some opt-in plaintiffs – do sell directly to stores because no CSE services that particular customer.

---

[3]      Note that testimony or evidence stemming from RSRs that chose not to opt into the collective action is still relevant regarding RSR duties overall, Hershey's policies, and similar issues.  *See Johnson v. Big Lots Stores, Inc.*, Nos. 04-3201, 05-6627, 2008 WL 2191305, at \*2 (E.D. La. Feb. 20, 2008).

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
C 08-1862 BZ

1    **Second**, even with regard to customer-stores that belong to a chain that is serviced by

2    CSEs, record evidence demonstrates that RSRs are responsible for selling additional

3    product over and above what is sold by the CSE.  These deficiencies in Plaintiffs'

4    argument are discussed herein, and each mandates that Plaintiffs' motion be denied.[4]

> ### A.    Plaintiffs Do Not Address "Direct Selling," Let Alone Demonstrate a Lack of Disputed Facts and Accompanying Entitlement to Summary Judgment.

7         Section 13(a)(1) of the FLSA lists an "outside salesman" as one of several

8    categories of overtime-exempt employee, and it defines a "sale" as "***any*** sale, exchange,

9    contract to sell, consignment for sale, shipment for sale, ***or other disposition***."  29 U.S.C.

10   §§ 213(a)(1) & 203(k) (emphasis added).[5]  The implementing regulations further state that

11   an outside salesperson must have a "primary duty" of "making sales within the meaning

12   of [Section 203(k)]" or "obtaining orders . . . for which a consideration will be paid by the

13   client or customer."  29 C.F.R. § 541.400(a)(1).  Under this definition, RSRs' direct

14   selling activities – as defined and explained above – clearly and manifestly constitute

15   sales activity.  RSRs who sell directly are solely responsible for whatever sales of Hershey

16   products occur to those customer stores.  Plaintiffs ignore this point and rely on the

17   argument that it is the CSEs who do the actual selling.  This argument clearly self-

18   destructs to the extent there are no CSEs assigned to some customer-stores serviced by

19   RSRs.  Since Plaintiffs have not shown (and cannot show) that direct sales do not occur

20   and have not demonstrated why direct sales are not "sales" under Section 203(k), and

21   particularly in light of Hershey's uncontroverted evidence that a number of RSRs

22   (including some opt-in plaintiffs) do in fact engage in direct selling, Plaintiffs have failed

23

---

24   [4]     Plaintiffs do not contest that RSRs meet the so-called "location test" of the outside
25   sales exemption.  *See* 29 U.S.C. § 541.400(a)(2).  Accordingly, this Opposition focuses on
     the "primary duty" test.
26   [5]     Plaintiffs continue to argue, as they have throughout this litigation, that a "sale"
     requires a "transfer of title to tangible property."  (Mot. at p. 4.)  Of course, Plaintiffs are
27   selectively quoting from the regulation – which actually states that sales ***include*** such
     transactions, but are not limited to them.  *See* 29 C.F.R. § 541.501(b).  As the case law
28   discussed herein recognizes, "sales" under Section 203(k) is a significantly broader
     concept than Plaintiffs wish to admit.

DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
C 08-1862 BZ

to carry their burden under Rule 56 and their motion must be denied.[6] (*See*, *supra*, pp. 4-6.)  This result does not change just because Plaintiffs have pointed to some RSRs who do not direct-sell – the Court cannot extrapolate from these few examples across the entire collective action in the face of record evidence demonstrating that RSRs do direct-sell.

**B.**    **Plaintiffs Have Failed to Demonstrate Undisputed Facts That Prove Incremental Selling Does Not Qualify As "Sales" Under The FLSA.**

The bulk of Plaintiffs' argument is based on the fiction that CSEs are the actual and only salespeople at Hershey and that RSRs simply handle product that has already been sold by the CSE.  This argument is both factually and legally incorrect and Plaintiffs' Motion should therefore be denied.

