FRAMROZE M. VIRJEE (S.B. #120401)
fvirjee@omm.com
MICHAEL W. GARRISON, JR. (S.B. #212647)
mgarrison@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile:   (213) 430-6047

CHRIS A. HOLLINGER (S.B. #147637)
chollinger@omm.com
ADAM P. KOHSWEENEY (S.B. #229983)
akohsweeney@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA  94111-3305
Telephone: (415) 984-8700
Facsimile:   (415) 984-8701

Attorneys for Defendant
THE HERSHEY COMPANY

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JULIE CAMPANELLI, SABRINA ANDERSON, NANCY SMITH, TARYN SEDGELEY GOLIN, KEVIN SHANAHAN, FRANCIS MCKEEVER, BRYAN MILLER, JAMES AMICARELLA, JOSEPHINE GODFREY, JOHN MICHALSKI, KAREN METZGER, ROBERT MUSOLF, SCOTT WOOD, JUAN CARLOS LOPEZ, CHRIS NIELSEN, ANNE COMPTON, PHYLLIS DAVIS, ANDREW LEVISON, CHARLOTTE BRYN ALLEN, DANIEL HALLARAN, RON ROBERTS, and RYAN PARSONS, on their own behalf and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE HERSHEY COMPANY,<br><br>Defendant. | Case No. C 08-1862 BZ<br><br>**DEFENDANT THE HERSHEY COMPANY'S OPPOSITION TO PLAINTIFFS' SEPARATE STATEMENT OF UNDISPUTED FACTS FOR PURPOSES OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE OUTSIDE SALES AND ADMINISTRATIVE EXEMPTIONS**<br><br>Date:         February 16, 2011<br>Time:         10:00 a.m.<br>Courtroom: G, 15th Floor<br>Judge:        Hon. Bernard Zimmerman |

Defendant The Hershey Company ("Hershey") respectfully submits the following

Opposition to Plaintiffs' Separate Statement of Undisputed Facts for Purposes of

Plaintiffs' Motion for Partial Summary Judgment on the Outside Sales and Administrative

Exemptions.

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| 1.   Because "[i]independents were closing and being replaced with big box stores, Wal-Marts," Hershey "wanted to adjust to the changing environment." | Rule 30(b)(6) Deposition of Robert Ibberson Vol. 1 at 49:1-3, Ex. G. | The restructuring of Hershey's retail sales organization in 2003 was beyond the scope of the topics for which Mr. Ibberson was designated to testify on behalf of Hershey.<br><br>Furthermore, the growth of so-called "big box" stores such as Wal-Mart and the closings of smaller, independent retailers during the late 1990s and into 2000 was not the cause of Hershey's restructuring in 2003 of its retail sales organization.  (2011 Smuda Decl. ¶ 6.)[1]  The restructuring was aimed at placing more focus on geographically defined customer teams so as to develop deeper relationships with their customer stores.  (*Id.* ¶ 7.) |
| 2.   Hershey undertook a major restructuring of its domestic sales force in 2003 where the sales functions were centralized at Hershey corporate headquarters. | Third Amended Complaint ("TAC") ¶¶ 35-36, Ex. A; Hershey Answer to TAC ¶ 35, Ex. B. | The cited evidence does not say what Plaintiffs say it does.  In its Answer to ¶35 of Plaintiffs' Third Amended Complaint, Hershey denied Plaintiffs' allegations and stated only:  "Hershey admits that in 2003, it reorganized portions of the company, which included changes to portions of its domestic |

---

[1] "2011 Smuda Decl." refers to the Declaration of Thomas Smuda, dated January 26, 2011, which is being filed concurrently herewith.

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | sales force." In fact, the restructuring in 2003 of Hershey's retail sales organization, including the new, revamped Retail Sales Representative ("RSR") position, did not increase centralization of the sales force at Hershey corporate headquarters. To the contrary, the reorganization placed more focus on geographically-defined customer teams, and creating deeper customer relationships "on the ground" with the RSR position. (2011 Smuda Decl. ¶¶ 7-8.) |
| 3.     The 2003 restructuring was "targeted to increase retail merchandising coverage." | H17394, Ex. U. | On its face, Ex. U is a "draft" press release, and there is no evidence that Hershey ever actually distributed this document or that anyone ever relied upon it. Further, the restructuring of the RSR position is not mentioned at all.  This document cannot be considered definitive evidence of the purpose of the ultimate reorganization, or of the current RSR position.  In fact, the ultimate restructuring that occurred in 2003 of Hershey's retail sales organization was not intended to increase retail merchandising coverage.  (2011 Smuda Decl. ¶ 8.) To the contrary, the reorganization placed more focus on creating deeper customer relationships.  (*Id.* ¶¶ 7-8.) |

HERSHEY'S OPP TO PLFS.' SEP. STATEMENT RE
MOTION FOR PARTIAL SJ
CASE NO. C 08-1862 BZ

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| 4.     As a result of the centralization that occurred in 2003, Hershey now has "more discipline around the routing, store frequencies, model times according to store, action ability and business." | Rule 30(b)(6) Deposition of Robert Ibberson Vol. 2 95:22-24, Ex. H. | The restructuring of Hershey's retail sales organization in 2003 was beyond the scope of the topics for which Mr. Ibberson was designated to testify on behalf of Hershey.  Furthermore, the cited testimony does not say what Plaintiffs' say it does; Mr. Ibberson did not testify that any centralization occurred during 2003.

In fact, the restructuring in 2003 of Hershey's retail sales organization, including the creation of the RSR position, did not increase centralization of the sales force at Hershey corporate headquarters. (2011 Smuda Decl. ¶ 8.)  To the contrary, the reorganization placed more focus on geographically-defined customer teams, and creating deeper customer relationships "on the ground" with the RSR position.  (*Id.* ¶¶ 7-8.) RSRs can and are expected to exercise discretion within their routes and the time spent in their stores, so as to best develop those relationships as they see fit, and can and do vary from model call times and routing as they see best see fit for developing customer relationships.  (Ex. 26,[2] Opt-In Plaintiff Fisher Dep. at 65:7-66:19, 67:13-70:1 (how much time she spends on a task, such as speaking with a KDM, and in what order she does it, depends on the sales |

---

[2] Exhibits 1-69 refer to Exhibits which are attached to the Declaration of Adam KohSweeney, which is being filed concurrently herewith.

HERSHEY'S OPP TO PLFS.' SEP. STATEMENT RE
MOTION FOR PARTIAL SJ
CASE NO. C 08-1862 BZ

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | opportunities that present in the store in a given day); Ex. 22, Opt-In Plaintiff Bain Dep. at 83:3-19; Ex. 69, Opt-In Plaintiff Downer Dep. at 71:14-22; Ex. 5, Fredericksen Decl. ¶ 9; Ex. 4, Dow Decl. ¶ 15.) |
| 5.   Hershey has divided its sales divisions into four Areas - the West, South, Central, and Northeast. | 30(b)(6) Dep. Ibberson Vol. 2, 57:18-21, Ex. H. | Currently, Hershey actually divides the United States into *five* defined geographic areas:  West, Central, Mid-South, South, and Northeast.  (2011 Smuda Decl. ¶ 3.) |
| 6.   The essential functions of the RSR position are the same throughout the nation. | *Id*. at 18:14-20, Ex. H. | As noted in the objections made at the Ibberson deposition (included in Plaintiffs' citation), the phrase "essential functions" is vague and ambiguous.  In any event, Mr. Ibberson merely testified that one written job description was developed and used by Hershey's Human Resources ("HR") department, and explained that the Hershey retail sales leadership, who supervise RSRs across the country, do *not* use this document on a daily basis.  (Ex. 28, Ibberson Dep. Vol. 2, at 19:8-17, 21:3-22:5.)  Indeed, the core job duties of RSRs vary from RSR to RSR. For example, some RSRs -- but not all—take on the role of "Customer Advocate" for all of the stores of a certain chain (e.g., Wal-Mart) for their District, even stores which they were not responsible for physically visiting.  (Ex. 22, Opt-In Plaintiff Bain Dep. at 97:2-98:9.)  In this role as Customer Advocate for Wal-Mart stores, |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | Opt-In Plaintiff Bain was the "go-to person for the [D]istrict for that account" (*id.* at 97: 15-18) and was "responsible for passing information along to the team about [the] account that [he] was in charge of." (*Id.* at 97:9-10.) |
| 7.     Hershey headquarters develops the overall sales and merchandising plan for its retail store customers. | Rule 30(b)(6) Deposition of Thomas Smuda 270:15-19, Ex. I; Declaration of Sabrina Anderson ¶ 9; Declaration of Nancy Smith ¶ 9; Declaration of Josephine Godfrey ¶ 9; Deposition of RSR Declarant Colleen Dow 19:25-21:1, Ex. M. | First, the cited evidence simply does not support this purported fact. Smuda testified about a "sales and market plan," and not any "sales and merchandising plan." It is also unclear, and is vague and ambiguous, what Plaintiffs refer to when they use the phrase "sales and merchandising plan." In any event, as Smuda went on to testify, various levels of the Hershey organization are responsible for developing sales plans, including headquarters and the RSRs themselves: "[RSRs] do put together a sales plan every day that basically is the road map of what they have to execute and what they're going to present and sell, an independent solution to every customer." (Ex. 33, Smuda Dep. at 272:25-273:3.) (*See also* Ex. 28, Ibberson Dep. Vol. 2 at 200:16-205:8; Shein Decl. ¶¶ 4, 8; 2011 Smuda Decl. ¶¶, 10, 14.) |
| 8.     Hershey, at the headquarters level, will enter into an agreement with a customer such as Safeway and Wal-Mart, also at the headquarters level, in terms of type of product, promotions, price and the | Anderson Dec. ¶ 9; Smith Dec. ¶ 9; Godfrey ¶9; Deposition of RSR Declarant Derek Frederiksen 67:8-68:18, Ex. R; Dow 19:25-21:7, Ex. M. | Hershey does not rely exclusively on agreements with its customers at the headquarters level regarding the products that it sells to its customer stores. RSRs are crucial for driving and actually making sales at the store level. RSRs, including Opt-In Plaintiffs, engage |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| quantities of product to be sold. | | in "incremental selling" of Hershey product at the store level. (2011 Smuda Decl. ¶¶ 11-12, 16; Shein Decl. ¶¶ 5-7;[3] Demos Decl. ¶¶ 4-5 (regarding incremental sales made by Opt-In Plaintiff Fisher);[4] Ex. 69, Opt-In Plaintiff Downer Dep. at 38:19-39:15; 144:2-1; Ex. 2, Brinkmann Decl. ¶ 6; Ex. 4, Dow Decl. ¶ 14; Ex. 5, Frederiksen Decl. ¶ 6; Ex. 3, Comley Decl. ¶ 14; Ex. 7, Reed Decl. ¶ 9; Ex. 11, Villegas Decl. ¶ 8; Ex. 42, Altman Decl. ¶ 13; Ex. 43, Opt-In Bain Decl. ¶ 12; Ex. 44, Beasley Decl. ¶¶ 6-7; Ex, 46, Brouwer Decl. ¶ 6; Ex. 47, Buontempo Decl. ¶ 5; Ex. 48, Cerroni Decl. ¶ 9; Ex. 49, Curtis Decl. ¶ 5; Ex. 51, Frankfather Decl. ¶ 9; Ex. 54, Hartley Decl. ¶ 9; Ex. 62, Peroff Decl. ¶ 7; Ex. 63, Reihl Decl. ¶ 7.)<br><br>Additionally, if a customer-store is not assigned to a CSE, then the RSR who calls on that store is responsible for all sales of Hershey product to that customer-store—a process called "direct selling." (Ex. 1, 2010 Smuda Decl. ¶ 19; Shein Decl. ¶ 9; Wilson Decl. ¶ 4;; Dow Decl. ¶ 8; Ex. 5, Frederiksen Decl. ¶ 5; Ex. 9, Todorich Decl. ¶¶ 7-10; Ex. 3, Comley Decl. ¶ 15; Ex. 47, Buontempo Decl. ¶ 5; Ex. 48, Cerroni Decl. ¶ 7; Ex. 54, |

[3] "Shein Decl." refers to the Declaration of Stephanie Shein, dated January 26, 2011, which is being filed concurrently herewith.

[4] "Demos Decl." refers to the Declaration of Melinda Demos, dated January 26, 2011, which is being filed concurrently herewith.

HERSHEY'S OPP TO PLFS.' SEP. STATEMENT RE
MOTION FOR PARTIAL SJ
CASE NO. C 08-1862 BZ

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | Hartley Decl. ¶ 15; Ex. 67, G. Williams Decl. ¶ 4.)   Several of the Opt-In Plaintiffs themselves have performed direct selling in this circumstance.  (Wilson Decl. ¶ 4, Ex. A thereto (regarding Opt-In Plaintiffs Andrea Ott, Brodie Craig, Jon Thompson and Michael Bain).)[5] |
| 9.     These transactions are consummated without the input of the RSRs. | Anderson Dec. ¶ 9; Smith Dec. ¶ 9; Godfrey ¶ 9. | *See* Hershey's Response to Plaintiffs' Undisputed Fact No. 8, above, and the evidence cited therein, regarding the "incremental" and "direct" sales that RSRs, including Opt-In Plaintiffs, perform.<br><br>Additionally, even those initial sales made to larger customers at headquarters are highly dependent upon the efforts of RSRs in selling in additional display space at customer stores, driving demand for Hershey product, and increasing sell through at the store level.  Specifically, gaining commitments at the corporate level depends in large part on how effective RSRs were in selling additional products, generating demand, and achieving or exceeding sales targets at the store level in the prior year.  (Shein Decl. ¶¶ 5-8; 2011 Smuda Decl. ¶¶ 9-13; Ex. 1, 2010 Smuda Decl. ¶¶ 17, 21.)  RSRs, including Opt-In Plaintiffs, understand that the store-level sell-through numbers |

---

[5] "Wilson Decl." refers to the Declaration of Steve Wilson, dated January 26, 2011, which is being filed concurrently herewith.

