1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11   JULIE CAMPANELLI, et al.,    )
                                  )
12             Plaintiff(s),      )     No. C 08-1862 BZ
                                  )
13        v.                      )     **ORDER GRANTING PLAINTIFFS'**
                                  )     **MOTION FOR PARTIAL SUMMARY**
14   THE HERSHEY COMPANY,         )     **JUDGMENT**
                                  )
15             Defendant(s).      )
                                  )
16   _____)

17        Plaintiffs have moved for partial summary judgment that

18   the outside sales and administrative exemptions do not apply

19   to their job duties.[1]  Docket No. 315.  Having considered the

20   papers submitted by the parties and the arguments of counsel,

21   the Court **GRANTS** plaintiffs' motion for the reasons explained

22   below.

23   **I.     BACKGROUND**[2]

24        In 2003, defendant The Hershey Company restructured its

25   _____

26        [1]    The parties have consented to the Court's
     jurisdiction for all proceedings, including entry of final
27   judgment under 28 U.S.C. § 636(c).

28        [2]    In this order, the Court will specifically note when
     material facts are disputed by the parties.

                                   1

1   domestic sales force to adapt to a changing retail

2   environment.  As part of the restructuring, defendant created

3   an entry-level Retail Sales Representative (RSR) position.

4   Defendant classified this position as exempt from overtime

5   under both federal and California law, and never paid hourly

6   compensation to RSRs for any overtime they worked.[3]

7       Under the new retail strategy, RSRs are part of teams

8   that help defendant sell its products directly to retail

9   outlets of various sizes, ranging from Walmarts to grocery

10  chains to mom-and-pop stores.  Each RSR services retail

11  outlets in a designated sales territory.  Last year, defendant

12  employed about 500 RSRs nationwide with approximately 37

13  working in California.

14      The parties dispute the scope of the RSRs' job duties.

15  From defendant's perspective, the RSRs are vital to the

16  company's sales.  Their job duties include selling defendant's

17  products directly to retail stores, meeting and consulting

18  with key decision makers at retail stores to increase sales,

19  and occasionally assisting retail stores with merchandising[4]

20  _____

21      [3]  RSRs are not eligible to receive commissions on any
    sales.  In addition to their annual salary, RSRs may receive a
22  bonus based on their performance as well as their territory's
    performance.  The target for the bonus is 13% of the RSR's
23  annual salary.  Most plaintiffs have annual salaries in the
    $40,000 to $50,000 range.  While both parties chose not to
24  submit detailed evidence regarding the RSRs' compensation
    packages, one declaration from defendant states that one
25  plaintiff's annual base salary is $48,564.62, and that she
    received a bonus of $1,367.39 for the first half of 2009.  This
26  first half payment amounts to 2.8% of her annual salary.  See
    Slotznick Declaration, Ex. A.

27
        [4]  The term "merchandising" is susceptible to different
28  meanings.  This Court's use of the term refers to activities
    such as stocking shelves, sorting as well as tagging products,

                                    2

1  when it is incidental to the sales.  Plaintiffs disagree with

2  this description of the RSRs' duties.  They contend defendant

3  sells most of its products in bulk at the corporate level

4  through other upper-level company employees, such as Customer

5  Service Executives (CSEs).  Rather than selling, the RSRs are

6  primarily responsible for merchandising the previously sold

7  products at the retail stores in their district.

8      In 2008, three former RSRs brought this wage and hour

9  action against defendant.  They alleged defendant

10 misclassified them as exempt employees, denying them

11 compensation for the overtime hours they had worked.

12 Defendant denied these allegations, asserting that plaintiffs'

13 employment position satisfies the exemptions from overtime for

14 outside salesmen and administrative employees.  In 2010 —

15 after 19 additional RSRs had joined the suit — this Court,

16 over defendant's objection, allowed the case to proceed as a

17 collective action for plaintiffs' federal and pendant

18 California claims.[5]  Docket No. 157.  Following notice,[6] 99

19 RSRs joined the collective action in addition to the 21

20 remaining named plaintiffs.[7]

21  ————————————

22 and delivering and setting up product displays.

23      [5]  Although this Court granted plaintiffs' request, both
   parties were informed that the ultimate decision on whether to
24 proceed as a collective action would turn on whether this
   method would be the superior way of resolving the controversy.
25 See Docket No. 157.

26      [6]  At the hearing, the parties estimated that about 800
   former and current RSRs were sent notice about this lawsuit.
27

28      [7]  This ruling only applies to the named plaintiffs and
   the RSRs that joined this collective action by certifying that
   they believed they were not outside salesmen or administrative

1    Because plaintiffs filed their complaint almost three

2    years ago, both parties have had ample time to conduct

3    discovery on the issues presented in the case.  The record on

4    this motion is almost two feet thick, and includes

5    declarations from 37 plaintiffs as well as RSRs who did not

6    opt-in.[8]  The parties also took the depositions of 14

7    plaintiffs.  Even though the Court is troubled that both

8    parties chose not to submit material portions of the

9    plaintiffs' deposition testimony regarding their actual day-

10   to-day job duties, the totality of the evidence before the

11   Court is voluminous.  There is consequently a sufficient

12   record for the Court to determine if a triable issue exists

13   regarding the outside sales and administrative exemptions.