Factually, Plaintiffs' argument is wrong for the reasons stated above – CSEs are not the sole drivers of sales at Hershey.  CSEs are responsible for certain sales, but Hershey relies on the RSRs to increase these baseline sales to the level of sales that Hershey has targeted.  Hershey has submitted evidence to this effect from RSRs, from CSEs, and from Hershey's executives.  (*See*, *supra*, pp. 4-6.)  If Plaintiffs contend otherwise, there is clearly a disputed issue of fact that precludes summary judgment.  That said, Plaintiffs' argument also misapprehends the law.  Interestingly, Plaintiffs appear to concede that certain promotional work – such as building displays, rotating product, and the like – qualifies as exempt outside sales work so long as the work is completed in conjunction with the RSR's own sales.  (Mot. at p. 5; 29 C.F.R. § 541.503(b).)  Accordingly, to the extent that RSRs incrementally sell additional product (product that was not sold by a CSE), the Plaintiffs essentially concede that RSRs are properly classified exempt.

Plaintiffs attempt to avoid this result by arguing that, setting aside the impact of CSEs, RSRs cannot directly punch in orders themselves.   This argument both misreads

_____
[6]    Regardless of what this Court may or may not rule with respect to the legal status of incremental selling.

DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
C 08-1862 BZ

and ignores the intent of the relevant regulations.  Plaintiffs cite and rely on the following language as an example of non-exempt work:

> a company representative who visits chain stores, arranges the merchandise on shelves, replenishes stock by replacing old with new merchandise, sets up displays and consults with the store manager when inventory runs low, but does not ***obtain a commitment*** for additional purchases.  The arrangement of merchandise on the shelves or the replenishing of stock is not exempt work unless it is incidental to and in conjunction with the employee's own outside sales.
> 29 C.F.R. § 541.503(c) (emphasis added).

The language emphasized above is critically important, yet ignored by Plaintiffs.  In the course of revising the old regulations in 2004, the DOL specifically revised its proposed language for this section to recognize that, with changes in technology, a salesperson frequently achieves a sale by having a customer representative place his or her own order electronically, rather than by having the customer give the order directly to the salesperson.  *See* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22,162-22,163 (Apr. 23, 2004).

The language was changed to avoid a result where the exempt status of an outside sales employee would depend on whether it is "the sales employee or the customer who types the order into a computer system and hits the return button."  *Id.*  This analysis demonstrates that whether or not the RSR punches in the order is of no moment.  The relevant question is whether RSR him- or herself is making the sale, not whether or not the RSR physically places the order.  As demonstrated above, the sale is the RSR's because it is the RSR's efforts and knowledge that lead to incremental sales – sales which do not occur on the CSE level and which would not occur in the absence of the RSR.

Plaintiffs also contend that certain cases involving pharmaceutical sales representatives ("PSRs") should determine the outcome of this case.  This argument is unavailing, and the line of cases referenced by Plaintiffs actually supports Hershey's position.  First, these cases recognize that PSRs are actually ***forbidden by federal law***

1    *from selling* the products that they market to the actual people that buy the products.  *See*

2    *In re Novartis Wage and Hour Litigation*, 611 F.3d 141, 144 (2d Cir. 2010).  Second,

3    because of this limitation PSRs market the drugs to ***doctors***, but the actual sale transaction

4    occurs between the PSR's employer and ***a warehouse or pharmacist***.  *See id.*  There are

5    no such divisions in this case – RSRs sell (directly or incrementally) to the actual entities

6    that purchase Hershey product and are not limited or barred from doing so in any way.  It

7    is also instructive to note that some courts that have considered the PSR position have

8    found PSRs to be outside salespeople despite the restrictions discussed above.  *See*

9    *Christopher v. SmithKline Beacham*, 2009 WL 4051075 (D. Az. Nov. 20, 2009) (granting

10   summary judgment for defendant because PSRs qualified for the outside salesperson

11   exemption); *Schaefer-LaRose v. Eli Lilly & Company*, 663 F. Supp. 2d 674, 686 (S.D. Ind.