HERSHEY'S OPP TO PLFS.' SEP. STATEMENT RE MOTION FOR PARTIAL SJ
CASE NO. C 08-1862 BZ

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | they directly affect, and are responsible for driving, will be used in this way, when a store determines how much of an initial order of a product to make next year or season.  (Ex. 26, Opt-In Plaintiff Fisher Dep. at 27:17-23, 29:1-8, 33:4-7, 45:2-18; 46:10-23; Ex. 22, Opt-In Plaintiff Bain Dep. at 41:19-42:25, 94:23-95:9.) |
| 10.    Hershey will then make its product and ship it to the customer's warehouse. | Frederiksen 68:19-69:1, Ex. R. | Hershey product is not simply ordered by a customer store once and then simply delivered to a customer warehouse.  Sometimes an initial order of product from headquarters is sent directly to a customer (or its warehouse), but sometimes a customer will order product from Hershey, and the product stops off at a third-party food broker or warehouse for later distribution to customer-stores. (2011 Smuda Decl. ¶¶ 17-18.)

In those instances when a distributor warehouse or food broker is involved, the distributor warehouse also has supplies of Hershey product on hand that Hershey has ***not*** yet sold to any customer.  This Hershey product is simply available at the warehouse for if and when a customer-store orders it, because of the sales efforts of a CSE, ***or an RSR***.  (*Id.* ¶ 18.) |
| 11.    As soon as Hershey's product leaves Hershey's warehouse, Hershey records a sale of its product. | Rule 30(b)(6) Deposition of John Zimmerman 18:9-24, Ex. L. | The cited evidence refers only to what Hershey considers a sale for purposes of an internal accounting convention.  This fact is irrelevant. What constitutes "sales" or |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | "making sales" within the meaning of the FLSA or of applicable federal regulations is a legal conclusion.  Whether Hershey records a sale of product for accounting purposes is not relevant, and establishes only that Hershey uses a certain accounting convention. |
| 12.     The product will then go from the customer's warehouse as needed to the back areas of the individual grocery stores. | Frederiksen 69:13-17, Ex. R. | Hershey product is not simply ordered by a customer store once and then simply delivered to a customer warehouse.  Sometimes an initial order of product from headquarters is sent directly to a customer (or its warehouse), but sometimes a customer will order product from Hershey, and the product stops off at a third-party food broker or warehouse for later distribution to customer-stores. (2011 Smuda Decl. ¶¶ 17-18.)

In those instances when a distributor warehouse or food broker is involved, the distributor warehouse also has supplies of Hershey product on hand that Hershey has **not** yet sold to any customer.  This Hershey product is simply available at the warehouse for if and when a customer-store orders it, because of the sales efforts of a CSE, **or an RSR**.  (Id. ¶ 18.) |
| 13.     The RSRs do not create nor participate in the makings of these headquarter sales and merchandising plans. | Anderson Dec. ¶ 9; Smith Dec. ¶ 9; Godfrey ¶ 9; Deposition of RSR Declarant Edward Taylor 39:15-25, Ex. | It is unclear, and is vague and ambiguous, what Plaintiffs refer to when they use the phrase "sales and merchandising plan."  In any event, various levels of the Hershey organization are |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | N; Deposition of RSR Declarant Russell Brinkmann 89:17-90:10, Ex. O; Dow 19:3-10, 19:25-20:12, Ex. M; Deposition of RSR Declarant Todd Comley 75:7-76:4, Ex. S. | responsible for developing Hershey's sales plans, including headquarters and the RSRs themselves: "[RSRs] do put together a sales plan every day that basically is the road map of what they have to execute and what they're going to present and sell, an independent solution to every customer." (Ex. 33, Smuda Dep. at 272:25-273:3.) (*See also* Ex. 28, Ibberson Dep. Vol. 2 at 200:16-205:8; Shein Decl. ¶¶ 4, 8.)

Additionally, *see* Hershey's Response to Plaintiffs' Undisputed Fact Nos. 8 and 9, above, and the evidence cited therein, regarding the "incremental" and "direct" sales that RSRs, including Opt-In Plaintiffs, perform. |
| 14.   The RSRs do not have any input into the volume of the product negotiated between Hershey and the retailers. | Dow 20:13-16, Ex. M; Anderson Dec. ¶ 9; Smith Dec. ¶ 9; Godfrey ¶ 9. | *See* Hershey's Response to Plaintiffs' Undisputed Fact No. 8, above, and the evidence cited therein, regarding the "incremental" and "direct" sales that RSRs, including Opt-In Plaintiffs, perform.

Additionally, even those initial sales made to larger customers at headquarters are highly dependent upon the efforts of RSRs in selling in additional display space at customer stores, driving demand for Hershey product, and increasing sell through at the store level. Specifically, gaining commitments at the corporate level depends in large part on how effective RSRs were in selling |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | additional products, generating demand, and achieving or exceeding sales targets at the store level in the prior year.  (Shein Decl. ¶¶ 5-8; 2011 Smuda Decl. ¶¶ 9-13; Ex. 1, 2010 Smuda Decl. ¶¶ 17, 21.)  RSRs, including Opt-In Plaintiffs, understand that the store-level sell-through numbers they directly affect, and are responsible for driving, will be used in this way, when a store determines how much of an initial order of a product to make next year or season.  (Ex. 26, Opt-In Plaintiff Fisher Dep. at 27:17-23, 29:1-8, 33:4-7, 45:2-18; 46:10-23; Ex. 22, Opt-In Plaintiff Bain Dep. at 41:19-42:25, 94:23-95:9.) |
| 15.     These upper-level transactions are undertaken by sales employees such as Customer Sales Executives ("CSE") and the Customer Team Leaders ("CTLs"). | Comley 76:11-21, Ex. S. | Hershey's sales to its customer stores are made at multiple levels, not just at the level of CSEs.  (*See* Hershey's Response to Plaintiffs' Undisputed Fact No. 8, above, and the evidence cited therein, regarding the "incremental" and "direct" sales that RSRs, including Opt-In Plaintiffs, perform.)  However, even those initial sales made to larger customers at headquarters are not undertaken by CSEs or CTLs alone; instead, they are highly dependent upon the efforts of RSRs in selling in additional display space at customer stores, driving demand for Hershey product, and increasing sell through at the store level.  Specifically, gaining commitments at the corporate level depends in large part on how |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | effective RSRs were in selling additional products, generating demand, and achieving or exceeding sales targets at the store level in the prior year. (Shein Decl. ¶¶ 5-8; 2011 Smuda Decl. ¶¶ 9-13; Ex. 1, 2010 Smuda Decl. ¶¶ 17, 21.) RSRs, including Opt-In Plaintiffs, understand that the store-level sell-through numbers they directly affect, and are responsible for driving, will be used in this way, when a store determines how much of an initial order of a product to make next year or season. (Ex. 26, Opt-In Plaintiff Fisher Dep. at 27:17-23, 29:1-8, 33:4-7, 45:2-18; 46:10-23; Ex. 22, Opt-In Plaintiff Bain Dep. at 41:19-42:25, 94:23-95:9.) |
| 16.    The RSRs do not have any account responsibility. | Taylor 79:15-17, Ex. N. | The term "account responsibility" is vague and ambiguous. In any event, RSRs, including Opt-In Plaintiffs, have testified about the significant responsibility they have for the accounts they are assigned within their territories. (Ex. 25, Dow Dep. at 101:10-11 ("I am responsible for my accounts."); Ex. 22, Opt-In Plaintiff Bain Dep. at 297:8-10 ("I was responsible for passing information along to the team about a certain account that I was in charge of); *id.* at 297:15-16 ("I'm the go-to person for the district for that account. . ."). Indeed, RSRs are the primary in-person, "on the ground" contact Hershey has with its accounts, and are crucial for developing strong and lasting relationships with its |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | customers.  (Ex. 1, 2010 Smuda Decl.  ¶¶ 17, 18 ("The core benefit of having an RSR sales force is to have well-trained sales people "on the ground" who are able to build relationships, make decisions, provide expert selling advice to customers and do what it takes to move product across the register, which in turn sells more product for Hershey.")  RSRs understand that if they are successful in their efforts to cause their accounts to sell more product to consumers, they will cause the account to order more product in the future from Hershey.  (Ex. 26, Opt-In Plaintiff Fisher Dep. at 27:17-23, 29:1-8, 33:4-7, 45:2-18; 46:10-23; Ex. 22, Opt-In Plaintiff Bain Dep. at 41:19-42:25, 94:23-95:9.) |
| 17.     The RSRs must be at their first retail store between 7:00 a.m. and 8:00 a.m. | 30(b)(6) Dep. Ibberson Vol. 2, 57:22-58:5; 66:14-17, Ex. H; H00002952, Ex. V; Anderson Dec. ¶ 6; Smith Dec. ¶ 6; Godfrey Decl. ¶ 6. | First, the cited evidence does not support this purported fact.  The cited testimony from Mr. Ibberson actually states that different areas of the country each have their own "guidelines" for when RSRs should generally plan to visit their first customer store, varying from 7:00 a.m. in some areas (e.g., the West) to 8:00 a.m. in others (e.g., the North).  (Ex. 28, Ibberson Dep. Vol. 2 at 57:5-58:5.)  Further, the first call time "guideline" varies based on the "make-up of the retailers, the geography, [and] the travel times . . ." (*Id.* at 57:11-14.)<br><br>Because these are recommended "guidelines," RSRs can and do vary from these start times.  For |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | example, Opt-In Plaintiff Fisher has the freedom to arrive at her stores anywhere "between 5:00 [a.m.] and 7:00 a.m.," explaining that "[i]t just depends on when I wake up." (Ex. 26, Opt-In Plaintiff Fisher Dep. at101:3-102:1.)  Fisher testified that it is "up to [her]" when to visit her first store.  (*Id.* at 101:24-102:1.) |
| 18.      Hershey has model call times for every class of store in the United States for which the RSR should spend in a store. | 30(b)(6) [Dep.] Ibberson Vol. 2 35:15-36:5, Ex. H. | The testimony cited by Plaintiffs expressly refers to model call times as a mere "guideline."  Thus, RSRs, including Opt-In Plaintiffs, depart from these suggested call times at their discretion, depending on whether there are more or less sales opportunities at a given customer store.  (*See* Ex. 22, Opt-In Plaintiff Bain Dep. at 83:3-19; Ex. 26, Opt-In Plaintiff Fisher Dep. at 65:7-66:19; Ex. 69, Opt-In Plaintiff Downer Dep. at 71:14-22; Ex. 5, Fredericksen Decl. ¶ 9; Ex. 4, Dow Decl. ¶ 15.) |
| 19.      The RSRs are required to check their voicemail (called Octel) three times a day. | 30(b)(6) Dep. Smuda 229:1-3, Ex. I. | There is no strict requirement that RSRs check their Octel three times a day. (Ex. 28, Ibberson Dep., Vol. 2 at 59:17-19.)  Indeed, Smuda testified that the "guideline" for when RSRs check their voicemail depends on the managers in a given district.  (Ex. 33, Smuda Dep. at 229:4-13.) |
| 20.      If the RSR goes off of their route, the RSR must seek approval from the DSM. | 30(b)(6) Dep. Ibberson Vol. 2, 88:8-13; *see also Id.* at 58:6-10; 59:11-13, 59:14-16, Ex. H. | The testimony cited by Plaintiffs does not support the proposition that RSRs "must" obtain approval to go off their expected route.  Rather, Ibberson's testimony refers to a mere "guideline" that RSRs have the goal of completing their |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | route in a given day.<br><br>Indeed, Opt-In Plaintiff Bain has testified that he specifically does **not** need to seek permission from his DSM if he departs from the route he has designed for himself on a given day.  (Ex. 22, Opt-In Plaintiff Bain Dep. at 216:2-9.) |
| 21.     Once inside a store, the RSR is supposed to follow Hershey's Retail Call Procedure. | 30(b)(6) Dep. Ibberson Vol. 2, 58:20-23, Ex. H; Anderson Dec. ¶ 7; Smith Dec. ¶ 7; Godfrey Decl. ¶ 7. | The cited testimony from Ibberson merely states that following an effective retail call procedure is a "guideline."  (Ex. 28, Ibberson Dep. Vol. 2 at 58:20-23.).  Hershey supervisors have drafted various retail call procedure documents to answer common questions and provide a set of general guidelines; nothing more.  (Ex. 1, 2010 Smuda Decl. ¶ 27; Ex. 28, Ibberson Dep. 62:9-16.)  In fact, RSRs are actually praised to the extent they recognize when to deviate from the call procedures and guidelines.  (Ex. 16, Supp. Verdelli Decl. ¶ 5.)<br><br>RSRs, including Opt-In Plaintiffs, have testified that they do view these retail call procedures as guidelines and that they do not feel bound to follow a retail call procedure, in a specific order or for specific amounts of time (or a given step at all, if unnecessary), and deviate at their discretion.  (*See* Ex. 26, Opt-In Plaintiff Fisher Dep. at 65:7-66:19, 67:13-70:1 (how much time she spends on a task, such as speaking with a KDM, and in what order she does it, depends on the sales |