14   **II.    LEGAL STANDARD FOR SUMMARY JUDGMENT**

15       Summary judgment is appropriate only when there is no

16

17   _____

18   employees.  These named plaintiffs and opt-in plaintiffs are
     collectively referred to as plaintiffs, although the Court at
     times uses "RSRs" when generally discussing the employment
19   position at issue.  RSRs who chose not to join this collective
     action are not before the Court and the Court expresses no view
20   on what impact this Order may have on them.

21       [8]    Many of the declarations defendant submitted were
     from RSRs who did not opt-in as a plaintiff.  While there is
22   some authority for admitting such declarations, see Johnson v.
     Big Lots Stores, Inc., 2008 WL 2191305 (E.D. La. 2008), in this
23   case declarations from RSRs who, after receiving notice did not
     certify that they believed that their duties qualified them to
24   be outside salesmen or administrative employees, were not very
     helpful in determining the rights of these plaintiffs.  In
25   addition, as plaintiffs have pointed out, these declarations
     are conclusory and were often taken early in the litigation at
26   a time when the precise issues before the Court were not fully
     defined.  Nevertheless, plaintiffs did not move to strike these
27   declarations or object to this Court considering them.  The
     Court did consider them especially in trying to understand the
28   different ways in which the plaintiffs and those RSRs who did
     not opt-in perceived their job duties.

4

genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56. The moving party bears both the initial burden of production as well as the ultimate burden of persuasion to demonstrate that no genuine dispute of material fact remains.  <u>Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the moving party meets its initial burden, the nonmoving party is required "to go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986) (internal quotations and citations omitted).  If the nonmoving party's evidence is not significantly probative, summary judgment may be granted.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986).  Courts, however, are required to view the evidence in the light most favorable to the nonmoving party.  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  If a reasonable jury could return a verdict in favor of the nonmoving party, summary judgment is inappropriate.  <u>Liberty Lobby</u>, 477 U.S. at 248.

     Here, plaintiffs seek summary adjudication on defendant's affirmative defenses asserting the outside sales and administrative exemptions.  Defendant does not argue that plaintiffs have not met their initial burden of production. Rather, defendant's position is that it has submitted probative evidence that raises a genuine dispute as to whether

1   the plaintiffs' job duties fall under the exemptions.  Having

2   reviewed the evidence most favorably to defendant, defendant

3   fails to raise a triable issue because the undisputed facts,

4   discussed in detail below, demonstrate that plaintiffs are not

5   outside salesmen or administrative employees.

6   **III.   THE FLSA**

7        In 1938, Congress enacted the Federal Labor Standards Act

8   (FLSA) to eliminate "labor conditions detrimental to the

9   maintenance of the minimum standard of living necessary for

10  health, efficiency, and general well-being of workers."  29

11  U.S.C. § 202(a).  As part of this effort, the FLSA requires

12  employers to pay overtime compensation to employees who work

13  more than 40 hours per week.  See 29 U.S.C. § 207(a)(1).

14  Certain employees are exempt from this provision, including

15  outside salesmen and administrative employees.  See 29 U.S.C.

16  § 213(a)(1).  These exemptions are "narrowly construed against

17  the employers seeking to assert them" and are limited to those

18  employees "plainly and unmistakably" within the exemptions'

19  "terms and spirit."  Bothell v. Phase Metrics, Inc., 299 F.3d

20  1120, 1124-25 (9th Cir. 2002) (internal citations and

21  quotations omitted).  The employer bears the burden of showing

22  that an exemption applies.[9]  Id.

23       The scope of the FLSA's exemptions is not set forth in

24  the Act, but in the regulations and interpretations of the

25  Department of Labor (DOL).  Auer v. Robbins, 519 U.S. 452, 456

26  (1997) ("The FLSA grants the [DOL] broad authority to

27  _____

28       [9]   As the moving party on summary judgment, plaintiffs
    still have the ultimate burden of persuasion that there is no
    genuine issue of material fact.  See Nissan, 210 F.3d at 1102.

1  'defin[e] and delimi[t]' the scope of the exemption for

2  executive, administrative, and professional employees" (citing

3  29 U.S.C. § 213(a)(1))).  These regulations and

4  interpretations are particularly important to this matter

5  because no other court has evaluated the classification status

6  of employees that have the specific characteristics and job

7  duties of RSRs.  DOL's regulations are given controlling

8  weight by courts unless found to be arbitrary, capricious, or

9  contrary to the statute, something that defendant does not

10 argue in its opposition.  See Chevron U.S.A., Inc. v. Natural

11 Resources Defense Council, Inc., 467 U.S. 837, 843-844 (1984).

12 While DOL's interpretations of its regulations do not have the

13 force and effect of law, courts look to them as persuasive

14 authority.  See Christensen v. Harris County, 529 U.S. 576,

15 587 (2000); Skidmore v. Swift & Co., 323 U.S. 134, 140

16 (1944).[10]

17     During oral argument, defendant suggested that the Ninth

18 Circuit's recent decision in Christopher v. SmithKline Beecham

19 Corporation required that this Court give less deference to

20 the DOL regulations.  See 2011 WL 489708 (9th Cir. 2011).