12   2009) (holding that PSRs had a primary duty of "making sales" under the FLSA); *see also*

13   *Gregory v. First Title of America*, 555 F.3d 1300 (11th Cir. 2009) (holding that a

14   "marketing director" for a title company was an exempt outside salesperson, where she

15   had the primary duty of bringing in orders for insurance from realtors, brokers, and

16   lenders, even though the ultimate purchase of insurance would be made by a home buyer).

17         Cases such as *Christopher*, *Schaefer*, and *Gregory* all give meaning and effect to

18   the above-referenced regulatory definition of "sale," which is quite broad:  "***any*** sale,

19   exchange, contract to sell, consignment for sale, shipment for sale, ***or other disposition***."

20   29 U.S.C. § 203(k) (emphasis added).  RSRs, who receive sales training, are armed with

21   sales metrics and statistics, and meet with decision-makers in an effort to obtain direct or

22   incremental sales, clearly engage in "sales" under this broad definition.  Indeed, the so-

23   called Nielsen factors – which originated in *Nielsen v. DeVry Inc.*, 302 F. Supp. 2d 747

24   (W.D. Mich. 2003), and are frequently used to guide the definition of "sales" – support a

25   finding that RSRs are exempt because RSRs:  receive specialized sales training; are

26   compensated in part based on Hershey's sales performance in their region; are hired and

27   denominated as sales people; replied to recruiting for a sales position; and have little to no

28   direct supervision.  (*See, supra*, pp. 2-8; KohSweeney Decl. Ex. 41 at  ¶¶ 5, 6, 10.)

DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
C 08-1862 BZ

The remainder of Plaintiffs' arguments are also unpersuasive:

- Hershey is not required to compensate RSRs on a commission basis – The fact that Hershey doesn't compensate RSRs on a commission basis simply doesn't matter, as the outside sales exemption does not require commission compensation.   Congress certainly knows how to require commissions in the context of sales exemptions, as it did for the retail sales exemption under the FLSA.  *Compare* 29 U.S.C. § 270(i). Congress chose not to require commission compensation for outside sales employees, and Plaintiffs' arguments in Section II(B)(4) of their Motion are irrelevant.  The more pertinent fact is that RSRs are paid in part based on the sales performance of their district, consistent with *Nielsen*, *supra*.

- Hershey is not required to track RSRs' individual sales – Plaintiffs put significant weight in Section II(B)(7) of their Motion on the fact that Hershey does not track individual RSR sales, yet fail to cite a single statute, regulation, or case in support of the idea that the outside sales exemption requires an employer to track individual sales. This failure is not surprising; there is simply no such requirement.  As explained above, Hershey employs a multi-level selling strategy where sales are driven at multiple levels of Hershey's organization by touching multiple levels of the customer-store's organization.  As part of this team-based approach, Hershey does not – and need not – break out sales by CSE, or RSR, or otherwise.  (Opp. Sep. Stmnt. ¶¶ 53-57.)

- The "internal time study" cited by Plaintiffs does not apply to RSRs – In Section II(B)(6) of the Motion, Plaintiffs rely on a supposed "internal time study" prepared by Hershey.  However, this document does not apply to the RSR position and Plaintiffs' reliance on it is therefore misplaced.  (Opp. Sept. Stmnt. ¶¶ 51-52; 2011 Smuda Decl. ¶ 19.)

- The non-exempt Status of the RSM Position is irrelevant – Plaintiffs argue, in Section II(B)(9), that the RSR position must be non-exempt because it is similar to the part-time RSM position.  This argument proves nothing, because RSMs are not

1   provided with the same sales training or tools as RSRs and are held to different

2   standards.  (Opp. Sep. Stmnt. ¶ 60.)  Regardless, the exempt status of the RSR must

3   stand or fall on the record evidence and the applicable law, and not on the exempt (or

4   non-exempt) status of some other position for which little record evidence exists.