HERSHEY'S OPP TO PLFS.' SEP. STATEMENT RE
MOTION FOR PARTIAL SJ
CASE NO. C 08-1862 BZ

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | opportunities that present in the store in a given day); Ex. 22, Opt-In Plaintiff Bain Dep. at 111:5-22; Ex. 8, Taylor Decl. ¶ 15; 6, Kruse Decl. ¶ 18; Ex. 15, Supp. Kruse Decl. ¶¶ 3-4; Ex. 12, Supp. Brinkmann Decl. ¶ 5; Ex. 16, Supp. Verdelli Decl. ¶¶ 3-5; Ex. 13, Supp. Dow Decl. ¶¶ 2-3; Ex. 14, Supp. Frederiksen Decl. ¶ 5.) |
| 22. The Retail Call Procedure consists of several steps such as checking the Hersey product on the floor to see if there were any out-of-stocks, examining the store to see if there were any available display spaces, building displays, replenishing permanent secondary displays, speaking with the store manager (which Hershey refers to as a "Key Decision Maker" or "KDM") about upcoming promotions and display spaces, going to the backroom to examine the Hershey product, cutting open boxes of Hershey product, and packing the product from the backroom to the store floor. | Anderson Dec. ¶ 7; Smith Decl. ¶ 7; Godfrey Dec. ¶ 7; see also H00002964 (Ex. W) and H00010727 (Ex. X) for examples. | Following an effective retail call procedure is a mere "guideline" of Hershey's for its RSRs. (Ex. 28, Ibberson Dep. Vol. 2 at 58:20-23.). Hershey drafted these documents to answer common questions and provide a set of general guidelines; nothing more. (Ex. 1, 2010 Smuda Decl. ¶ 27; Ex. 28, Ibberson Dep. 62:9-16.) In fact, RSRs are actually praised to the extent they recognize when to deviate from the call procedures and guidelines. (Ex. 16, Supp. Verdelli Decl. ¶ 5.)<br><br>RSRs, including Opt-In Plaintiffs, have testified that they do view these retail call procedures as guidelines and that they do not feel bound to follow a retail call procedure, in a specific order or for specific amounts of time (or a given step at all, if unnecessary), and deviate at their discretion. (*See* Ex. 26, Opt-In Plaintiff Fisher Dep. at 65:7-66:19, 67:13-70:1 (how much time she spends on a task, such as speaking with a KDM, and in what order she does it, depends on the sales opportunities that present in the |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | store in a given day); Ex. 22, Opt-In Plaintiff Bain Dep. at 111:5-22; Ex. 8, Taylor Decl. ¶ 15; 6, Kruse Decl. ¶ 18; Ex. 15, Supp. Kruse Decl. ¶¶ 3-4; Ex. 12, Supp. Brinkmann Decl. ¶ 5; Ex. 16, Supp. Verdelli Decl. ¶¶ 3-5; Ex. 13, Supp. Dow Decl. ¶¶ 2-3; Ex. 14, Supp. Frederiksen Decl. ¶ 5.) |
| 23.     Hershey directs a specific allocation of time for the job duties while in each retail outlet:<br><br>5%      pre-call plan/sign in<br>10%    check/correct front ends<br>10%    check/correct gondola<br>5%      check PSD's<br>5%      check backroom<br>10%    gain display approval/make sale<br>50%    merchandise product<br>5%      fill-out paperwork | P607, Ex. F; P85, Ex. E; Exhibit A to Anderson Dec. ¶ 7; Dow 90:2-12; 91:4-6, Ex. M. | Following an effective retail call procedure is a mere "guideline" of Hershey's for its RSRs.  (Ex. 28, Ibberson Dep. Vol. 2 at 58:20-23.).  Hershey drafted these documents to answer common questions and provide a set of general guidelines; nothing more.  (Ex. 1, 2010 Smuda Decl. ¶ 27; Ex. 28, Ibberson Dep. at 62:9-16.)  In fact, RSRs are actually praised to the extent they recognize when to deviate from the call procedures and guidelines.  (Ex. 16, Supp. Verdelli Decl. ¶ 5.)<br><br>RSRs, including Opt-In Plaintiffs, have testified that they do view these retail call procedures as guidelines and that they do not feel bound to follow a retail call procedure, in a specific order or for specific amounts of time (or a given step at all, if unnecessary), and deviate at their discretion.  (*See* Ex. 26, Opt-In Plaintiff Fisher Dep. at 65:7-66:19, 67:13-70:1 (how much time she spends on a task, such as speaking with a KDM, and in what order she does it, depends on the sales opportunities that present in the store in a given day); Ex. 22, Opt- |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | In Plaintiff Bain Dep. at 111;5-22; Ex. 8, Taylor Decl. ¶ 15; 6, Kruse Decl. ¶ 18; Ex. 15, Supp. Kruse Decl. ¶¶ 3-4; Ex. 12, Supp. Brinkmann Decl. ¶ 5; Ex. 16, Supp. Verdelli Decl. ¶¶ 3-5; Ex. 13, Supp. Dow Decl. ¶¶ 2-3; Ex. 14, Supp. Frederiksen Decl. ¶ 5.)<br><br>Additionally, some RSRs, including Opt-In Plaintiffs, have testified that they have never seen any Hershey "Retail Call Procedure" that contained suggested time allotments by percentage.  (Ex. 22, Opt-In Plaintiff Bain Dep. at 139:7-140:17; Ex. 26, Opt-In Plaintiff Fisher Dep. at 129:8-15.)<br><br>RSRs, including Opt-In Plaintiffs, have also testified that they have never seen any document or been told by any Hershey employee that they were expected to merchandise 50% of their in-store time.  (*See* Ex. 26, Opt-In Plaintiff Fisher Dep. at 129:8-15; Ex. 22, Opt-In Plaintiff Bain Dep. at 139:7-140:17.)  Even those RSRs who have been provided with this 50% merchandising guideline have felt completely free to deviate from it, and merchandise less than 50%. (Ex. 25, Dow Dep. at 89:24-90:23; 100:13-101:18; 148:10-150:14.) |
| 24.     An RSR on a typical day doing a typical call is expected to follow the Retail Call Procedure. | 30(b)(6) Dep. Ibberson Vol. 2, 173:15-22, Ex. H. | The cited testimony from Ibberson does not support the proposition that RSRs are expected to follow a specific retail call procedure on a "typical" day.  Ibberson testified |

18

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | that the retail call procedure is merely a "recommended structure" and that "RSRs are empowered to make in-store adjustments as necessary." (Ex. 28, Ibberson Dep. Vol. 2 at 173:2-9.) Hershey supervisors have drafted various retail call procedure documents to answer common questions and provide a set of general guidelines; nothing more. (Ex. 1, 2010 Smuda Decl. ¶ 27; Ex. 28, Ibberson Dep. 62:9-16.) In fact, RSRs are actually praised to the extent they recognize when to deviate from the call procedures and guidelines. (Ex. 16, Supp. Verdelli Decl. ¶ 5.)<br><br>RSRs, including Opt-In Plaintiffs, have testified that they do view these retail call procedures as guidelines and that they do not feel bound to follow a retail call procedure, in a specific order or for specific amounts of time (or a given step at all, if unnecessary), and deviate at their discretion. (*See* Ex. 26, Opt-In Plaintiff Fisher Dep. at 65:7-66:19, 67:13-70:1 (how much time she spends on a task, such as speaking with a KDM, and in what order she does it, depends on the sales opportunities that present in the store in a given day); Ex. 22, Opt-In Plaintiff Bain Dep. at 111:5-22; Ex. 8, Taylor Decl. ¶ 15; 6, Kruse Decl. ¶ 18; Ex. 15, Supp. Kruse Decl. ¶¶ 3-4; Ex. 12, Supp. Brinkmann Decl. ¶ 5; Ex. 16, Supp. Verdelli Decl. ¶¶ 3-5; Ex. |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | 13, Supp. Dow Decl. ¶¶ 2-3; Ex. 14, Supp. Frederiksen Decl. ¶ 5.) |
| 25.   Once the RSR completes his or her calls for the day, they must continue at home with typical tasks such as checking Octel, email, and synchronizing the Rex. | 30(b)(6) Dep. Ibberson Vol. 2, 39:21-25, Ex. H; Anderson Dec. ¶ 8; Smith Dec. ¶ 8; Godfrey Decl. ¶ 8. | Plaintiffs miscite Ibberson's testimony:  he agreed with Plaintiffs' counsel only that "sometimes" an RSR will need to check e-mail, voicemail (Octel) and synch REX once they get home.  (Ex.28, Ibberson Dep. Vol. 2 at 39:21-25.)  Indeed, Opt-In Plaintiff Fisher has testified that she does no work at all from home on some weeknights after making sales calls to customer stores.  (Ex. 22, Opt-In Plaintiff Fisher Dep. at 104:21-106:8, 112:21-113:4.)  These tasks may be done throughout the day, between sales calls.  For example, synching REX takes about a minute, and can be done anywhere with a wireless connection, by turning on a switch and nothing more.  (Harsh Decl. ¶ 8.)[6] |
| 26.   The RSRs do not take or place orders for Hershey product. | Anderson Dec. ¶ 4; Smith Dec. ¶ 4; Godfrey Dec. ¶ 4; Dow 80:231-22, Ex. M; Taylor 11:22-23, 12:23-24, Ex. N. | Whether an RSR takes or places "orders" within the meaning of the applicable federal regulations is a legal conclusion.  In any event, Plaintiffs are wrong, RSRs have the capacity to take orders for Hershey product and there is evidence they actually do so.  (See Hershey's Response to Plaintiffs' Undisputed Fact No. 8, above, and the evidence cited therein, regarding the "incremental" and "direct" sales that RSRs, including Opt-In Plaintiffs, perform.) |

---

[6] "Harsh Decl." refers to the Declaration of Jeffrey Harsh, dated January 26, 2011, which is being filed concurrently herewith.