21 Defendant is incorrect for a number of reasons.  First, much

22 _____

23 [10]     The parties do not dispute that under California law
the outside sales and administrative exemptions are similar to
those under the FLSA.  See Ramirez v. Yosemite Water Co., Inc.,

24 20 Cal.4th 785, 795 (citing Cal. Labor Code § 1171 and
Industrial Welfare Commission, Wage Order No. 7-80, 2(I) for

25 the definition of outside salesmen); 8 Cal. Code Regs. §
11040(1)(A)(2)(f); Heffelfinger v. Electronic Data Systems

26 Corp., 580 F.Supp.2d 933, 950 (C.D. Cal. 2008) ("California's
exemption has been construed in the same manner as the

27 administrative exemption under the [FLSA]").  Accordingly, the
Court finds that California plaintiffs are not outside salesmen

28 or administrative employees under both federal and California
law.

7

1    of the Ninth Circuit's analysis in <u>Christopher</u> seems to focus

2    on the degree of deference to be accorded to the

3    interpretation of the statute and regulations made by the DOL

4    in its amicus brief.  <u>See, e.g.</u>, 2011 WL 489708 at *10.

5    Second, unlike the pharmaceutical industry to which the

6    regulations governing sales did not neatly apply because of

7    the legal prohibitions against sales to doctors, here certain

8    provisions of the DOL regulations, such as 29 C.F.R. §

9    541.503, squarely apply to defendant's RSRs.  Plaintiffs'

10   complaint that they do not "sell" to defendant's customers,

11   does not "ignore the structure and realities" of a heavily

12   regulated industry.  2011 WL 489708 at *11.  Nor does the

13   Ninth Circuit's concern that the DOL had acquiesced in the

14   drug industry's practices for over 70 years apply here; the

15   RSR position is less than 10 years old.  <u>See</u> 2011 WL 489708 at

16   *15.

17              **A.   Outside Sales Exemption**

18        Defendant first asserts that RSRs are outside salesmen.

19   For this exemption to apply to plaintiffs, their primary duty

20   must be "making sales"[11] or "obtaining orders or contracts for

21   services."  29 C.F.R. § 541.500(a)(1).[12]  Primary duty is the

22   "principal, main, major or most important duty" that employees

23   perform.  29 C.F.R. § 541.700.  While time alone is not the

24   _____

25        [11]   Sales include "any sale, exchange, contract to sell,
     consignment for sale, shipment for sale, or other disposition."
26   29 U.S.C. § 203(k).

27        [12]   The parties agree that plaintiffs meet the second
     requirement for outside salesmen because they regularly perform
28   their primary duties outside of defendant's place of business.
     29 C.F.R. § 541.500(a)(2).

1   sole test for primary duty, most employees meet this

2   requirement if they spend more than 50 percent of their time

3   performing exempt work.  Id.

4       Defendant initially argues that the exemption applies

5   because certain RSRs directly sell products to some retailers

6   without the involvement of a CSE.  It is undisputed that some

7   plaintiffs have made these types of sales.  But defendant's

8   argument misses the point.  The outside sales exemption only

9   applies to plaintiffs if direct selling is their primary duty

10  — not just something they do occasionally or even regularly

11  but on a minimal basis.  Although 14 plaintiffs have been

12  deposed, defendant has not pointed to a single plaintiff who

13  has testified that her primary duty was making direct sales.

14  Instead, defendant's evidence is limited to conclusory

15  statements from several RSRs that they engage in direct sales.

16  See, e.g., KohSweeney Declaration, Ex. 9 at ¶ 7 (one RSR

17  explains direct selling but does not quantify how frequently

18  it occurs or how much time is spent on it: "In direct sales, I

19  convince my stores to purchase additional Hershey products

20  from me").  Or defendant submits evidence that RSRs have at

21  times made direct sales.  See, e.g., KohSweeney Declaration,

22  Ex. 3 at ¶ 15 (RSR, who has worked for defendant for about ten

23  years, cites two examples of direct sales he made).  Defendant

24  has therefore failed to submit evidence which raises a genuine

25  dispute that direct selling constitutes the plaintiffs'

26  primary duties.

27      Defendant next contends that RSRs are outside salesmen

28  because they engage in "incremental selling" and "sell

through" of Hershey products.  Defendant defines these

functions, respectively, as "encourag[ing] each customer-store

to buy additional product above and beyond any order placed

through the CSE" and increasing "the amount of Hershey

product[s] sold by a customer-store to its consumers."

Opposition at 5.  Defendant asserts that this is the primary

aspect of the RSR's job.  Id.  But whether the plaintiffs are

exempt depends on "actual day-to-day job duties performed by

[them] rather than general descriptions or characterizations

of job duties."  Reyes v. Texas EZPAWN, L.P., 459 F.Supp.2d

546, 553-54 (S.D. Tex. 2006) (citing 29 C.F.R. § 541.2).

 According to defendant, RSRs who obtain commitments from

retailers to replenish Hershey products ("incremental

selling") and help retailers market products to increase sales

to consumers ("sell through") are "making sales."  Defendant

contends that it is immaterial when a sale is actually booked,

whether the plaintiffs are credited with the sale, or if the

plaintiffs receive a commission for the sale.  While the FLSA

and its regulations do not specifically require these factors

to be present for the outside sales exemption to apply, their

absence is not the reason for deciding that plaintiffs are

not outside salesmen.[13]  Rather, the Court concludes that

_____

[13]    That does not mean these factors are not important.
One would think that if employees' primary duties were selling
products, their employers would keep track of their sales if
the nature of the business permitted it.  And courts have
remarked on the significant role that sales commissions play
for outside salesmen.  See Jewel Tea Co. v. Williams, 118 F.2d
202, 207-08 (10th Cir. 1941); Christopher, 2011 WL 489708 at
*16 (9th Cir. 2011).  In any event, the first inquiry under the
outside sales exemption is to determine whether the employee's
primary duty is to actually make sales.  See Ruggeri v.