5          For all these reasons, at the very least a triable issue of fact exists regarding

6   whether or not the RSRs' incremental selling qualifies as "sales" under Section 203(k)

7   and the Motion should be denied for this reason as well.

8          **C.    Plaintiffs' Arguments Regarding When Hershey "Books a Sale" Is
              Irrelevant and Internally Inconsistent.**

9

10         A significant portion of Plaintiffs' argument regarding the outside sales exemption

11  relies on the idea that Hershey "books a sale" for accounting purposes when product

12  leaves Hershey's warehouse and, therefore, RSRs do not "sell" for purposes of the FLSA.

13  Although it is true that ***for accounting purposes only*** Hershey "books" a sale at the time

14  of shipment, Plaintiffs have failed to demonstrate why this fact is relevant to the case at

15  hand.  (Opp. Sep. Stmnt. ¶¶ 11-12, 29–49.)  Plaintiffs have not cited to any statute,

16  regulation, or case to support the idea that a company's accounting practices are relevant –

17  let alone dispositive – on the issue of when a "sale" occurs.  It is self-evident that

18  accounting practices are governed by one set of rules and obligations and exemption

19  status under the FLSA is governed by another.  In other words, the sole test regarding

20  what constitutes a "sale" under the FLSA is found in Section 203(k).  Nothing in that test

21  inquires into accounting conventions, and Plaintiffs' argument can therefore be dismissed

22  on that basis alone.

23         In addition, even if accounting conventions were in some way relevant to the

24  question of what a "sale" is under Section 203(k) (and they are not), the Plaintiffs'

25  argument does not shed any light on the key issue at hand.  Assuming for the moment that

26  a "sale" under Section 203(k) occurs when the seller recognizes the sale for accounting

27  purposes, this Court cannot determine whether a given product that is leaving Hershey's

28  warehouse is doing so as the result of a direct sale by an RSR, an incremental sale by an

DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
C 08-1862 BZ

1   RSR, a corporate-to-corporate sale by a CSE, or some combination thereof.  Plaintiffs ask

2   this Court to assume that it must have been a CSE's sale, but on summary judgment all

3   facts are construed in favor of Hershey and Hershey has provided record evidence

4   demonstrating that sales are often the result of incremental sales and direct sales – not just

5   corporate-to-corporate sales.   This also highlights the inconsistency of Plaintiffs'

6   arguments – Plaintiffs clearly contend that when a CSE engages in a corporate-to-

7   corporate sale, it is a "sale" under Section 203(k) (even though the sale has not yet been

8   recognized for accounting purposes, since the product has not yet left the distribution

9   center).  Why, then, is the accounting convention only relevant for the RSRs' direct sales

10  or incremental sales?  Or are the Plaintiffs really arguing that CSEs are not "selling"

11  either, and that the accounting convention means that the real salesperson is the driver of

12  the truck after he or she leaves the distribution facility?  For all these reasons, Plaintiffs'

13  arguments regarding accounting conventions are irrelevant and their proposed "facts"

14  regarding the same are not material.

15  **II.    RECORD EVIDENCE SUPPORTING THE APPLICATION OF THE
        ADMINISTRATIVE EXEMPTION ALSO PRECLUDES SUMMARY
16      JUDGMENT.**

17         Hershey has contended, since the inception of this litigation, that the FLSA's

18  administrative exemption also applies to RSRs.  This exemption consists of a three-part

19  test: was the employee compensated "on a salary or fee basis at a rate of not less than

20  $455 per week;" did the employee have a primary duty of performance of "office or non-

21  manual work directly related to the management or general business operations of the

22  employer or the employer's customers;" and did the employee have a primary duty which

23  included "the exercise of discretion and independent judgment with respect to matters of

24  significance."  29 C.F.R. § 541.200(a).[7]  Plaintiffs' Motion must be denied with regard to

25  this exemption both because of significant issues of disputed material fact and because

26

27  _____

28  [7]    Plaintiffs do not dispute that RSRs satisfy the first prong of this analysis (the salary
    basis test).