HERSHEY'S OPP TO PLFS.' SEP. STATEMENT RE MOTION FOR PARTIAL SJ
CASE NO. C 08-1862 BZ

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| 27. The RSRs are required to input into the Rex all of their activities during a call to each store. | 30(b)(6) Dep. Meanor 51:2-5; 59:1-3; 60:13-20, Ex. J. | What tasks Hershey does or does not require RSRs to do was beyond the scope of the topics for which Mr. Meanor was designated to testify on behalf of Hershey.<br><br>The REX device is merely a handheld personal digital assistant ("PDA") which Hershey provides to RSRs for their use during store calls. (Harsh Decl. ¶ 3.) It is intended as a tool that the RSR can use to collect and access information—it is not intended to dictate the content of the RSR's day. (*Id.* ¶¶ 3-5.) To the contrary, it is supposed to be used for taking quick shorthand notes and punching in numbers. REX does not even have the capability or digital space for a blow-by-blow narrative of an RSR's daily activities. (*Id.* ¶ 5.)<br><br>Indeed, Named Plaintiff Nancy Smith testified that the notes she entered on REX were a very high level summary of what she did during a store call, and would not provide her DSM with granular details of what she actually did. (Ex. 32, Named Plaintiff Smith Dep. at 236:4-237:5.) |
| 28. The RSRs are eligible for bonuses, but those bonuses are not based on individual efforts and instead are based on the performance of a territory or district as a whole. | *See Id.* at 162:9-163:11, Ex. K; Taylor 76:17-22, Ex. N; Anderson Dec. ¶ 10; Smith Dec. ¶ 10; Godfrey Dec. ¶ 10. | The cited evidence fails to support this purported fact, as the cited evidence does not say what Plaintiffs say it does. To the contrary, Ms. Slotznick, Hershey's Senior Director, Global Executive Compensation and Compliance, |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | testified that individual efforts absolutely do influence how the District does: "If my territory sales target is a thousand dollars for this month and I sell 800, I've certainly helped my team in achieving the thousand. So my efforts do pay off, but the other team members would receive the same [bonus]." (Ex. 31, Slotznick Dep. at 23:10-15; *see also id.* at 21:7-22; 22:3-25.) |
| 29.      Hershey considers a "sale" to occur when the product leaves Hershey's distribution centers, and not when the retailers to whom it sold product moves the product from their own warehouses to their individual retail outlets. | Rule 30(b)(6) Zimmerman 18:9-24, Ex. L. | The cited evidence refers only to what Hershey considers a sale for purposes of an internal accounting convention. This fact is irrelevant. What constitutes "sales" or "making sales" within the meaning of the FLSA or of applicable federal regulations is a legal conclusion. Whether Hershey records a sale of product for accounting purposes is not relevant, and establishes only that Hershey uses a certain accounting convention. |
| 30.      Hershey has four distribution centers in the United States located in separate regions and it books a sale of Hershey product the moment that product leaves one of those distribution centers. | *Id.*, Ex. L. | The cited evidence refers only to what Hershey considers a sale for purposes of an internal accounting convention. This fact is irrelevant. What constitutes "sales" or "making sales" within the meaning of the FLSA or of applicable federal regulations is a legal conclusion. Whether Hershey records a sale of product for accounting purposes is not relevant, and establishes only that Hershey uses a certain accounting convention. |
| 31.      It does not matter to | *Id.* at 19:16-20:12, | The cited evidence refers only to |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| Hershey whether the product actually reaches the customer; all that matters for Hershey to consider a sale to be a sale is when the product leaves Hershey's distribution center. | Ex. L. | what Hershey considers a sale for purposes of an internal accounting convention.  This fact is irrelevant. What constitutes "sales" or "making sales" within the meaning of the FLSA or of applicable federal regulations is a legal conclusion.  Whether Hershey records a sale of product for accounting purposes is not relevant, and establishes only that Hershey uses a certain accounting convention.<br><br>Furthermore, Plaintiffs are wrong that "[i]t does not matter to Hershey whether the product actually reaches the customer. . ." Indeed, Hershey cares greatly that the product not only reaches the customer store, but is displayed on the stores' shelves and is purchased by a consumer. Hershey rewards RSRs with substantial bonuses if they, along with the other RSRs in their District, achieve targeted increases in sell-through.  (*See* Slotznick Decl. ¶¶ 4-5, Exs. A-C thereto; Ex. 22, Opt-In Plaintiff Bain Dep. at 30:2-4 (received a bonus of approximately $10,000 in 2010), 126:15-20.) |
| 32.     When an RSR enters a retailer, Hershey has already recognized the product in the backroom as a sale from Hershey to the retailer. | *Id*. at 25:6-10, Ex. L. | The cited evidence refers only to what Hershey considers a sale for purposes of an internal accounting convention.  This fact is irrelevant. What constitutes "sales" or "making sales" within the meaning of the FLSA or of applicable federal regulations is a legal |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | conclusion.  Whether Hershey records a sale of product for accounting purposes is not relevant, and establishes only that Hershey uses a certain accounting convention. |
| 33.     Hershey does not recognize a sale when an RSR prepares to call on a store. | *Id*. at 34:18-21, Ex. L. | The cited evidence refers only to what Hershey considers a sale for purposes of an internal accounting convention.  Whether Hershey records a sale of product for accounting purposes is not relevant.  What constitutes "sales" or "making sales" within the meaning of the FLSA or of applicable federal regulations is a legal conclusion. |
| 34.     Hershey does not recognize a sale when an RSR prepares to speak with a store manager. | *Id*. at 34:22-24, Ex. L. | The cited evidence refers only to what Hershey considers a sale for purposes of an internal accounting convention.  Whether Hershey records a sale of product for accounting purposes is not relevant.  What constitutes "sales" or "making sales" within the meaning of the FLSA or of applicable federal regulations is a legal conclusion. |
| 35.     Hershey does not recognize a sale when an RSR drives to a store. | *Id*. at 34:25-35:1, Ex. L. | The cited evidence refers only to what Hershey considers a sale for purposes of an internal accounting convention.  Whether Hershey records a sale of product for accounting purposes is not relevant.  What constitutes "sales" or "making sales" within the meaning of the FLSA or of applicable federal regulations is a legal conclusion. |
| 36.     Hershey does not recognize a sale when an | *Id*. at 35:2-4, Ex. L. | The cited evidence refers only to what Hershey considers a sale for |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| RSR conducts a walk-through or audit. | | purposes of an internal accounting convention. Whether Hershey records a sale of product for accounting purposes is not relevant. What constitutes "sales" or "making sales" within the meaning of the FLSA or of applicable federal regulations is a legal conclusion. |
| 37.   Hershey does not recognize a sale when an RSR provides ideas to a store manager. | *Id.* at 35:5-6, Ex. L. | The cited evidence refers only to what Hershey considers a sale for purposes of an internal accounting convention. Whether Hershey records a sale of product for accounting purposes is not relevant. What constitutes "sales" or "making sales" within the meaning of the FLSA or of applicable federal regulations is a legal conclusion. |
| 38.   Hershey does not recognize a sale when an RSR shows sales data and other information to a store manager. | *Id.* at 35:7-9, Ex. L. | The cited evidence refers only to what Hershey considers a sale for purposes of an internal accounting convention. Whether Hershey records a sale of product for accounting purposes is not relevant. What constitutes "sales" or "making sales" within the meaning of the FLSA or of applicable federal regulations is a legal conclusion. |
| 39.   Hershey does not recognize a sale when an RSR suggests displays to a store manager. | *Id.* at 35:10-12, Ex. L. | The cited evidence refers only to what Hershey considers a sale for purposes of an internal accounting convention. Whether Hershey records a sale of product for accounting purposes is not relevant. What constitutes "sales" or "making sales" within the meaning of the FLSA or of applicable federal regulations is a |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | legal conclusion. |
| 40. Hershey does not recognize a sale when an RSR discusses promotions with the store manager. | *Id*. at 35:13-15, Ex. L. | The cited evidence refers only to what Hershey considers a sale for purposes of an internal accounting convention. Whether Hershey records a sale of product for accounting purposes is not relevant. What constitutes "sales" or "making sales" within the meaning of the FLSA or of applicable federal regulations is a legal conclusion |
| 41. Hershey does not recognize a sale when an RSR obtains end cap space from a store manager. | *Id*. at 35:16-18, Ex. L. | The cited evidence refers only to what Hershey considers a sale for purposes of an internal accounting convention. Whether Hershey records a sale of product for accounting purposes is not relevant. What constitutes "sales" or "making sales" within the meaning of the FLSA or of applicable federal regulations is a legal conclusion. |
| 42. Hershey does not recognize a sale when an RSR obtains display space from a store manager. | *Id*. at 35:19-21, Ex. L. | The cited evidence refers only to what Hershey considers a sale for purposes of an internal accounting convention. Whether Hershey records a sale of product for accounting purposes is not relevant. What constitutes "sales" or "making sales" within the meaning of the FLSA or of applicable federal regulations is a legal conclusion. |
| 43. Hershey does not recognize a sale when an RSR develops a relationship of trust with a store manager. | *Id*. at 35:22-24, Ex. L. | The cited evidence refers only to what Hershey considers a sale for purposes of an internal accounting convention. Whether Hershey records a sale of product for accounting purposes is not relevant. What constitutes "sales" |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | or "making sales" within the meaning of the FLSA or of applicable federal regulations is a legal conclusion. |
| 44.    Hershey does not recognize a sale when an RSR checks the back room of a store to determine if the store has sufficient stock of excess product on hand. | *Id*. at 35:25-36:3, Ex. L. | The cited evidence refers only to what Hershey considers a sale for purposes of an internal accounting convention.  Whether Hershey records a sale of product for accounting purposes is not relevant.  What constitutes "sales" or "making sales" within the meaning of the FLSA or of applicable federal regulations is a legal conclusion. |
| 45.    Hershey does not recognize a sale when an RSR moves product from the back room of the store to the front room of the store. | *Id*. at 36:4-6, Ex. L. | The cited evidence refers only to what Hershey considers a sale for purposes of an internal accounting convention.  Whether Hershey records a sale of product for accounting purposes is not relevant.  What constitutes "sales" or "making sales" within the meaning of the FLSA or of applicable federal regulations is a legal conclusion. |
| 46.    Hershey does not recognize a sale when an RSR fills out of stock on a shelf. | *Id*. at 36:7-8, Ex. L. | The cited evidence refers only to what Hershey considers a sale for purposes of an internal accounting convention.  Whether Hershey records a sale of product for accounting purposes is not relevant.  What constitutes "sales" or "making sales" within the meaning of the FLSA or of applicable federal regulations is a legal conclusion. |
| 47.    Hershey does not recognize a sale when an RSR drives from a store to another store. | *Id*. at 36:9-11, Ex. L. | The cited evidence refers only to what Hershey considers a sale for purposes of an internal accounting convention.  Whether Hershey |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | records a sale of product for accounting purposes is not relevant. What constitutes "sales" or "making sales" within the meaning of the FLSA or of applicable federal regulations is a legal conclusion. |
| 48.     Hershey does not recognize a sale when an RSR synchronizes his or her Rex. | *Id.* at 36:11-14, Ex. L. | The cited evidence refers only to what Hershey considers a sale for purposes of an internal accounting convention. Whether Hershey records a sale of product for accounting purposes is not relevant. What constitutes "sales" or "making sales" within the meaning of the FLSA or of applicable federal regulations is a legal conclusion. |
| 49.     Hershey does not recognize a sale when an RSR checks voice mail and e-mail. | *Id.* at 36:15-16, Ex. L. | The cited evidence refers only to what Hershey considers a sale for purposes of an internal accounting convention. Whether Hershey records a sale of product for accounting purposes is not relevant. What constitutes "sales" or "making sales" within the meaning of the FLSA or of applicable federal regulations is a legal conclusion. |
| 50.     Hershey contends that conducting a walk through and audit, checking the backroom, meeting with a store manager, showing the store manager sales data, discussing displays, promotions, and end cap space with the store manager, developing a relationship of trust with a store manager, preparing for meetings, and | Defendant The Hershey Company's Interrogatory Response, Ex. Y. | This is a completely inaccurate statement of Hershey's Interrogatory Response, dated June 17, 2009. The full Interrogatory Response makes clear that Hershey identified these and other tasks are part of the "consultative selling" process, whereby the RSRs are responsible for providing tailored and creative advice to their customer-stores about how best to increase the sale of Hershey |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| moving product from the back room to the shelf and filling out of stocks is "selling" Hershey product. | | product to consumers, and thereby, (1) create a long-lasting selling relationship with the customer-store, (2) drive Hershey sales to the customer-store, and (3) most importantly, "drive an increase in the sale of Hershey product by the RSR to the KDM and the store." (At pp. 5-6.) |
| 51.   Hershey has internal time studies it prepared reflecting that talking with a store manager consists of less than 10% of in-store call time. | H03872-H03873, Ex. HH. | Ex. HH has not been authenticated in any way, and as such is inadmissible.  The document Plaintiffs purport to cite as evidence does not say that it is an "internal time stud[y]," as Plaintiffs allege.  Nor does the document identify who authored it, for what purpose, for what time period, for what territories, or even what position it is for.  Indeed, this document does not apply to the RSR position at all.  (2011 Smuda Decl. ¶ 19.) |
| 52.   This time study is consistent with Hershey's Retail Call Procedure where Hershey directed a specific allocation of time while in each retail outlet in which 10% or less of the time was to "make sale." | P607, Ex. F; P85, Ex. E; Exhibit A to Anderson Dec. ¶ 7. | Plaintiffs' cited evidence fails to support these purported facts.  First, neither of these two documents supports the assertion that "*less*" than 10% of an RSR's time could be directed to "mak[ing] sales[s]"; at most, these documents recommend "10%" for "Gain Display Approval/Make Sale."  Put simply, these documents do not say what Plaintiffs say they do.  More significantly, none of this evidence supports the assertion that Hershey "directed" a specific allocation of time to RSRs.  Plaintiffs have not cited evidence that any RSR was directed that they must follow the |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | time allotments suggested on these two documents.  Plaintiffs have not pointed to any evidence that any RSR was ever disciplined for failing to follow the suggested time allotments on these documents.<br><br>RSRs, including Opt-In Plaintiffs, have testified that they do view these retail call procedures as guidelines and that they do not feel bound to follow a retail call procedure, in a specific order or for specific amounts of time (or a given step at all, if unnecessary), and deviate at their discretion. (*See* Ex. 26, Opt-In Plaintiff Fisher Dep. at 65:7-66:19, 67:13-70:1 (how much time she spends on a task, such as speaking with a KDM, and in what order she does it, depends on the sales opportunities that present in the store in a given day); Ex. 22, Opt-In Plaintiff Bain Dep. at 111:5-22; Ex. 8, Taylor Decl. ¶ 15; 6, Kruse Decl. ¶ 18; Ex. 15, Supp. Kruse Decl. ¶¶ 3-4; Ex. 12, Supp. Brinkmann Decl. ¶ 5; Ex. 16, Supp. Verdelli Decl. ¶¶ 3-5; Ex. 13, Supp. Dow Decl. ¶¶ 2-3; Ex. 14, Supp. Frederiksen Decl. ¶ 5.)<br><br>Additionally, RSRs, including Opt-In Plaintiffs, have testified that they have never seen any Hershey "Retail Call Procedure" that contained any suggested time allotments by percentage.  (Ex. 22, Opt-In Plaintiff Bain Dep. at |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | 139:7-140:17; Ex. 26, Opt-In Plaintiff Fisher Dep. at 129:8-15.) |
| 53.    Hershey is unable to identify what percentage of its "sales" to its customers is the result of the RSRs as opposed to other higher-level sales employees. | 30(b)(6) Dep. Smuda 86:10-87:5; 88:6-89:1, 94:19-95:9, 103:15-104:14, Ex. I. | Whether Hershey is able to track the exact percentage of its sales directly attributable to RSRs was beyond the scope of the topics for which Mr. Smuda was designated to testify on behalf of Hershey.