1    defendant did not submit evidence that plaintiffs' primary

2    duties constitute selling under 29 C.F.R. § 541.500(a)(1),

3    particularly because the majority of the time plaintiffs are

4    not the employees who actually sell the product.

5        The DOL's regulations point out the important distinction

6    between individual sales and company sales:

> (a) Promotion work is one type of activity often
> performed by persons who make sales, which may or
> may not be exempt outside sales work, depending upon
> the circumstances under which it is performed.
> Promotional work that is actually performed
> incidental to and in conjunction with an *employee's*
> *own outside sales or solicitations is exempt work.*
> On the other hand, promotional work that is
> incidental to sales made, or to be made, *by someone*
> *else is not exempt* outside sales work. . .
>
> (b) A manufacturer's representative, for example,
> may perform various types of promotional activities
> such as putting up displays and posters, removing
> damaged or spoiled stock from the merchant's shelves
> or rearranging the merchandise. Such an employee can
> be considered an exempt outside sales employee if
> the employee's primary duty is making sales or
> contracts. Promotion activities directed toward
> consummation of the *employee's own sales are exempt.*
> Promotional activities designed to stimulate sales
> that will be made *by someone else are not exempt*
> outside sales work.

20   29 C.F.R. § 541.503 (emphasis added).  Accordingly, the

21   requirement for sales is not met when employees' efforts are

22   directed "toward stimulating the sales of [their] company

23   generally rather than the consummation of [their] own specific

24   sales."  Dep't of Labor, Wage & Hour Div., <u>Defining and</u>

25   _____

26   <u>Boehringer Ingelheim Pharm., Inc.</u>, 585 F.Supp.2d 254, 270-71
     (D.Conn. 2008).  Because plaintiffs do not primarily make
27   sales, this Court's ruling does not turn on these factors,
     including the "sales" factors from <u>Nielsen v. DeVry, Inc.</u>, 302
28   F.Supp.2d 747 (W.D. Mich. 2003), that defendant argues applies
     to RSRs.  <u>See</u> Opposition at 15.

11

1   <u>Delimiting the Exemptions for Executive, Administrative,</u>

2   <u>Professional, Outside Sales and Computer Employees</u>, 69

3   Fed.Reg. 22122, 22162 (Apr. 23, 2004).

4        Here, defendant has not produced evidence that

5   plaintiffs' primary duties are "making sales" as contemplated

6   by the regulations.  Defendant concedes that its upper-level

7   salespeople, such as CSEs, negotiate sale agreements —

8   without any involvement from the RSRs — for the company's

9   products with customers' corporate offices (i.e., Walmart,

10  Safeway, Albertson's, etc.).  Shein Declaration at ¶ 5; Smuda

11  Declaration at ¶ 10.  That is when the sale is recorded, and

12  Hershey products are later shipped to the retailers.  <u>See</u>

13  Malloy Declaration, Ex. L.  It is undisputed that plaintiffs

14  then help stimulate sales by encouraging retailers to

15  replenish their supply and ensuring that sold products are

16  properly marketed at the retail stores.  Smuda Declaration at

17  ¶¶ 10-12.  While this facilitates the movement of Hershey

18  products from warehouses and stockrooms to the shelves of

19  retail stores and into the hands of consumers, this does not

20  constitute an additional "sale."  The work done by plaintiffs

21  may increase defendant's sales, but it does not affect the

22  plaintiffs' own sales.  Since plaintiffs are not the

23  individuals making the actual sale as the exemption requires,

24  this type of "incremental selling" and "sell through," even if

25  they were the plaintiffs' primary duties, does not amount to

26  ///

27  ///

28  ///

1   exempt work.[14]

2       The disconnect between what defendant considers to be a

3   sale and what the regulations consider to be a sale is

4   illustrated by one of the examples that defendant cites,

5   exhibit B to the declaration of Steve Wilson.  Wilson, a

6   district sales manager, supervises RSRs including plaintiff

7   Michael Bain.  Exhibit B is a communication from Bain to

8   Wilson explaining that as Halloween was approaching one of his

9   stores "did not have a candy display. . . all product went to

10  the shelf."  Bain therefore convinced the store manager to

11  build a display which "meant that [the store] would be sent a

12  lot of this product."  This exhibit supports plaintiffs'

13  characterization of what they do - marketing products that

14  have already been or will be sold by someone else so that

15  products move through the store.  This may permit someone else

16  to sell more Hershey products but it does not constitute a

17  direct sale as that term is defined in the regulations.

18      Defendant points out that RSRs sometimes persuade

19  ─────────────────

20      [14]    Because other employees have already made the sale,
    the plaintiffs are similar to the following example of
    nonexempt workers:

21

22          Another example is a company representative who
            visits chain stores, arranges the merchandise on
            shelves, replenishes stock by replacing old with new

23          merchandise, sets up displays and consults with the
            store manager when inventory runs low, but does not

24          obtain a commitment for additional purchases. The
            arrangement of merchandise on the shelves or the

25          replenishing of stock is not exempt work unless it is
            incidental to and *in conjunction with the employee's*

26          *own outside sales*. Because the employee in this
            instance does not consummate the sale nor direct

27          efforts toward the consummation of a sale, the work
            is not exempt outside sales work.