- 18 -

1   courts have regularly recognized that jobs quite similar to the RSR position are exempt

2   under the FLSA's administrative exemption.

3       **A.     The Record Clearly Contains Disputed Issues of Material Fact Relevant
                  to the Administrative Exemption.**

4

5           As noted above, Plaintiffs bear the burden of demonstrating that no disputed issues

6   of fact exist and that the undisputed facts mandate a ruling in their favor as a matter of

7   law.  Plaintiffs' Motion with regard to the administrative exemption must therefore be

8   denied because even a casual review of the factual record demonstrates multiple and

9   significant disputes regarding material facts.

10          Hershey has presented evidence that shows:  REX is not a supervisory tool; RSRs

11  are very lightly supervised by  and rarely even see their managers; RSRs have flexibility

12  regarding the order in which they visit their customer-stores, the amount of time they

13  spend at their customer-stores, and the method and manner of their presentations at those

14  stores; the "retail call procedures" and "RSR guidelines" are just that, guideline

15  documents that RSRs can and do regularly deviate from; RSRs are not bound by scripts

16  and regularly prepare their own materials for meetings with customers; RSRs spend less

17  than half their time physically handling Hershey product; and RSRs function as "CEOs of

18  their own territory" and are left to their own judgment regarding how to increase sales.

19  *(See, supra,* pp. 6-10.)  In the face of this evidence, Plaintiffs argue that one or two of the

20  Named Plaintiffs spent most of their time physically handling Hershey product, were

21  bound by the terms of the "retail call procedures" and "RSR guidelines," and otherwise

22  were heavily supervised and foreclosed from exercising discretion.

23          Under such circumstances, this record clearly precludes summary judgment with

24  regard to the administrative exemption – which largely depends on the degree to which

25  RSRs exercised independent judgment and discretion and engaged in non-manual work.

26  *See* 29 C.F.R. § 541.200(a); *Celotex*, 477 U.S. at 323; *Maynor v. Dow Chemical Co.*,  671

27  F.Supp.2d 902 (S.D. Tx. 2009); *Valladon v. Oakland*,  2009 WL 2591346 (N.D. Cal.

28  August 21, 2009).  As noted previously, Plaintiffs' strategy appears to be to point to one

DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
C 08-1862 BZ

1   or two Named Plaintiffs who claim to have been closely supervised, or not allowed to

2   exercise discretion, and then expect the Court to extrapolate this contention across the

3   entire collective action.  This extrapolation is impossible, however – Plaintiffs have not

4   demonstrated that what is allegedly true for these few Named Plaintiffs is true for the

5   entire collective action, and Hershey has affirmatively demonstrated the opposite.

6   Accordingly, the only way to resolve these issues of discretion, judgment, and level of

7   supervision, is to examine each individual RSR at trial.  Plaintiffs' Motion should

8   therefore be denied.

9   **B.  Courts Regularly Recognize that Jobs Similar to the RSR Position Are Exempt Under the Administrative Exemption.**

10

11   Plaintiffs also argue that even if the facts as Hershey presents them are true, RSRs

12   can not be exempt administrative employees because they do not effect or create Hershey

13   policy with regard to management or business operations.  However, this is an

14   unjustifiably narrow reading of the regulation – one which ignores a significant body of

15   case law recognizing that jobs similar to the RSR position are administratively exempt.

16   For example, in *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 10 (1st Cir. 1997), the court

17   held that plaintiffs, whose day-to-day activities were representing their employer to

18   independent sales agents who would purchase their employer's products, were

19   administrative employees.  As their employer's primary contact with the market, the

20   plaintiffs in question: represented the company by keeping the market informed of

21   changes in the employer's product offerings and pricing structure; and promoted sales by

22   advising insurance agents as to which of the employer's products to market against

23   competing products.  *See id.*  Like RSRs, the plaintiffs in *Reich* did not use prepared

24   scripts or statements, nor did they operate within the contours of a prescribed technique or

25   "sales pitch."  *See id.* at 14.  This job was indistinguishable from the RSR position.