In any case, Hershey does not generally choose to break out the percentage of sales to a given customer store.  This is because selling occurs at various levels of Hershey's retail sales organization, including by CSEs and by RSRs, who are crucial for driving and actually making sales at the store level.  RSRs, including Opt-In Plaintiffs, engage in "incremental selling" of Hershey product at the store level.  (2011 Smuda Decl. ¶¶ 11-12, 16; Shein Decl. ¶¶ 5-7; Demos Decl. ¶¶ 4-5 (regarding incremental sales made by Opt-In Plaintiff Fisher); Ex.  2, Brinkmann Decl. ¶ 6; Ex. 4, Dow Decl. ¶ 14; Ex. 5, Fredericksen Decl. ¶ 6; Ex. 3, Comley Decl. ¶ 14; Ex. 7, Reed Decl. ¶ 19; Ex. 11, Villegas Decl. ¶ 8; Ex. 1, 2010 Smuda Decl. ¶ 20.)

However, Hershey could identify sales made solely by RSRs in certain instances, if it chose to do so.  For example, if a customer-store is not assigned to a CSE, then the RSR who calls on that store is responsible for all sales of Hershey product to that customer-store—a |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | process called "direct selling." (Ex. 1, 2010 Smuda Decl. ¶ 19; Shein Decl. ¶ 9; Wilson Decl. ¶ 4; Ex. 4, Dow Decl. ¶ 8; Ex. 5, Frederiksen Decl. ¶ 5; Ex. 9, Todorich Decl. ¶¶ 7-10; Ex. 3, Comley Decl. ¶ 15; Ex. 47, Buontempo Decl. ¶ 5; Ex. 48, Cerroni Decl. ¶ 7; Ex. 54, Hartley Decl. ¶ 15; Ex. 67, G. Williams Decl. ¶ 4.) Several of the Opt-In Plaintiffs themselves have performed direct selling in this circumstance. (Wilson Decl. ¶ 4, Ex. A thereto (regarding Opt-In Plaintiffs Andrea Ott, Brodie Craig, Jon Thompson and Michael Bain).)<br><br>Additionally, the REX system contains a column that tracks product "sold in" during an RSR's sales call, whereby an RSR can note the product that he has incrementally sold. (Harsh Decl., Ex. A.) |
| 54. Hershey has not ever attempted to break down the combination of headquarters, divisional, or store level "sales" to see what effort produces what result. | *Id*. at 95:10-18, Ex. I. | Whether Hershey is able to track the exact percentage of its sales directly attributable to RSRs was beyond the scope of the topics for which Mr. Smuda was designated to testify on behalf of Hershey.<br><br>In any case, Hershey does not generally choose to break out the percentage of sales to a given customer store. This is because selling occurs at various levels of Hershey's retail sales organization, including by CSEs and by RSRs, who are crucial for driving and |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | actually making sales at the store level. RSRs, including Opt-In Plaintiffs, engage in "incremental selling" of Hershey product at the store level. (2011 Smuda Decl. ¶¶ 11-12, 16; Shein Decl. ¶¶ 5-7; Demos Decl. ¶¶ 4-5 (regarding incremental sales made by Opt-In Plaintiff Fisher); Ex. 69, Opt-In Plaintiff Downer Dep. at 38:19-39:15; 144:2-1; Ex. 2, Brinkmann Decl. ¶ 6; Ex. 4, Dow Decl. ¶ 14; Ex. 5, Fredericksen Decl. ¶ 6; Ex. 3, Comley Decl. ¶ 14; Ex. 7, Reed Decl. ¶ 19; Ex. 11, Villegas Decl. ¶ 8; Ex. 1, 2010 Smuda Decl. ¶ 20.)<br><br>However, Hershey could identify sales made solely by RSRs in certain instances, if it chose to do so. For example, if a customer-store is not assigned to a CSE, then the RSR who calls on that store is responsible for all sales of Hershey product to that customer-store—a process called "direct selling." (Ex. 1, 2010 Smuda Decl. ¶ 19; Shein Decl. ¶ 9; Wilson Decl. ¶ 4;; Ex. 4, Dow Decl. ¶ 8; Ex. 5, Frederiksen Decl. ¶ 5; Ex. 9, Todorich Decl. ¶¶ 7-10; Ex. 3, Comley Decl. ¶ 15; Ex. 47, Buontempo Decl. ¶ 5; Ex. 48, Cerroni Decl. ¶ 7; Ex. 54, Hartley Decl. ¶ 15; Ex. 67, G. Williams Decl. ¶ 4.) Several of the Opt-In Plaintiffs themselves have performed direct selling in this circumstance. (Wilson Decl. ¶ 4, Ex. A thereto (regarding Opt-In Plaintiffs Andrea Ott, Brodie |

HERSHEY'S OPP TO PLFS.' SEP. STATEMENT RE
MOTION FOR PARTIAL SJ
CASE NO. C 08-1862 BZ

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | Craig, Jon Thompson and Michael Bain).) |
| | | Additionally, the REX system contains a column that tracks product "sold in" during an RSR's sales call, whereby an RSR can note the product that he has incrementally sold. (Harsh Decl., Ex. A.) |
| 55. Hershey would be "speculating" if it were was to provide any estimates as to what percent of sales were from the efforts of the RSRs. | *Id*. at 95:19-96:7, Ex. I. | Whether Hershey is able to track the exact percentage of its sales directly attributable to RSRs was beyond the scope of the topics for which Mr. Smuda was designated to testify on behalf of Hershey.<br><br>In any case, Hershey does not generally choose to break out the percentage of sales to a given customer store. This is because selling occurs at various levels of Hershey's retail sales organization, including by CSEs and by RSRs, who are crucial for driving and actually making sales at the store level. RSRs, including Opt-In Plaintiffs, engage in "incremental selling" of Hershey product at the store level. (2011 Smuda Decl. ¶¶ 11-12, 16; Shein Decl. ¶¶ 5-7; Demos Decl. ¶¶ 4-5 (regarding incremental sales made by Opt-In Plaintiff Fisher); Ex. 69, Opt-In Plaintiff Downer Dep. at 38:19-39:15; 144:2-1; Ex. 2, Brinkmann Decl. ¶ 6; Ex. 4, Dow Decl. ¶ 14; Ex. 5, Fredericksen Decl. ¶ 6; Ex. 3, Comley Decl. ¶ 14; Ex. 7, Reed Decl. ¶ 19; Ex. 11, Villegas Decl. ¶ 8; Ex. 1, 2010 Smuda Decl. ¶ 20.) |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | However, Hershey could identify sales made solely by RSRs in certain instances, if it chose to do so. For example, if a customer-store is not assigned to a CSE, then the RSR who calls on that store is responsible for all sales of Hershey product to that customer-store—a process called "direct selling." (Ex. 1, 2010 Smuda Decl. ¶ 19; Shein Decl. ¶ 9; Wilson Decl. ¶ 4;; Ex. 4, Dow Decl. ¶ 8; Ex. 5, Frederiksen Decl. ¶ 5; Ex. 9, Todorich Decl. ¶¶ 7-10; Ex. 3, Comley Decl. ¶ 15; Ex. 47, Buontempo Decl. ¶ 5; Ex. 48, Cerroni Decl. ¶ 7; Ex. 54, Hartley Decl. ¶ 15; Ex. 67, G. Williams Decl. ¶ 4.) Several of the Opt-In Plaintiffs themselves have performed direct selling in this circumstance. (Wilson Decl. ¶ 4, Ex. A thereto (regarding Opt-In Plaintiffs Andrea Ott, Brodie Craig, Jon Thompson and Michael Bain).) <br><br> Additionally, the REX system contains a column that tracks product "sold in" during an RSR's sales call, whereby an RSR can note the product that he has incrementally sold. (Harsh Decl., Ex. A.) |
| 56.    Hershey is not even sure how it could breakdown percentages. | *Id*. at 89:2-89:9, Ex. I. | Whether Hershey is able to track the exact percentage of its sales directly attributable to RSRs was beyond the scope of the topics for which Mr. Smuda was designated to testify on behalf of Hershey. |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | In any case, Hershey does not generally choose to break out the percentage of sales to a given customer store. This is because selling occurs at various levels of Hershey's retail sales organization, including by CSEs and by RSRs, who are crucial for driving and actually making sales at the store level. RSRs, including Opt-In Plaintiffs, engage in "incremental selling" of Hershey product at the store level. (2011 Smuda Decl. ¶¶ 11-12, 16; Shein Decl. ¶¶ 5-7; Demos Decl. ¶¶ 4-5 (regarding incremental sales made by Opt-In Plaintiff Fisher); Ex. 69, Opt-In Plaintiff Downer Dep. at 38:19-39:15; 144:2-1; Ex. 2, Brinkmann Decl. ¶ 6; Ex. 4, Dow Decl. ¶ 14; Ex. 5, Fredericksen Decl. ¶ 6; Ex. 3, Comley Decl. ¶ 14; Ex. 7, Reed Decl. ¶ 19; Ex. 11, Villegas Decl. ¶ 8; Ex. 1, 2010 Smuda Decl. ¶ 20.)<br><br>However, Hershey could identify sales made solely by RSRs in certain instances, if it chose to do so. For example, if a customer-store is not assigned to a CSE, then the RSR who calls on that store is responsible for all sales of Hershey product to that customer-store—a process called "direct selling." (Ex. 1, 2010 Smuda Decl. ¶ 19; Shein Decl. ¶ 9; Wilson Decl. ¶ 4;; Ex. 4, Dow Decl. ¶ 8; Ex. 5, Frederiksen Decl. ¶ 5; Ex. 9, Todorich Decl. ¶¶ 7-10; Ex. 3, Comley Decl. ¶ 15; Ex. 47, |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | Buontempo Decl. ¶ 5; Ex. 48, Cerroni Decl. ¶ 7; Ex. 54, Hartley Decl. ¶ 15; Ex. 67, G. Williams Decl. ¶ 4.)  Several of the Opt-In Plaintiffs themselves have performed direct selling in this circumstance.  (Wilson Decl. ¶ 4, Ex. A thereto (regarding Opt-In Plaintiffs Andrea Ott, Brodie Craig, Jon Thompson and Michael Bain).)<br><br>Additionally, the REX system contains a column that tracks product "sold in" during an RSR's sales call, whereby an RSR can note the product that he has incrementally sold.  (Harsh Decl., Ex. A.) |
| 57.    Hershey does not provide the RSRs with reports detailing what an RSR individually sold into a store, and the RSR annual performance review contains no tally of individual sales. | Dow 28:40-6, 12-20, 31:15-19, Ex. M; Todorich 28:15-21, Ex. T; Taylor 93:14-15, Ex. N. | Hershey does not generally choose to break out the percentage of sales to a given customer store.  This is because selling occurs at various levels of Hershey's retail sales organization, including by CSEs and by RSRs, who are crucial for driving and actually making sales at the store level.  RSRs, including Opt-In Plaintiffs, engage in "incremental selling" of Hershey product at the store level.  (2011 Smuda Decl. ¶¶ 11-12, 16; Shein Decl. ¶¶ 5-7; Demos Decl. ¶¶ 4-5 (regarding incremental sales made by Opt-In Plaintiff Fisher); Ex. 69, Opt-In Plaintiff Downer Dep. at 38:19-39:15; 144:2-1; Ex. 2, Brinkmann Decl. ¶ 6; Ex. 4, Dow Decl. ¶ 14; Ex. 5, Fredericksen Decl. ¶ 6; Ex. 3, Comley Decl. ¶ 14; Ex. 7, Reed Decl. ¶ 19; Ex. 11, |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | Villegas Decl. ¶ 8; Ex. 1, 2010 Smuda Decl. ¶ 20.)<br><br>However, Hershey could identify sales made solely by RSRs in certain instances, if it chose to do so.  For example, if a customer-store is not assigned to a CSE, then the RSR who calls on that store is responsible for all sales of Hershey product to that customer-store—a process called "direct selling." (Ex. 1, 2010 Smuda Decl. ¶ 19; Shein Decl. ¶ 9; Wilson Decl. ¶ 4;; Ex. 4, Dow Decl. ¶ 8; Ex. 5, Frederiksen Decl. ¶ 5; Ex. 9, Todorich Decl. ¶¶ 7-10; Ex. 3, Comley Decl. ¶ 15; Ex. 47, Buontempo Decl. ¶ 5; Ex. 48, Cerroni Decl. ¶ 7; Ex. 54, Hartley Decl. ¶ 15; Ex. 67, G. Williams Decl. ¶ 4.)   Several of the Opt-In Plaintiffs themselves have performed direct selling in this circumstance.  (Wilson Decl. ¶ 4, Ex. A thereto (regarding Opt-In Plaintiffs Andrea Ott, Brodie Craig, Jon Thompson and Michael Bain).)<br><br>Additionally, the REX system contains a column that tracks product "sold in" during an RSR's sales call, whereby an RSR can note the product that he has incrementally sold.  (Harsh Decl., Ex. A.) |
| 58.    Hershey's use of the term "sale" in regards to the RSRs reflects an internal credit system of product | 30(b)(6) Ibberson Vol. 1 56:2-18, Ex. G; Dow 31:20-33:5, 33:6-25, 36:17-19, | Hershey's definition of the term sale was beyond the scope of the topics for which Mr. Ibberson was designated to testify on behalf of |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| already owned by Hershey's customer being moved from a customer's warehouse to a specific store. | Ex. M; Todorich 13:10-14:7, Ex. T; Frederiksen 52:19-24, 53:10-19, 64:5-65:13, 66:2-5, 78:1-3, 69:25-70:21, 80:7-17, Ex. R; Comley 34:3-20, Ex. S; RSR Declarant Matthew Verdelli 55:20-56:18, Ex. P; Anderson Dec. ¶ 4; Smith Dec. ¶4; Godfrey Dec. ¶ 4. | Hershey.  Additionally, the phrase "internal reporting system" is overbroad.  It is also irrelevant. What constitutes "sales" or "making sales" within the meaning of the FLSA or of applicable federal regulations is a legal conclusion.<br><br>In any case, RSRs do drive demand for and sales of Hershey product, and do not simply move pre-sold product.  The initial sales made to larger customers at headquarters are highly dependent upon the efforts of RSRs in selling in additional display space at customer stores, driving demand for Hershey product, and increasing sell through at the store level.  Specifically, gaining commitments at the corporate level depends in large part on how effective RSRs were in selling additional products, generating demand, and achieving or exceeding sales targets at the store level in the prior year.  (Shein Decl. ¶¶ 5-8; 2011 Smuda Decl. ¶¶ 9-13; Ex. 1, 2010 Smuda Decl. ¶¶ 17, 21.)  RSRs, including Opt-In Plaintiffs, understand that the store-level sell-through numbers they directly affect, and are responsible for driving, will be used in this way, when a store determines how much of an initial order of a product to make next year or season.  (Ex. 26, Opt-In Plaintiff Fisher Dep. at 27:17-23, 29:1-8, 33:4-7, 45:2-18, 46:10-23; |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | Ex. 22, Opt-In Plaintiff Bain Dep. at 41:19-42:25, 94:23-95:9.)