28
    29 C.F.R. § 541.503(c) (emphasis added).

retailers to order additional products from allotments at
warehouses that have not previously been sold by CSEs.   Smuda
Declaration at ¶ 18.   Defendant also repeatedly references a
hypothetical sales scenario where a CSE intentionally sells
less to a retailer "for the purpose of creating additional RSR
selling opportunities at the store level."   See, e.g., Shein
Declaration at ¶ 6.   According to defendant, under both of
these methods the RSRs' selling efforts correspond directly
with their own sales.   But these arguments from defendant are
once again misplaced.   While these types of sales may happen
at times, the critical issue is whether plaintiffs sell in
this manner for the majority of the time.   Out of all the
declarations and depositions submitted by defendant, both from
RSRs and defendant's corporate witnesses, defendant has not
pointed to any evidence that this type of selling occurs
frequently, let alone that it constitutes the primary aspect
of plaintiffs' job duties.

     The declaration of Thomas Smuda is telling.   He is the
Vice President of North American Retail and a person in a
position to be able to testify that plaintiffs' spend a lot of
their time selling products that have not yet been sold by
CSEs.   But he does not do this.   Instead, he first
distinguishes "direct selling" from "incremental selling."
KohSweeney Declaration, Ex. 1 at ¶ 19-20.   He explains that
RSRs engage in "direct selling" when there is no CSE assigned
to that retailer.   Id. at ¶ 19.   Smuda does not mention how
many RSRs and retailers fit into this category and how much of
the RSRs' duties are devoted to this task.   Id.   He then

explains that when a retailer does have an assigned CSE, RSRs engage in "incremental selling," including "convincing the customer-store to fully participate in upcoming promotions" and "convincing the customer-store to allocate more space to Hershey product[s]." Id. at ¶ 20. Smuda does not testify that RSRs' primary "incremental selling" duties include making sales besides those already made by CSEs. Id. In a supplemental declaration, Smuda explains that on some occasions RSRs obtain orders for products in warehouses that have not yet been sold by CSEs, and that defendant's sales fell when RSRs were temporarily removed from retailers. Smuda Declaration at ¶¶ 13-18. Again, he does not testify that the RSRs' primary duties involve making their own sales. The best he can muster is to say "it is not accurate to say that RSRs have no role in sales or merchandising plans that originate at Hershey headquarters." Id. at ¶ 14. Not having no role in sales is a far cry from making sales as a primary duty. Thus, there remains no material evidence that plaintiffs are primarily engaged in making sales rather than promoting products that have already been sold by CSEs. Without such evidence, there is no genuine dispute that the outside sales exemption does not apply to plaintiffs.

The policy reasons behind the enactment of the FLSA support the finding that plaintiffs' are not primarily engaged in selling. The Tenth Circuit explained:

> The reasons for excluding an outside salesman are fairly apparent. Such salesman [sic], to a great extent, work[] individually. There are no restrictions respecting the time he shall work and he can earn as much or as little, within the range

of his ability, as his ambition dictates.  In lieu
of overtime, he ordinarily receives commissions as
extra compensation.  He works away from his
employer's place of business, is not subject to the
personal supervision of his employer, and his
employer has no way of knowing the number of hours
he works per day. To apply hourly standards
primarily devised for an employee on a fixed hourly
wage is incompatible with the individual character
of the work of an outside salesman.

Jewel Tea Co. v. Williams, 118 F.2d 202, 207-08 (10th Cir.
1941); see also Christopher, 2011 WL 489708 at *13.  Unlike
the salesmen Congress sought to exempt, plaintiffs do not
receive commissions.  See supra footnote 4.  They only earn an
entry-level salary and a potential targeted bonus of 13% of
their salary, which is also not based on their individual
sales.  Id.  Consequently, plaintiffs are not rewarded for all
the overtime they are required to work.  Nor do they earn "as
much or as little" as "[their] ambition dictates," a common
aspect of the typical salesmen.  See Jewel Tea, 118 F.2d at
207-08.

    Nor can Hershey argue that plaintiffs are not amenable to
supervision and having their hours monitored.  While working
and performing their duties, plaintiffs are required to carry
personal digital assistants, called REX devices, that are
issued by defendant.  See Harsh Declaration.  Defendant
expects plaintiffs to use the REX to record the time they
spend at each store.  See id. at Ex. A.  The REX therefore
provides defendant with the ability to keep track of the hours
worked by plaintiffs.  See also id. at ¶ 6 ("the REX has a
feature which acts as a digital timeclock or timesheet for
users to track all hours worked, but this feature has never

been activitated for RSRs since the rollout of REX in
2004").[15]  The hours worked by plaintiffs are also not
flexible.  Defendant expects plaintiffs to visit stores for a
certain number of hours per day and provides them with
guidelines for how much time to spend at each type of store.
See Malloy Declaration, Ex. H at 36; KohSweeney Declaration,
Ex. 2 at ¶¶ 20-22 (one RSR testified that defendant expects
him to (1) start working by 7:00 a.m.; (2) follow defendant's
recommendations of how much time to spend at each store; and
(3) make about 7.5 hours of sales calls each day).  Although
plaintiffs may vary their time at each store to some degree,
this is not the same as there being "no restrictions
respecting the time [they] shall work."  See Jewel Tea, 118
F.2d at 207-08.  Thus, plaintiffs are distinguishable from the
outside salesmen that the FLSA intended to be exempt
employees.