26   Similarly, in *Hogan v. Allstate Ins. Co.*, 361 F.3d 621, 627 (11th Cir. 2004), the

27   Eleventh Circuit held that Allstate's insurance agents were exempt administrative

28   employees.  Even though the plaintiffs did not have unlimited discretion – they were

- 20 -

required to have an approved business plan, attend training sessions, keep their offices
open for a certain number of hours per week, and use training materials provided by their
employer – the court held that the agents were exempt because they had discretion in
areas such as "promoting sales, advising customers, [and] adapting policies to customers'
needs." *Id.*; *accord Wilshin v. Allstate Ins. Co.*, 212 F. Supp. 2d 1360 (M.D. Ga. 2002)
(holding that insurance agents who represented the company, marketed company
products, and assisted company clients was an exempt administrative employee).  A
number of more recent pharmaceutical cases also have reached the same conclusion.  *See
Smith v. Johnson & Johnson*, 593 F.3d 280, 285 (3d Cir. N.J. 2010) (holding that sales
representative whose duties involved "a high level of planning and foresight" and who
executed "nearly all of her duties without direct oversight" was an administrative
employee); *Jackson v. Alpharma, Inc.*, 2010 U.S. Dist. LEXIS 72435, *10-11 (D.N.J. July
19, 2010) (holding that pharmaceutical sales representatives who were "assigned a
geographic territory for which they were solely responsible," "worked alone the majority
of the time," and "controlled their territory by developing business plans designed to grow
their business and also by governing their own day-to-day activities" were administrative
employees); S*chaefer-Larose v. Eli Lilly & Camp, Co.*, 663 F. Supp. 2d 674, 689-694
(S.D. Ind. 2009) (employee whose job was to promote the employer's medications in
general within her geographical sales territory in an effort to have physicians prescribe the
pharmaceuticals, thereby increasing overall sales, was an administrative employee).  The
*Smith* holding is particularly applicable, since the court referred to testimony in which the
plaintiff "described herself as the manager of her own business who could run her own
territory as she saw fit" – exactly as some RSRs describe themselves.  (*See, infra*, p. 6.)

Decisions from outside the pharmaceutical industry recognize the same principles.
*See, e.g., Hines v. Longwood Events, Inc*., 2010 U.S. Dist. LEXIS 62259 (D. Mass.
June 23, 2010) (employees who deal with clients and determine how to best "pitch" them
are exempt, even though they are guided by "an employee handbook and a scripted
response to one client question," because conversations with client overall "were dictated

1  not by scripts . . . but rather by the specific needs of individual customers as gleaned by

2  the" plaintiff); *cf. Reiseck v. Universal Communs. of Miami, Inc.*, 591 F.3d 101, 106-108

3  (2d Cir. N.Y. 2010) (recognizing that an employee who encourages an increase in sales

4  generally among the employer's customers is an administrative employee).

5       All of these cases – from a variety of jurisdictions, and across a wide period of time

6  – support the contention that RSRs are exempt.  All involve jobs, like the RSR job, that

7  were lightly supervised, and trusted to deal with the employer's customers in the way the

8  employee deemed most appropriate to drive sales and support the employer's operations.