Additionally, Hershey does not rely exclusively on agreements with its customers at the headquarters level regarding the products that it sells to its customer stores. RSRs are crucial for driving and actually making sales at the store level. RSRs, including Opt-In Plaintiffs, engage in "incremental selling" of Hershey product at the store level. (2011 Smuda Decl. ¶¶ 11-12, 16; Shein Decl. ¶¶ 5-7; Demos Decl. ¶¶ 4-5 (regarding incremental sales made by Opt-In Plaintiff Fisher); Ex. 69, Opt-In Plaintiff Downer Dep. at 38:19-39:15; 144:2-1; Ex. 2, Brinkmann Decl. ¶ 6; Ex. 4, Dow Decl. ¶ 14; Ex. 5, Fredericksen Decl. ¶ 6; Ex. 3, Comley Decl. ¶ 14; Ex. 7, Reed Decl. ¶ 19; Ex. 11, Villegas Decl. ¶ 8; Ex. 1, 2010 Smuda Decl. ¶ 20.)

Also, if a customer-store is not assigned to a CSE, then the RSR who calls on that store is responsible for all sales of Hershey product to that customer-store—a process called "direct selling." (Ex. 1, 2010 Smuda Decl. ¶ 19; Shein Decl. ¶ 9; Wilson Decl. ¶ 4;; Ex. 4, Dow Decl. ¶ 8; Ex. 5, Frederiksen Decl. ¶ 5; Ex. 9, Todorich Decl. ¶¶ 7-10; Ex. 3, Comley Decl. ¶ 15; Ex. 47, Buontempo Decl. ¶ 5; Ex. 48, Cerroni Decl. ¶ 7; Ex. 54, Hartley |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | Decl. ¶ 15; Ex. 67, G. Williams Decl. ¶ 4.)  Several of the Opt-In Plaintiffs themselves have performed direct selling in this circumstance.  (Wilson Decl. ¶ 4, Ex. A thereto (regarding Opt-In Plaintiffs Andrea Ott, Brodie Craig, Jon Thompson and Michael Bain).) |
| 59.     Hershey also uses the term "sale" in regards to the RSRs is through point of sales ("POS") reports, which is the amount of Hershey product that a retailer sells to the retailer's customer. | Taylor 62:12-13, Ex. N; Todorich 27:9-16, Ex. T. | Hershey does believe and rely upon RSRs to drive demand for and sales of Hershey product to its customer stores.  Even those initial sales made to larger customers at headquarters are highly dependent upon the efforts of RSRs in selling in additional display space at customer stores, driving demand for Hershey product, and increasing sell through at the store level.  Specifically, gaining commitments at the corporate level depends in large part on how effective RSRs were in selling additional products, generating demand, and achieving or exceeding sales targets at the store level in the prior year.  (Shein Decl. ¶¶ 5-8; 2011 Smuda Decl. ¶¶ 9-13; Ex. 1, 2010 Smuda Decl. ¶¶ 17, 21.)  RSRs, including Opt-In Plaintiffs, understand that the store-level sell-through numbers they directly affect, and are responsible for driving, will be used in this way, when a store determines how much of an initial order of a product to make next year or season.  (Ex. 26, Opt-In Plaintiff Fisher Dep. at 27:17-23, 29:1-8, 33:4-7, 45:2-18, 46:10-23; |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | Ex. 22, Opt-In Plaintiff Bain Dep. at 41:19-42:25, 94:23-95:9.) |
| 60.    The only differences between the RSR and RSM position is that the RSRs call on larger retailers while the RSMs call on convenience stores, and the RSR position is starting position to begin a career at Hershey. | 30(b)(6) Dep. Ibberson Vol. 2, 97:3-19, Ex. H. | The differences between the RSR and the Retail Sales Merchandiser ("RSM") position was beyond the scope of the topics for which Mr. Ibberson was designated to testify on behalf of Hershey.

Furthermore, the cited evidence does not say what Plaintiffs say it does.  The RSM position is a part-time position, that has as its primary responsibility distribution and merchandising activities, and is characterized by short calls to a wide range of convenience store retailers.  (Ex. 28, Ibberson Dp. Vol. 2 at 96:9-97:11.)  In contrast, the RSR position is a full-time selling position that is focused on developing relationships with KDMs, so as to develop a long-lasting, strong relationship with a customer-store, and to drive and make a significant volume of sales at primarily large customer stores, including Wal-Marts and groceries.  (*Id.* at 97:12-19; 2011 Smuda Decl. ¶¶ 8-9.) |
| 61.    The RSRs are engaged in a substantial amount of heavy manual labor. | Anderson Dec. ¶ 7; Smith Dec. ¶ 7; Godfrey Dec. ¶ 7; Dow 56:14-213 58:2-20, Ex. M; Frederiksen 31:24-32:2; 45:11-24, 45:25-46:20, Ex. R; Kruse 43:3-6, 21:25, 45:6-10, Ex. Q; Taylor 57:18-58:14, | Hershey does not expect nor want its RSRs to spend significant time physically handling product. (Ex. 1, 2010 Smuda Decl. ¶ 24; Wilson Decl. ¶ 5.)  That is not what they are paid or trained to do.  (Ex. 1, 2010 Smuda Decl. ¶ 26.)

Thus, many RSRs have explicitly stated that they spend far less than half of their time physically |

HERSHEY'S OPP TO PLFS.' SEP. STATEMENT RE
MOTION FOR PARTIAL SJ
CASE NO. C 08-1862 BZ

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | Ex. N; Comley 121:21-122:20, Ex. S; Verdelli 75:11-25, Ex. P; H00001013-H00001022, Ex. Z; H00007647-H00007649, Ex. AA. | touching product.  (Ex. 7, Reed Decl. ¶ 18; Ex. 9, Todorich Decl. ¶¶ 19, 22; Ex. 10, Verdelli Decl. ¶¶ 21-22; Ex. 3, Comley Decl. ¶¶ 16-17; Ex. 2, Brinkmann Decl. ¶ 9.)  Even Named Plaintiff Anderson candidly admitted that Hershey did not want RSRs to pack out product, but that she did so because she was not as successful at "managing the manager" as other RSRs were or as Hershey wanted her to be.  (Ex. 21, Anderson Dep. at 133:1-135:2.)  Nor is doing significant physical labor a requirement of the job.  Indeed, Opt-In Plaintiff Fisher worked for a time, while she was pregnant, under a physical restriction from her doctor which prohibited her from lifting more than 20 lbs.  (Ex. 26, Opt-In Plaintiff Fisher Dep. at 116:23-117:13.)  Fisher testified that she was able to perform her job duties as an RSR even with this restriction.  (*Id.* at 117:11-13.) |
| 62.     The RSRs are trained annually on "Retail Sales Safety In the Work Place Training Module." | 30(b)(6) Dep. Ibberson Vol. 2, 214:18-23; H00001013-H00001022, Ex. Z. | The cited evidence does not support the fact that RSRs are trained annually on the "Retail Sales Safety In the Work Place Training Module," but instead merely supports that RSRs receive safety training when they are hired. |
| 63.     The RSRs are required to sign off on and submit this document to Hershey. | 30(b)(6) Dep. Ibberson Vol. 2, 217:10-15, Ex. H. | The cited evidence does not support the fact that RSRs are trained annually on the "Retail Sales Safety In the Work Place Training Module," but instead merely supports that RSRs receive |

HERSHEY'S OPP TO PLFS.' SEP. STATEMENT RE MOTION FOR PARTIAL SJ
CASE NO. C 08-1862 BZ

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | safety training when they are hired, and sign off on this training at that time. |
| 64.   The physical requirements of the RSR position include lifting and carrying boxes, climbing ladders, cutting boxes, moving display racks, and carrying materials in and out of the retail outlets RSRs service. | 30(b)(6) Ibberson Vol. 2, 218:8-19; 220:20-221:13, Ex. H; H00001013-H00001022, Ex. Z. | The physical requirements of the RSR job position were beyond the scope of the topics for which Mr. Ibberson was designated to testify on behalf of Hershey.<br><br>Furthermore, Hershey does not expect nor want its RSRs to spend significant time physically handling product. (Ex. 1, 2010 Smuda Decl. ¶ 24; Wilson Decl. ¶ 5.)  That is not what they are paid or trained to do. (Ex. 1, 2010 Smuda Decl. ¶ 26.)<br><br>Nor is doing significant physical labor a requirement of the job. Indeed, Opt-In Plaintiff Fisher worked for a time, while she was pregnant, under a physical restriction from her doctor which prohibited her from lifting more than 20 lbs. (Ex. 26, Opt-In Plaintiff Fisher Dep. at 116:23-117:13.)  Fisher testified that she was able to perform her job duties as an RSR even with this restriction. (*Id.* at 117:11-13.) |
| 65.   The RSR position involves a specific set of "Physical Requirements." | H00007647-H00007649, Ex. AA. | Plaintiffs cite to a physical requirements document that purports to identify how frequently certain physical tasks are undertaken by RSRs.  However, Plaintiffs ignore evidence that neither Hershey nor the RSRs themselves believe the document is accurate to the extent that it is interpreted to refer to handling |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | product – though it may be more accurate if it is interpreted to refer to carrying a laptop and sales tools. (Ex. 1, 2010 Smuda Decl. ¶ 29; Ex. 16, Supp. Verdelli Decl. ¶ 2; Ex. 12, Supp. Brinkmann Decl. ¶¶ 2-4; Ex. 14, Supp. Frederiksen Decl. ¶¶ 2-4; Ex. 15, Supp. Kruse Decl. ¶ 2.)  This is not surprising given that the document was used solely as a guideline for health care providers when considering physical restrictions for RSRs who were returning to work, and would be supplemented by the individual RSR's own discussions with the health care provider in question in a particular circumstance.  (Ex. 38, Mull Decl. ¶¶ 4-5, 7.)  Hershey's sales organization was not even consulted when the document was drafted and the document is not intended to describe the duties of all RSRs.  (Ex. 1, 2010 Smuda Decl. ¶ 29; Ex. 38, Mull Decl. ¶ 5.) |
| 66.    The "Physical Requirements" of the RSR position entails "constantly" lifting and carrying 1-25 pounds and "frequently" carrying and lifting 26-50 pounds. | H00007647-H00007649, Ex. AA. | Plaintiffs cite to a physical requirements document that purports to identify how frequently certain physical tasks are undertaken by RSRs.  However, Plaintiffs ignore evidence that neither Hershey nor the RSRs themselves believe the document is accurate to the extent that it is interpreted to refer to handling product – though it may be more accurate if it is interpreted to refer to carrying a laptop and sales tools. (Ex. 1, 2010 Smuda Decl. ¶ 29; Ex. 16, Supp. Verdelli Decl. ¶ 2; Ex. 12, Supp. Brinkmann Decl. ¶¶ |

HERSHEY'S OPP TO PLFS.' SEP. STATEMENT RE
MOTION FOR PARTIAL SJ
CASE NO. C 08-1862 BZ

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | 2-4; Ex. 14, Supp. Frederiksen Decl. ¶¶ 2-4; Ex. 15, Supp. Kruse Decl. ¶ 2.)  This is not surprising given that the document was used solely as a guideline for health care providers when considering physical restrictions for RSRs who were returning to work, and would be supplemented by the individual RSR's own discussions with the health care provider in question in a particular circumstance.  (Ex. 38, Mull Decl. ¶¶ 4-5, 7.)  Hershey's sales organization was not even consulted when the document was drafted and the document is not intended to describe the duties of all RSRs.  (Ex. 1, 2010 Smuda Decl. ¶ 29; Ex. 38, Mull Decl. ¶ 5.) |
| 67.     One of the "primary purpose" of the RSR job as set forth in the Job Description is to "insure best in class merchandising to include building displays, packing out product, and replenishing permanent secondary displays and maintain salability of all authorized Hershey items." | H00000782, Ex. AA. | This is a misleading, selective quote from a document that is no longer the current job description for RSRs, as of 2007.  (Ex. 1, 2010 Smuda Decl. ¶¶ 9-11.)  Plaintiffs omit the *first*, *primary* part of this sentence, which begins, "RSR will sell . . ."