    The Christopher decision also does not help Hershey.  In
Christopher, the Ninth Circuit disagreed with the Second
Circuit and other courts in holding that pharmaceutical sales
representatives (PSRs) are outside salesmen, even though they
are not permitted by law to make sales directly to consumers
and instead focus their efforts on obtaining commitments from
physicians to prescribe their company's medications.  2011 WL
489708.  But the fact-specific rationale of Christopher does
not apply to plaintiffs, who are not prohibited from selling

---

        [15]  Defendant already monitors the hours worked by
nonexempt Retail Service Merchandisers (RSMs), who perform
similar functions as RSRs but on a part-time basis.  See Malloy
Declaration, Ex. P at 43.  This also shows that defendant is
capable of overseeing the hours worked by plaintiffs.

Hershey products directly to stores.[16]  See id. at *12 ("In
most industries, there are no firm legal barriers that
prohibit the actual physical exchange of the goods offered for
sale.  Because such barriers do exist in this industry, the
fact that commitments are non-binding is irrelevant. . .").[17]

Christopher, like this Court, found the Jewel Tea factors
instructive as well.  See id. at *13.  Although defendant is
correct that plaintiffs' job duties have some similarities to
those of PSRs and the plaintiffs in Jewel Tea (i.e., working
in assigned territories, not making deliveries, completing
clerical duties at the end of the day, etc.),  two important
Jewel Tea factors that Christopher turned on are not present
in this case.  These factors were cited in Christopher at the
conclusion of the opinion:

> PSRs are driven by their own ambition and rewarded
> with commissions when their efforts generate new
> sales.  They receive their commissions in lieu of
> overtime and enjoy a largely autonomous work-life
> outside of an office.

2011 WL 489708 at *16.  As explained earlier, plaintiffs'
overtime work is not compensated by any commissions they
///
///
///
///

_____

[16]   Christopher recognized that an employee's
classification status requires a "multi-factor review of an
employee's functions."  2011 WL 489708 at *15.

[17]   In this case, plaintiffs do have the capability to
sell defendant's products directly to retailers.  Instead of
doing this, they chiefly promote products other Hershey
employees have sold.

18

receive.[18]  And while plaintiffs work outside of their office, they are more restricted than PSRs.

For the foregoing reasons — and consistent with the rule that exemptions are limited to those employees "plainly and unmistakably" within the exemptions' "terms and spirit" — the outside sales exemption does not apply to plaintiffs.  See Christopher, 2011 WL 489708 at *7.  Accordingly, plaintiffs' motion for partial summary judgment is granted on the outside sales exemption.

## B.   Administrative Exemption

Plaintiffs have also met their ultimate burden of persuasion that there is no genuine dispute regarding the administrative exemption applying to them.  To be considered administrative employees, plaintiffs' primary duties must include: (1) nonmanual work "directly related to the management or general business operations of the employer or the employer's customers," and (2) the exercise of "discretion and independent judgment" with respect to "matters of significance."  29 C.F.R. 541.200(a).[19]  This is a two-part inquiry that examines the type of work performed by

[18]   It is important to note that the PSRs in Christopher made around $75,000 per year, with more than 25% of their salary coming from incentives.  2011 WL 489708 at *3, footnote 4 (highlighting that one plaintiff's incentives over three years consisted of 41%, 32%, and 37% of his gross salary).  Defendant, on the other hand, only pays plaintiffs a bonus targeted at 13% of their salary.  See supra footnote 4.  The only example in the record of a bonus payment shows that a plaintiff received 2.8% of her salary during the first half of the 2009 calendar year.  Id.

[19]   The parties agree that plaintiffs meet the first requirement for administrative employees because they earn more than $455 per week.  29 C.F.R. § 541.200(a)(1).

1    employees as well as the level or nature of that work.

2    Defining and Delimiting the Exemptions, supra at 22144.

3         The parties dispute the amount of nonmanual work

4    performed by plaintiffs and the discretion they exercise.

5    Plaintiffs present evidence that they are required to perform

6    substantial physical tasks as part of their daily

7    merchandising efforts, such as building promotional displays

8    and carrying as well as opening boxes to restock Hershey

9    products.  Defendant contends that this is only true for a

10   minority of plaintiffs; the majority are primarily engaged in

11   nonmanual work because they ensure that the retailers'

12   employees perform the necessary merchandising duties.

13   Likewise, the parties dispute whether the REX is used for

14   supervision and whether certain "RSR guidelines" that

15   defendant developed are meant to be followed, as plaintiffs

16   contend, or are meant to be deviated from, as defendant

17   contends.  The contradictory testimony on these issues

18   results in genuine disputes over the amount of nonmanual work

19   performed by plaintiffs and the amount of supervision they

20   receive.  But these disputes are immaterial to a

21   determination whether the administrative exemption applies

22   since defendants have not presented evidence to raise a

23   triable issue under the last part of the exemption's second

24   requirement.

25        This second requirement is not satisfied because

26   defendants do not present evidence that plaintiffs exercise

27   discretion with respect to "matters of significance."  The

28   regulations explain that "matters of significance" refers to

the level of importance of the work at issue or the

consequence of that work.  29 C.F.R. § 541.202(a); see also

Defining and Delimiting the Exemptions, supra at 22143 ("the

work performed by an exempt administrative employee must be

significant, substantial, important or of consequence").