9  Notably, two pharmaceutical cases relied on by Plaintiffs held that the administrative

10  exemption did not apply ***because of the level of supervision, control, and scripting***

11  ***asserted by the employer over the employee***.  *See In re Novartis Wage & Hour Litigation*,

12  611 F.3d 141, 156-157 (2d Cir. 2010) (plaintiffs operate within "severe limits" and "are

13  forbidden to answer any question for which they have not been scripted"); *Ruggeri v.*

14  *Boehringer Ingelheim Pharms., Inc.*, 585 F. Supp. 2d 254, 264 (D. Conn. 2008) (plaintiffs

15  were frequently supervised and used presentations and scripts that they did not develop

16  themselves).  These cases are distinguishable given the record evidence demonstrating

17  that RSRs are lightly supervised, are not provided with scripts, and are free to deviate

18  from their guideline materials.  RSRs are not required or encouraged to use canned scripts

19  when making sales pitches to the KDMs at customer-stores. (KohSweeney Decl. Ex. 46 ¶

20  9; Ex. 53 ¶ 11; Ex. 60 ¶ 6; Ex. 62 ¶ 8; Ex. 11 ¶ 11.)  In fact, RSRs tailor their sales pitches

21  to address the different proclivities of KDMs and the various needs of customer-stores.

22  (KohSweeney Decl. Ex. 44 ¶ 13; Ex. 48 ¶ 11; Ex. 51 ¶ 10; Ex. 53 ¶ 11; Ex. 54 ¶ 10; Ex.

23  55 ¶ 6; Ex. 60 ¶¶ 6, 13; Ex. 62 ¶ 8; Ex. 9 ¶ 15; Ex. 11 ¶ 11.)  For these reasons, Plaintiffs'

24  argument that RSRs are not administrative employees should be rejected.

25  **C.**    **RSRs Are Also Exempt Administrative Employees Because They Function As Expert Consultants to Customer-Stores.**

26

27       It must also be recognized that:

28       An employee may qualify for the administrative exemption if

DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
C 08-1862 BZ

the employee's primary duty is the performance of work directly related to the management or general business operations *of the employer's customers*. Thus, for example, *employees acting as advisers or consultants to their employer's clients or customers* (as tax experts or financial consultants, for example) *may be exempt*.

29 C.F.R. § 541.201(c) (emphasis added).

This principle is directly applicable to RSRs because one of their primary duties – as part of their consultative selling efforts – is to regularly advise Hershey's customer-stores regarding how to sell more candy to the customer-store's shoppers. Courts routinely hold that such consulting-type jobs qualify for the administrative exemption. For example, in *Heffelfinger v. Elec. Data Sys. Corp.*, 580 F. Supp. 2d 933 (C.D. Cal. 2008), employees whose job was to consult with their employer's clients regarding the design and implementation of software systems were found to be administrative exempt employees. *See id.*; *see also Campbell v. PricewaterhouseCoopers, LLP*, 2008 U.S. Dist. LEXIS 86485 (E.D. Cal. March 24, 2008) (tax consultants are exempt administrative employees); *cf. Andrade v. Aerotek*, Inc., 700 F. Supp. 2d 738 (D. Md. 2010) (employee who performed support functions for the employer's client was exempt).

There would be little doubt that the administrative exemption would apply if the RSR was a position that advised *Hershey* regarding market trends and industry metrics so as to increase the sale of Hershey products. The regulation and cases cited above demonstrate that this result does not change simply because the RSRs are providing their advice and consulting services to *Hershey's clients* instead. Accordingly, Plaintiffs' argument that RSRs do not affect Hershey operations and therefore can not be administrative employees – in addition to running afoul of the case law discussed in the prior section – also ignores the bedrock principle that affecting client's operations also qualifies as exempt work. This provides yet another independently sufficient reason why Plaintiffs' motion must be denied.

1

**III.    SUMMARY JUDGMENT SHOULD ALSO BE DENIED BECAUSE
DISPUTED FACTS PRECLUDE A FINAL DECISION REGARDING A
COMBINATION EXEMPTION.**

2

3         As demonstrated above, there is significant record evidence demonstrating that

4    RSRs are exempt as administrative and/or outside sales employees.  This evidence creates

5    disputed issues of material fact that render summary judgment improper.  It should also be

6    noted that the administrative and outside sales exemptions are not an "either/or" affair – in

7    fact, the FLSA's implementing regulations explicitly recognize that an employee can be

8    exempt because he or she performs a mix of exempt duties under different exemptions.