In any case, the 2007 job description has no reference to physical merchandising at all.  (Ex. 1, 2010 Smuda Decl. ¶ 11, Ex. B thereto.)

Furthermore, the term "merchandise" is subject to many different interpretations, and when used by Hershey, refers to an RSR's responsibility for ensuring that Hershey product is properly displayed, in high-traffic, visible |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | areas, and is not necessarily a physical task that an RSR must personally complete himself or herself. (*Id.* ¶¶ 12-13; *see also* Ex. 22, Opt-In Plaintiff Bain Dep. at 86:5-13.) |
| 68.     The RSRs' daily duties include building displays, replenishing permanent secondary displays, going to a store's backroom to examine the Hershey product, cutting open boxes of Hershey product, and packing the product from the backroom to the store floor. | Anderson Dec. ¶ 7; Smith Dec. ¶ 7; Godfrey Dec. ¶ 7; Dow 56:14-23 58:2-20; Frederiksen 31:24-32:2; 45:11-24, 45:25-46:20; Kruse 43:3-6, 21:25, 45:6-10; Taylor 57:18-58:14; Comley 121:21-122:20; Verdelli 75:11-25 | None of these tasks, nor any specific tasks, will necessarily be done by an RSR on a "daily" basis, if it does not make sense, in the RSR's judgment, to do them in a given customer store.  (Ex. 26, Opt-In Plaintiff Fisher Dep. at 65:7-66:19, 67:13-70:1; Ex. 6, Reed Decl. ¶ 18; Ex. 7, Reed Decl. ¶ 17 ("[T]here are many days when I do no merchandising tasks whatsoever.").  "Sometimes in calls we merchandise product, sometimes we don't.  Sometimes the key decision maker goes on vacation.  Sometimes there is no product in the back room, sometimes there is and so on.  It would be very counterproductive to try to budget time without adjusting to in-call conditions."  (Ex. 28, Ibberson Dep. Vol. 2 at 141:3-18.) |
| 69.     Hershey's documentation confirms that the RSRs spent 10% or less of their time speaking to a store manager and a substantial amount of their time performing manual labor tasks. | H03872-H03873; P607; P85. | As an initial matter, Plaintiffs' use of the word "time" is vague and ambiguous here, as it is unclear whether Plaintiffs are referring to a percentage of the time RSRs are actually in a store making a sales call, or whether Plaintiffs are referring to a percentage of the overall time an RSR spends working in a given day or week. RSRs have testified that they spend time working from home at |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | night or on the weekend, performing such tasks as reviewing sales figures for their stores as well as preparing sales presentations, among other tasks. (*See* Ex. 22, Opt-In Plaintiff Bain Dep. at 97:2-10, 99:7-20.)  Plaintiffs do not appear to be taking this "time" into account here.

Furthermore, Plaintiffs cite as evidence a document H03872-H03873 (Ex. HH to the Malloy Declaration).  This document has not been authenticated in any way, and as such is inadmissible.  The document Plaintiffs purport to cite as evidence does not say that it is an "internal time stud[y]" as Plaintiffs allege (*see* Plaintiffs' Undisputed Fact No. 51, above). Nor does the document identify who authored it, for what purpose, for what time period, for what territories, or even what position it is for.  Indeed, this document does not apply to the RSR position at all.  (2011 Smuda Decl. ¶ 19.)

Additionally, RSRs, including Opt-In Plaintiffs, have testified that they have never seen any Hershey "Retail Call Procedure" that contained any suggested time allotments by percentage (such as P607 or P805).  (Ex. 22, Opt-In Plaintiff Bain Dep. at 139:7-140:17; Ex. 26, Opt-In Plaintiff Fisher Dep. at 129:8-15.)

In fact, the amount of time an RSR |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | spends in a store speaking to a store manager "varies by call but some can be very lengthy," perhaps a "half hour," depending on the opportunities for additional sales and the time the manager has available.  (Ex. 28, Ibberson Dep. Vol. 2 at 152:2-153:4.)  Hershey desires and expects RSRs to spend whatever time it takes for "quality . . . face-to-face time with the stores."  (Ex. 28 Ibberson Dep. Vol. 2 at 153:2-4.)

Lastly, these three documents do not support the alleged fact that RSRs spend a "substantial amount of their time performing manual labor tasks."  The documents refer merely to "merchandising."  The term "merchandise" is subject to many different interpretations, and when used by Hershey, refers to an RSRs's responsibility for ensuring that Hershey product is properly displayed, in high-traffic, visible areas, and is not necessarily a physical task that an RSR must personally complete himself or herself.  (Ex. 1, 2010 Smuda Decl. ¶¶ 12-13.)  Opt-In Plaintiff Bain recognized his understanding that merchandising refers to these *mental* tasks also. (Ex. 22, Opt-In Plaintiff Bain Dep. at 86:5-13.)

Nor is doing "substantial manual labor," a requirement of the job. Indeed, Opt-In Plaintiff Fisher worked for a time, while she was pregnant, under a physical |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | restriction from her doctor which prohibited her from lifting more than 20 lbs. (Ex. 26, Opt-In Plaintiff Fisher Dep. at 101:23-102:13.) Fisher testified that she was able to perform her job duties as an RSR even with this restriction. (*Id.* at 102:11-13.) |
| 70.    RSR Declarant Russell Brinkman does not assign himself his territory, he does not have the authority to remove stores from or add stores to his territory, does not play any role in the creation or negotiation of any headquarters ales plans, he does not have the authority to lower the price of Hershey product (unless the product is about to go bad and his supervisor has gives him authority to lower) nor does he play any role in product pricing for Hershey, he must notify his supervisor if he wants to start his day after the 7:00 a.m. start time, and he must notify his supervisor if he wants to run a personal errand during the day. | Brinkmann 88:1-16, 89:17-90:10, 91:16-92:6, 92:8-93:21, Ex. O. | The phrase "headquarter sales plan" is vague and ambiguous. Moreover, Plaintiffs' mischaracterize Brinkmann's testimony, as he did testify that he was involved in sales plans. (Ex. 23, Brinkmann Dep. at 85:9-12.) In fact, various levels of the Hershey organization are responsible for developing various sales plans, including headquarters and the RSRs themselves. (Ex. 28, Ibberson Dep. Vol. 2 at 200:16-205:8; Shein Decl. ¶¶ 4, 8; 2011 Smuda Decl. ¶¶ 10, 14.) RSRs are expected to develop their own sales plans, (Ex. 33, Smuda Dep. at 272:25-273:3), as well as provide input into any sales plans that originate from CSEs, and also to implement, modify and expand such sales plans at the store level. (2011 Smuda Decl. ¶¶ 10, 14; Shein Decl. ¶¶ 4, 8).

Plaintiffs also mischaracterize Brinkmann's testimony about the time he is expected to visit his first store. He testified only that he would need to notify his DSM if he wanted to "fundamentally" change the time he first started visiting stores. (Ex. 23, Brinkmann |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | Dep. at 92:3-6.)  A 7 a.m. start time is merely a recommended "guideline," such that RSRs can and do vary radically from these start times.  For example, Opt-In Plaintiff Fisher has the freedom to arrive at her stores anywhere "between 5:00 [a.m.] and 7:00 a.m.," explaining that "[i]t just depends on when I wake up."  (Ex. 26, Opt-In Plaintiff Fisher Dep. at 87:9-88:1.)  Fisher testified that it is "up to [her]" when to visit her first store.  (*Id.* at 88:24-89:1.) |
| 71.     RSR Declarant Colleen Dow does not negotiate for Hershey the headquarters sales plans with Wal-Mart, as that is done between account executives, nor does she have any input into those negotiations. | Dow 19:3-10, 19:25-20:12, Ex. M. | The phrase "headquarter sales plan" is vague and ambiguous.

In fact, various levels of the Hershey organization are responsible for developing various sales plans, including headquarters and the RSRs themselves.  (Ex. 28, Ibberson Dep. Vol. 2 at 200:16-205:8; Shein Decl. ¶¶ 4, 8; 2011 Smuda Decl. ¶¶ 10, 14.)  RSRs are expected to develop their own sales plans, (Ex. 33, Smuda Dep. at 272:25-273:3), as well as provide input into any sales plans that originate from CSEs, and also to implement, modify and expand such sales plans at the store level. (2011 Smuda Decl. ¶¶ 10, 14; Shein Decl. ¶¶ 4, 8). |
| 72.     Ms. Dow has no say whatsoever in terms of the volume of product negotiated between Hershey and mass merchandisers (such as Wal-Mart, Lucky's, Safeway, Raley's, Save Mart and Nob | Dow 20:13-21:9; *see also* 54:11-16, Ex. M. | Plaintiffs' mischaracterize Dow's testimony, as she did not testify that she had no involvement in the volume of Hershey product sold; she merely testified that she does actually negotiate herself with customer-chain account |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| Hill) or the pricing of any products, including periodic and seasonal promotions. | | executives.<br><br>In fact, there is significant evidence that RSRs actually have a significant impact on the volume of Hershey's sales. *See* Hershey's Response to Plaintiffs' Undisputed Fact No. 8, above, and the evidence cited therein, regarding the "incremental" and "direct" sales that RSRs, including Opt-In Plaintiffs, perform.<br><br>Additionally, even those initial sales made to larger customers at headquarters are highly dependent upon the efforts of RSRs in selling in additional display space at customer stores, driving demand for Hershey product, and increasing sell through at the store level. Specifically, gaining commitments at the corporate level depends in large part on how effective RSRs are in selling additional products, generating demand, and achieving or exceeding sales targets at the store level in the prior year. (Shein Decl. ¶¶ 5-8; 2011 Smuda Decl. ¶¶ 9-13; Ex. 1, 2010 Smuda Decl. ¶¶ 17, 21.)<br><br>RSRs, including Opt-In Plaintiffs, understand that the store-level sell-through numbers they directly affect, and are responsible for driving, will be used in this way, when a store determines how much of an initial order of a product to make next year or season. (Ex. 26, |