This is an element that is critical for the exemption to

apply.  See Defining and Delimiting the Exemptions, supra at

22144; see also Christopher, 2011 WL 489708 at *7 ("Because

exemptions are 'narrowly construed' against the employer, to

meet its burden, an employer must establish that the employee

satisfies each of the criteria set forth in the [DOL's]

regulations").

        Under the undisputed facts, plaintiffs' job duties do

not rise to the level of importance necessary for them to be

exempt employees.  A list of non-exclusive factors to

consider when evaluating the administrative exemption is

provided by the DOL:

>        (1)  whether the employee has authority to
>             formulate, affect, interpret, or implement
>             management policies or operating practices;
>        (2)  whether the employee carries out major assignments
>             in conducting the operations of the business;
>        (3)  whether the employee performs work that affects
>             business operations to a substantial degree, even
>             if the employee's assignments are related to
>             operation of a particular segment of the business;
>        (4)  whether the employee has authority to commit the
>             employer in matters that have significant financial
>             impact;
>        (5)  whether the employee has authority to waive or
>             deviate from established policies and procedures
>             without prior approval;
>        (6)  whether the employee has authority to negotiate and
>             bind the company on significant matters;
>        (7)  whether the employee provides consultation or expert
>             advice to management;
>        (8)  whether the employee is involved in planning long —
>             or short — term business objectives;
>        (9)  whether the employee investigates and resolves

matters of significance on behalf of management;
and;
(10)whether the employee represents the company in
handling complaints, arbitrating disputes or
resolving grievances.

29 C.F.R. § 541.202(a).  Plaintiffs have presented deposition

testimony that many of these factors do not apply to their

job duties as RSRs.  Plaintiffs have testified that (1) they

have no authority to negotiate or commit defendant to matters

that have a significant financial impact (see, e.g., Malloy

Declaration, Ex. T at 42; Ex. N at 11) (2) they can not

deviate from defendant's established policies and procedures

without getting permission from their supervisors (see, e.g.,

Malloy Declaration, Ex. T at 42; Ex. N at 11); and (3) they

do not carry out major assignments in conducting the

operations of the business (see, e.g., Malloy Declaration,

Ex. T at 41; Ex. S at 77).  Nor do they design advertisements

or decide when to reduce prices to stimulate sales, factors

deemed important by both the Ninth Circuit in Christopher,

2011 WL 489708 at *14, and the Second Circuit in Reiseck v.

Universal Communications of Miami, Inc., 591 F.3d 101, 107

(2d Cir. 2010).  In fact, it is undisputed that plaintiffs

lack the capacity to change prices or negotiate discounts.

See Joint Statement of Undisputed Facts ¶¶ 5-6.

Defendant's opposition did not specifically address any

of these factors.  More importantly, defendant has not

pointed to any evidence that demonstrates that plaintiffs'

primary duties as RSRs are related to matters of

significance.  As an example of the discretion that RSRs

exercise, defendant submits evidence that RSRs have

22

1    flexibility regarding the order in which they visit their

2    retailers, the amount of time they spend at their retailers,

3    and the method and manner of their presentations to the

4    retailers.  Opposition at 19-20.  Even accepting these as

5    true, the Court finds that deciding the order of stores to

6    visit, how much time to spend in a store, or which of the

7    sales tools defendant provides to use are not matters of

8    sufficient significance to trigger the administrative

9    exemption.  See Clark v. J.M. Benson Co., Inc., 789 F.2d 282,

10   287-88 (4th Cir. 1986)("The regulations recognize that almost

11   every employee exercises some discretion, as for example in

12   selecting the order in which to perform different duties.  To

13   demonstrate administrative status, however, the discretion

14   and independent judgment exercised must be real and

15   substantial, that is, they must be exercised with respect to

16   matters of consequence") (internal quotations and citations

17   omitted).  Defendant does not point to any other primary

18   duties performed by plaintiffs that would rise to the level

19   of importance required by the exemption.[20]

20        Based on the above, there is no genuine dispute that

21   _____

22        [20]    At the hearing, defendant contended that plaintiffs
     are administrative employees because they are similar to the
     PSRs who have been considered exempt employees by other courts.

23   See Schafer-LaRose v. Eli Lilly and Co., 663 F.Supp.2d 674, 693
     (S.D. Ind. 2009) (explaining that PSRs exercise discretion on

24   matters of significance because generating prescriptions is key
     to the overall success of defendant's business).  Defendant's

25   argument fails for the same reasons that Christopher does not
     govern this case: there is a fundamental difference between

26   PSRs and RSRs, particularly the importance of their job duties.
     PSRs are a vital component in persuading physicians to

27   prescribe medications, the crux of the pharmaceutical company's
     business.  Plaintiffs, on the other hand, are entry-level

28   employees that mainly assist retailers in selling more products
     that have already been purchased.

                                23

1   plaintiffs do not work on matters of significance.

2   Accordingly, they do not meet the requirements for

3   administrative employees.