9    This provides another reason why summary judgment should be denied.

10        The FLSA's regulations provide that:

11            Employees who perform a combination of exempt duties as set
              forth in the regulations in this part for executive,
12            ***administrative***, professional, ***outside sales*** and computer
              employees may qualify for exemption.  Thus, for example, an
13            employee whose primary duty involves a combination of
              exempt administrative and exempt executive work may
14            qualify for exemption.  In other words, ***work that is exempt
              under one section of this part will not defeat the exemption***
15            ***under any other section***.
              29 C.F.R. § 541.708 (emphasis added).
16

17   Pursuant to this regulation, exemptions may be "tacked" and duties combined such that an

18   employee who performs more than one type of exempt work is properly considered

19   exempt – even though no single duty, considered alone, can be deemed the employee's

20   primary duty.  *See, e.g., Dalheim v. KDFW-TV*, 918 F.2d 1220, 1232 (5th Cir. 1990).

21   Where insufficient facts exist to determine whether the employees' duties, taken together,

22   can satisfy a combination of exemptions, or where there are disputes as to said facts,

23   summary judgment should be denied and a jury should be allowed to make the necessary

24   factual findings.  *See Reyes v. Texas Ezpawn, L.P.*, 459 F. Supp. 2d 546, 563 (S.D. Tex.

25   2006) (holding that the combination exemption did not provide a basis for granting a

26   motion for summary judgment because the facts concerning the employee's job duties

27   were in dispute); *Booth v. Intertrans Corp.*, Civ. A. No. 94-2359, 1995 WL 324631, *15

28   (E.D. La. May 26, 1995) (same).

DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION
C 08-1862 BZ

1       This principle is directly applicable to the role of RSRs and to Plaintiffs' Motion.

2   Hershey has demonstrated that some RSRs engage in direct selling, some engage in

3   incremental selling, and that most or all provide expert consulting advice to Hershey's

4   customer-stores.  Hershey has also shown that so-called "physical merchandising" can be

5   exempt activity under the outside sales exemption and that the tools and discretion

6   afforded to all RSRs (or at least those who perform the job as Hershey "expects") support

7   application of the administrative exemption under established case law.  Plaintiffs have, at

8   the absolute most, demonstrated that one or two Named Plaintiffs – who, not surprisingly,

9   are former employees – contend that their jobs consisted of nothing but physical labor.

10  Whether or not a fact-finder would believe them is not an issue that can be determined

11  based on summary judgment.  In addition, the added complexities of tacking exemptions

12  mean that Plaintiffs also have to show that no combination of duties can qualify for

13  exempt status – such as, for example, spending twenty percent (20%) of one's time

14  engaging in direct selling and thirty-one percent (31%) of one's time providing expert

15  consultation to other customers.  These complexities simply can not be determined on

16  summary judgment as to any RSR, let alone all one hundred plus Named Plaintiffs and

17  opt-in Plaintiffs.  Accordingly, summary judgment should be denied.

18                              **<u>CONCLUSION</u>**

19      For the reasons discussed above, Hershey respectfully requests that this Court deny

20  Plaintiffs' Motion in its entirety.

21  Dated: January 26, 2011.                O'MELVENY & MYERS LLP
                                            FRAMROZE M. VIRJEE
22                                          CHRIS A. HOLLINGER
                                            MICHAEL W. GARRISON, JR.
23                                          ADAM P. KOHSWEENEY

24

25                                          By:_____/s/ Framroze M. Virjee_____
                                                    Framroze M. Virjee
26                                          Attorneys for Defendant
                                            THE HERSHEY COMPANY
27

28  81196

                        - 25 -        DEFENDANT'S OPPOSITION TO PLAINTIFFS'
                                      MOTION FOR CLASS CERTIFICATION
                                      C 08-1862 BZ