52

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | Opt-In Plaintiff Fisher Dep. at 27:17-23, 29:1-8, 33:4-7, 45:2-18; 46:10-23; Ex. 22, Opt-In Plaintiff Bain Dep. at 41:19-42:25, 94:23-95:9.)<br><br>The positive effect that RSRs have on the volume of sales was directly evident by the impact pulling them out of customer stores had.  In 2006, RSR coverage in the field was decreased – and during this time, Hershey's sales dropped significantly until the company re-dedicated the RSRs to the field. (2011 Smuda Decl. ¶ 13.) |
| 73.     Ms. Dow does not have anything to do with the headquarter merchandising plans and she does not prepare her own training materials. | Dow 26:9-13, 54:5-10, Ex. M. | The phrase "headquarter merchandising plan" is vague and ambiguous.<br><br>It is irrelevant whether Ms. Dow prepares materials to train **herself** for her position. |
| 74.     RSR Declarant Douglas Todorich does not have the authority to formulate management policies, carry out major assignments for Hershey, perform work that affects the overall business operations of Hershey to a substantial degree, commit Hershey as a whole on matters of significant financial impact to the company, have the authority to waive mandatory policies and procedures without getting prior approval, have the authority to negotiate and bind Hershey | Todorich 41:12-44:16, Ex. T. | These are legal conclusions and not facts.  Additionally, the terms "carry out major assignments," "perform work that affects the overall business operations," "a substantial degree," "matters of significant financial impact," "negotiate and bind Hershey on significant matters" and "resolve matters of significance" are overbroad, vague, ambiguous.<br><br>In any case, RSRs in fact actually are provided with significant discretion and independent judgment which allows and empowers them to create and execute on specific strategies they |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| on significant matters, provide expert advice to the management team, assist Hershey's management or executive team with long or short term planning of Hershey's business objectives, investigate or resolve matters of significance to Hershey on behalf of management, represented Hershey in handling any grievance of any type, or represented Hershey to arbitrate any disputes. | | develop and take appropriate actions to increase sales by a particular store at a particular time. (Ex. 1, 2010 Smuda Decl. ¶¶ 17-18.)  Each RSR is trained to act as the "CEO of their territory," and to perform his or her job duties accordingly.  (Ex. 4, Dow Decl. ¶ 15; Ex. 2, Brinkmann Decl. ¶ 7; Ex. 11, Villegas Decl. ¶ 10; Ex. 8, Taylor Decl. ¶ 20; Ex. 9, Todorich Decl. ¶ 23; Ex. 42, Altman Decl. ¶ 11; Ex. 43, Bain Decl. ¶ 12; Ex. 46, Brouwer Decl. ¶ 14; Ex. 48, Cerroni Decl. ¶ 7; Ex. 54, Hartley Decl. ¶ 11.)  RSRs work virtually independently, seeing their direct supervisors just once or twice a month.  (Ex. 10, Verdelli Decl. ¶ 10; Ex. 42, Altman Decl ¶ 9; Ex. 45, Bratton Decl. ¶ 12; Ex. 49, Curtis Decl. ¶ 18; Ex. 1, 2010 Smuda Decl. ¶ 23.)  This empowerment allows RSRs to manage their territories in an individualized manner that maximizes their sales and the sales of their customer clients, and accordingly RSRs enjoy significant freedom, flexibility and discretion in achieving Hershey's expectations.  (Ex. 4, Dow Decl. ¶¶ 16-17; Ex. 10, Verdelli Decl. ¶¶ 12, 15, 29; Ex. 9, Todorich Decl. ¶ 15; Ex. 8, Taylor Decl. ¶ 23; Ex. 7, Reed Decl. ¶¶ 7-8, 10; Ex. 44, Beasley Decl. ¶ 12; Ex. 48, Cerroni Decl. ¶ 7; Ex. 65, Scott Decl. ¶ 18; Ex. 1. 2010 Smuda Decl. ¶ 18.) |
| 75.     RSR Declarant Tom | Kruse 85:2-6, 86:18- | These are legal conclusions and |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| Kruse does not have the authority to formulate Hershey management policies or practices, does not have the authority to commit Hershey to matters of significant financial impact to Hershey, is not authorized to unilaterally waive or deviate from Hershey's required policies and procedures except on minor issues; does not have authority to negotiate and bind Hershey on significant contractual matters, does not provide expert advise to Hershey's management, has not been asked to be involved in Hershey's long or short term corporate business objectives, has not been asked by Hershey to investigate or resolve matters of significance to Hershey on behalf of Hershey's management team, and has never represented the company in handling employee complains, arbitrating disputes, or resolving grievances. | 24, 88:9-22, 89:3-90:12, Ex. Q. | not facts.<br><br>The terms "matters of significant financial impact," "negotiate and bind Hershey on significant matters" and "resolve matters of significance" are overbroad, vague, ambiguous.<br><br>Additionally, Plaintiffs' mischaracterize Kruse's testimony, as he did testify that he does carry out major assignments for the operations of Hershey's business. (Ex. 29, Opt-In Plaintiff Kruse Dep. at 85:8-21.)<br><br>In any case, RSRs in fact actually are provided with significant discretion and independent judgment which allows and empowers them to create and execute on specific strategies they develop and take appropriate actions to increase sales by a particular store at a particular time. (Ex. 1, 2010 Smuda Decl. ¶¶ 17-18.) Each RSR is trained to act as the "CEO of their territory," and to perform his or her job duties accordingly. (Ex. 4, Dow Decl. ¶ 15; Ex. 2, Brinkmann Decl. ¶ 7; Ex. 11, Villegas Decl. ¶ 10; Ex. 8, Taylor Decl. ¶ 20; Ex. 9, Todorich Decl. ¶ 23; Ex. 42, Altman Decl. ¶ 11; Ex. 43, Bain Decl. ¶ 12; Ex. 46, Brouwer Decl. ¶ 14; Ex. 48, Cerroni Decl. ¶ 7; Ex. 54, Hartley Decl. ¶ 11.) RSRs work virtually independently, seeing their direct supervisors just once or twice a |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | month. (Ex. 10, Verdelli Decl. ¶ 10; Ex. 42, Altman Decl ¶ 9; Ex. 45, Bratton Decl. ¶ 12; Ex. 49, Curtis Decl. ¶ 18; Ex. 1, 2010 Smuda Decl. ¶ 23.) This empowerment allows RSRs to manage their territories in an individualized manner that maximizes their sales and the sales of their customer clients, and accordingly RSRs enjoy significant freedom, flexibility and discretion in achieving Hershey's expectations. (Ex. 4, Dow Decl. ¶¶ 16-17; Ex. 10, Verdelli Decl. ¶¶ 12, 15, 29; Ex. 9, Todorich Decl. ¶ 15; Ex. 8, Taylor Decl. ¶ 23; Ex. 7, Reed Decl. ¶¶ 7-8, 10; Ex. 44, Beasley Decl. ¶ 12; Ex. 48, Cerroni Decl. ¶ 7; Ex. 65, Scott Decl. ¶ 18; Ex. 1. 2010 Smuda Decl. ¶ 18.) |
| 76.    RSR Declarant Edward Taylor does not have authority to formulate management policies at Hershey, does not implement management policies, does not formulate operating practices for Hershey, does not sign binding contracts for Hershey, does not have the authority to waive Hershey's policies, and is not involved with any planning meetings regarding Hershey's short term and long term goals. | Taylor 9:1-19, 11:18-25, 12:23-24, 13:2-11, 16:5-14, Ex. N. | These are legal conclusions and not facts.<br><br>Furthermore, the term "formulate management policies" is overbroad, vague, ambiguous.<br><br>Moreover, Plaintiffs' mischaracterize Taylor's testimony, as they did not include his complete testimony on the matter where he states that he drives sales for the Hershey Company and makes individual decisions within his territory based on his needs. (Ex. 34, Opt-In Plaintiff Taylor Dep. at 10:19-25; 13:12-22.) |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | In any case, RSRs in fact actually are provided with significant discretion and independent judgment which allows and empowers them to create and execute on specific strategies they develop and take appropriate actions to increase sales by a particular store at a particular time. (Ex. 1, 2010 Smuda Decl. ¶¶ 17-18.)  Each RSR is trained to act as the "CEO of their territory," and to perform his or her job duties accordingly. (Ex. 4, Dow Decl. ¶ 15; Ex. 2, Brinkmann Decl. ¶ 7; Ex. 11, Villegas Decl. ¶ 10; Ex. 8, Taylor Decl. ¶ 20; Ex. 9, Todorich Decl. ¶ 23; Ex. 42, Altman Decl. ¶ 11; Ex. 43, Bain Decl. ¶ 12; Ex. 46, Brouwer Decl. ¶ 14; Ex. 48, Cerroni Decl. ¶ 7; Ex. 54, Hartley Decl. ¶ 11.)  RSRs work virtually independently, seeing their direct supervisors just once or twice a month.  (Ex. 10, Verdelli Decl. ¶ 10; Ex. 42, Altman Decl ¶ 9; Ex. 45, Bratton Decl. ¶ 12; Ex. 49, Curtis Decl. ¶ 18; Ex. 1, 2010 Smuda Decl. ¶ 23.)  This empowerment allows RSRs to manage their territories in an individualized manner that maximizes their sales and the sales of their customer clients, and accordingly RSRs enjoy significant freedom, flexibility and discretion in achieving Hershey's expectations.  (Ex. 4, Dow Decl. ¶¶ 16-17; Ex. 10, Verdelli Decl. ¶¶ 12, 15, 29; Ex. 9, Todorich Decl. ¶ 15; Ex. 8, Taylor Decl. ¶ 23; Ex. 7, |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | Reed Decl. ¶¶ 7-8, 10; Ex. 44, Beasley Decl. ¶ 12; Ex. 48, Cerroni Decl. ¶ 7; Ex. 65, Scott Decl. ¶ 18; Ex. 1. 2010 Smuda Decl. ¶ 18.) |
| 77.    RSR Declarant Todd Comley does not personally play any role in negotiations between Hershey sales headquarters and Wal-Mart and other grocers regarding the sales and merchandising plans, does not have the authority to formulate Hershey's management policies, does not have the authority to commit Hershey to matters of significant financial impact to Hershey, does not have the authority to waive Hershey's mandatory policies and procedures without getting prior approval, is not asked to provide expert advise to Hershey's sales management team at headquarters, does not help with Hershey's long or short term business planning objections, and has never represented Hershey in arbitrating any disputes or resolving any employee grievances. | Comley 75:7-76:4, 76:22-77:1, 78:1-79:15, Ex. S. | These are legal conclusions and not facts.<br><br>The phrases "sales and merchandising plan", "formulate management policies" and "matters of significant financial impact" are overbroad, vague, ambiguous.<br><br>In fact, various levels of the Hershey organization are responsible for developing various sales plans, including headquarters and the RSRs themselves.  (Ex. 28, Ibberson Dep. Vol. 2 at 200:16-205:8; Shein Decl. ¶¶ 4, 8; 2011 Smuda Decl. ¶¶ 10, 14.)  RSRs are expected to develop their own sales plans, (Ex. 33, Smuda Dep. at 272:25-273:3), as well as provide input into any sales plans that originate from CSEs, and also to implement, modify and expand such sales plans at the store level. (2011, Smuda Decl. ¶¶ 10, 14; Shein Decl. ¶¶ 4, 8).<br><br>The remaining alleged "facts" are legal conclusions and not facts.  In any case, RSRs in fact actually are provided with significant discretion and independent judgment which allows and empowers them to create and execute on specific strategies they |

58

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| | | develop and take appropriate actions to increase sales by a particular store at a particular time. (Ex. 1, 2010 Smuda Decl. ¶¶ 17-18.)  Each RSR is trained to act as the "CEO of their territory," and to perform his or her job duties accordingly.  (Ex. 4, Dow Decl. ¶ 15; Ex. 2, Brinkmann Decl. ¶ 7; Ex. 11, Villegas Decl. ¶ 10; Ex. 8, Taylor Decl. ¶ 20; Ex. 9, Todorich Decl. ¶ 23; Ex. 42, Altman Decl. ¶ 11; Ex. 43, Bain Decl. ¶ 12; Ex. 46, Brouwer Decl. ¶ 14; Ex. 48, Cerroni Decl. ¶ 7; Ex. 54, Hartley Decl. ¶ 11.)  RSRs work virtually independently, seeing their direct supervisors just once or twice a month.  (Ex. 10, Verdelli Decl. ¶ 10; Ex. 42, Altman Decl ¶ 9; Ex. 45, Bratton Decl. ¶ 12; Ex. 49, Curtis Decl. ¶ 18; Ex. 1, 2010 Smuda Decl. ¶ 23.)  This empowerment allows RSRs to manage their territories in an individualized manner that maximizes their sales and the sales of their customer clients, and accordingly RSRs enjoy significant freedom, flexibility and discretion in achieving Hershey's expectations.  (Ex. 4, Dow Decl. ¶¶ 16-17; Ex. 10, Verdelli Decl. ¶¶ 12, 15, 29; Ex. 9, Todorich Decl. ¶ 15; Ex. 8, Taylor Decl. ¶ 23; Ex. 7, Reed Decl. ¶¶ 7-8, 10; Ex. 44, Beasley Decl. ¶ 12; Ex. 48, Cerroni Decl. ¶ 7; Ex. 65, Scott Decl. ¶ 18; Ex. 1. 2010 Smuda Decl. ¶ 18.) |
| 78.    RSR Declarant Derek | Frederiksen 31:14- | These are legal conclusions and |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
| Frederkisen does not have a high level of discretion about what he can do within Wal-Marts, and that he has never managed anyone as an RSR, has not ever drafted or prepared management level policies or procedures.) | 16, 82:14-25, Ex. R. | not facts.<br><br>Additionally, the phrase "high level of discretion" is overbroad, vague and ambiguous.<br><br>In any case, RSRs in fact actually are provided with significant discretion and independent judgment which allows and empowers them to create and execute on specific strategies they develop and take appropriate actions to increase sales by a particular store at a particular time. (Ex. 1, 2010 Smuda Decl. ¶¶ 17-18.) Each RSR is trained to act as the "CEO of their territory," and to perform his or her job duties accordingly. (Ex. 4, Dow Decl. ¶ 15; Ex. 2, Brinkmann Decl. ¶ 7; Ex. 11, Villegas Decl. ¶ 10; Ex. 8, Taylor Decl. ¶ 20; Ex. 9, Todorich Decl. ¶ 23; Ex. 42, Altman Decl. ¶ 11; Ex. 43, Bain Decl. ¶ 12; Ex. 46, Brouwer Decl. ¶ 14; Ex. 48, Cerroni Decl. ¶ 7; Ex. 54, Hartley Decl. ¶ 11.) RSRs work virtually independently, seeing their direct supervisors just once or twice a month. (Ex. 10, Verdelli Decl. ¶ 10; Ex. 42, Altman Decl ¶ 9; Ex. 45, Bratton Decl. ¶ 12; Ex. 49, Curtis Decl. ¶ 18; Ex. 1, 2010 Smuda Decl. ¶ 23.) This empowerment allows RSRs to manage their territories in an individualized manner that maximizes their sales and the sales of their customer clients, and accordingly RSRs enjoy |

| PLAINTIFFS' UNDISPUTED FACT | PLAINTIFFS' SUPPORTING EVIDENCE | HERSHEY'S OPPOSITION |
|---|---|---|
|  |  | significant freedom, flexibility and discretion in achieving Hershey's expectations.  (Ex. 4, Dow Decl. ¶¶ 16-17; Ex. 10, Verdelli Decl. ¶¶ 12, 15, 29; Ex. 9, Todorich Decl. ¶ 15; Ex. 8, Taylor Decl. ¶ 23; Ex. 7, Reed Decl. ¶¶ 7-8, 10; Ex. 44, Beasley Decl. ¶ 12; Ex. 48, Cerroni Decl. ¶ 7; Ex. 65, Scott Decl. ¶ 18; Ex. 1. 2010 Smuda Decl. ¶ 18.) |

Dated:  January 26, 2011.

O'MELVENY & MYERS LLP
FRAMROZE M. VIRJEE
CHRIS A. HOLLINGER
MICHAEL W. GARRISON, JR.
ADAM P. KOHSWEENEY


By:   /s/ Framroze M. Virjee
          Framroze M. Virjee
Attorneys for Defendant
THE HERSHEY COMPANY