4          **C.   Combination Exemption**

5          In its opposition, defendant argues, for the first time,[21]

6   that plaintiffs are exempt employees because they satisfy the

7   requirements for the combination exemption.  This exemption

8   allows employees to be classified as exempt if they perform a

9   combination of outside sales and administrative duties, but

10  their primary duty does not fit neatly into either exemption.[22]

11  29 C.F.R. § 541.708; <u>see also</u> <u>IntraComm, Inc. v. Bajaj</u>, 492

12  F.3d 285, 294 (4th Cir. 2007) (the exemption is "a mechanism

13  for cobbling together different exempt duties for purposes of

14  meeting the primary-duty test").  Employers, however, cannot

15  "tack various nonexempt duties and hope to create an

16  exemption."  <u>Dalheim v. KDFW-TV</u>, 918 F.2d 1220, 1232 (5th Cir.

17  1990).

18         This combination exemption does not save defendant.  As

19  explained earlier, defendant has not shown there is a genuine

20  dispute regarding the outside sales or administrative

21  exemptions applying to the plaintiffs.  Defendant has not

22  submitted evidence that plaintiffs satisfy the administrative

23

24

25         [21]    As part of its affirmative defenses in its answer,
    defendant specifically pled that the plaintiffs were exempt
    from overtime compensation due to the outside sales and
26  administrative exemptions, but not the combination exemption.
    Docket No. 85 at 31.

27

         [22]    California appears to recognize a similar
28  "combination" exemption.  <u>See</u> Cal. Div. of Labor Standards
    Enforcement Opinion Letter at 5 (May 23, 2003).

1   exemption's prerequisite of primarily working on matters of

2   significance.   The plaintiffs' primary duties with respect to

3   the outside sales exemption are also not exempt duties.

4   Defendant has not presented specific evidence that plaintiffs

5   primarily performed any combination of exempt duties to

6   satisfy the combination exemption.

7   **IV.    CONCLUSION**

8       The FLSA's legislative history corroborates the Court's

9   decision, based on this record, that plaintiffs do not perform

10  exempt duties:

11          the exemptions were premised on the belief that the
            workers exempted typically earned salaries well
12          above the minimum wage, and they were presumed to
            enjoy other compensatory privileges such as above
13          average fringe benefits and better opportunities for
            advancement, setting them apart from the nonexempt
14          workers entitled to overtime pay.   Further, the type
            of work they performed was difficult to standardize
15          to any time frame and could not be easily spread to
            other workers after 40 hours in a week, making
16          compliance with the overtime provisions difficult
            and generally precluding the potential job expansion
17          intended by the FLSA's time-and-a-half overtime
            premium.

18

19  See Defining and Delimiting the Exemptions, supra at 22123-24.

20  These factors do not apply to the plaintiffs' duties as RSRs.

21  Plaintiffs are entry-level employees that do not enjoy

22  "compensatory privileges" that would set them apart from

23  nonexempt workers who receive pay for their overtime.

24  Particularly troubling, defendant classifies plaintiffs as

25  outside salesmen, but does not record their sales even

26  ///

27  ///

28  ///

25

though it has the capability to do so.  Lastly, the work performed by RSRs is not difficult for the defendant to standardize into general terms, as defendant already does when providing plaintiffs with guidelines regarding model call procedures.  See Malloy Declaration, Ex. H at 36; KohSweeney Declaration, Ex. 2 at ¶¶ 20-22.  Using these standardized procedures, defendant has the capability to eliminate overtime work or spread it to other employees, such as RSMs.

As the Ninth Circuit cautioned in Christopher, exemptions can only apply to persons 'plainly and unmistakably within [the exemption's] terms and spirit.'"  2011 WL 489708 at *7. Construed narrowly against defendant, these plaintiffs are plainly not exempt.  Unlike the PSRs in Christopher, plaintiffs do not work in a heavily regulated industry where they are prohibited from making sales.  What prohibits plaintiffs from having as their primary duty outside sales or significant administrative tasks is defendant, which chose to assign these tasks to others.  Defendant does have employees, such as CSEs, who appear to qualify for exempt status.  Unlike PSRs who interact with doctors and discuss with them scientific information and medical research, including information about product benefits and risks, dosage instructions and the types of patients for which certain products should be prescribed, plaintiffs talk to store managers about increasing the movement of candy bars and other Hershey products.  Unlike PSRs who earn about $75,000 a year, of which incentive compensation ranged from 26% to 41% of the PSRs' salary, plaintiffs generally earn less than $50,000 a

year with much smaller bonuses.  <u>See</u> <u>Christopher</u> 2011 WL
489708 at footnote 4.  And while the nature of some of the PSR
duties, such as attending conventions on weekends, might not
lend themselves to a 40 hour week, defendant has not presented
any evidence why plaintiffs could not perform their jobs in 40
hours if defendant's guidelines and procedures were altered to
permit them during the workday, to check their e-mail,
synchronize their REX, review product bulletins and do the
other tasks which they testify they now do on evenings or
weekends.

The issue before the Court is not whether defendant's
sales strategy is successful but whether it can execute that
strategy without paying plaintiffs, one component of that
strategy, overtime.  For the reasons stated above, the letter
and the spirit of the FLSA require that plaintiffs be paid
overtime.  Plaintiffs' motion for partial summary judgment is
therefore **GRANTED** in its entirety.

Dated: February 23, 2011

_____
Bernard Zimmerman
United States Magistrate Judge

g:\bzall\bzcases\Campanelli v. Hershey\Summary Judgment Order (exemptions).after hearing.wpd